**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

COMMONWEALTH OF PENNSYLVANIA, *ex rel.* Lawrence S. Krasner, Philadelphia District Attorney,

*Plaintiff*

–v–

EXPRESS SCRIPTS INC., *et al.*,

*Defendants.*

Case No. 2:26-cv-07251-CFK

The Honorable Chad F. Kenney

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS BY THE CVS DEFENDANTS**

## TABLE OF CONTENTS

Introduction ........ 1

Background ........ 3

I. The District Attorney's Complaint ........ 3

II. The Commonwealth's Consent Judgment Against CVS ........ 4

III. The CVS Holding Companies ........ 5

Standards ........ 6

Argument ........ 6

I. The Commonwealth's Consent Judgment Bars The District Attorney's Claims Against All CVS Defendants ........ 6

A. A UTPCPL Public Enforcement Action Belongs to the Commonwealth, Whichever Officer Files It ........ 6

B. The Attorney General Had Authority to Release the Commonwealth's Claims ........ 8

C. The Release Covers Every CVS Defendant and the Claim Pleaded Here ........ 8

D. The Question Pending in *Krasner* Is Different, and the District Attorney's Concession There Confirms That the Release Applies Here ........ 9

II. The Consent Judgment Renders The District Attorney's Claim Res Judicata ........ 10

III. The Court Lacks Personal Jurisdiction Over The CVS Holding Companies ........ 11

A. There Is No General Jurisdiction ........ 12

B. There Is No Specific Jurisdiction ........ 12

1. The CVS Holding Companies Have No Suit-Related Contacts with Pennsylvania ........ 13

2. Corporate Affiliation Does Not Supply the Missing Contacts ........ 14

3. Group Pleading Cannot Substitute for Entity-Specific Jurisdictional Facts ........ 15

Conclusion ........ 15

# TABLE OF AUTHORITIES

## Cases

*Allegheny Int'l, Inc.* v. *Allegheny Ludlum Steel Corp.*,
40 F.3d 1416 (3d Cir. 1994) ........10

*Calder* v. *Jones*,
465 U.S. 783 (1984) ........11, 15

*Callum* v. *CVS Health Corp.*,
137 F. Supp. 3d 817 (D.S.C. 2015) ........12

*Church Ekklasia Sozo Inc.* v. *CVS Health Corp.*,
2022 WL 1572732 (W.D.N.C., Feb. 25, 2022) ........13

*Commonwealth by & through Krasner* v. *Att'y Gen.*,
309 A.3d 265 (Pa. Commw. Ct. 2024) ........2, 8, 10

*Commonwealth by Creamer* v. *Monumental Props., Inc.*,
329 A.2d 812 (Pa. 1974) ........8

*Commonwealth by Packel* v. *Tolleson*,
321 A.2d 664 (Pa. 1974), *aff'd*, 340 A.2d 428 (Pa. 1975) ........8

*Commonwealth by Shapiro* v. *Golden Gate Nat'l Senior Care LLC*,
194 A.3d 1010 (Pa. 2018) ........7

*Commonwealth* v. *Chesapeake Energy Corp.*,
247 A.3d 934 (Pa. 2021) ........7

*Commonwealth* v. *Chesapeake Energy Corp.*,
655 Pa. 599, 218 A.3d 1205 (Pa. 2019) ........7

*Connelly* v. *Lane Constr. Corp.*,
809 F.3d 780 (3d Cir. 2016) ........6, 14

*Corcoran* v. *CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ........12, 13

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014) ........11, 12

*Fahs ex rel. Fahs* v. *Red Lion Area Sch. Dist.*,
2018 WL 8131758 (M.D. Pa., Mar. 8, 2018) ........10, 11

*Fed. Trade Comm'n* v. *Am. Future Sys., Inc.*,
2021 WL 1721589 (E.D. Pa., Apr. 30, 2021) ........8

*Freight Innovation LLC* v. *FellowShip Warehousing & Logistics LLC*,
2026 WL 2455355 (E.D. Pa., Aug. 21, 2026) .......... passim

*Grp. Against Smog & Pollution, Inc.* v. *Shenango Inc.*,
810 F.3d 116 (3d Cir. 2016) .......... 1

*Hasson* v. *FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) .......... 12

*In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*,
735 F. Supp. 2d 277 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012) .......... 14

*Ma* v. *CVS Pharm., Inc.*,
2020 WL 533702 (N.D. Ill., Feb. 3, 2020), *aff'd*, 833 F. App'x 10 (7th Cir. 2020) .......... 13

*Mallory* v. *Norfolk S. Ry. Co.*,
600 U.S. 122 (2023) .......... 12

*Mayer* v. *Belichick*,
605 F.3d 223 (3d Cir. 2010) .......... 1, 6

*Metcalfe* v. *Renaissance Marine, Inc.*,
566 F.3d 324 (3d Cir. 2009) .......... 6

*Migra* v. *Warren City Sch. Dist. Bd. of Educ.*,
465 U.S. 75 (1984) .......... 10

*MSP Recovery Claims, Series LLC* v. *Caring Voice Coal., Inc.*,
722 F. Supp. 3d 1296 (S.D. Fla. 2024) .......... 13

*O'Connor* v. *Sandy Lane Hotel Co.*,
496 F.3d 312 (3d Cir. 2007) .......... 6, 11

*Patterson by Patterson* v. *F.B.I.*,
893 F.2d 595 (3d Cir. 1990) .......... 5, 6, 14

*Pennsylvania ex rel. Krasner* v. *Musk*,
2024 WL 4655418 (E.D. Pa., Nov. 1, 2024) .......... 8

*Shuker* v. *Smith & Nephew, PLC*,
885 F.3d 760 (3d Cir. 2018) .......... 14

*Tashjian* v. *CVS Pharm., Inc.*,
2020 WL 1931859 (D. Mass., Mar. 13, 2020),
*adopted*, 2020 WL 2048456 (D. Mass. ,Mar. 30, 2020) .......... 12

*Thompson* v. *Karastan Rug Mills*,
323 A.2d 341 (Pa. 1974) .......... 10

*Trinity Indus., Inc.* v. *Greenlease Holding Co.*,
903 F.3d 333 (3d Cir. 2018) ....................14

*United States* v. *Bestfoods*,
524 U.S. 51 (1998) ....................14

*Walden* v. *Fiore*,
571 U.S. 277 (2014) ....................11, 12

**Statutes**

15 Pa. Cons. Stat. § 411(a) ....................12

42 Pa. Cons. Stat. § 5322(b) ....................11

72 P.S. § 1792-A.1 ....................7

72 P.S. § 1792-A.1(a)–(c) ....................7

72 P.S. § 1792-A.1(b.1) ....................7

73 P.S. § 201-4 ....................passim

73 P.S. § 201-4.1 ....................7, 11

73 P.S. § 201-8 ....................11

73 P.S. § 201-8(b) ....................2, 7

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ....................1, 2, 5

Federal Rule of Civil Procedure 12(b)(6) ....................6

Defendants CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; Caremark, L.L.C.; CaremarkPCS Health, L.L.C.; and AdvanceRx.com, L.L.C. ("CVS" or "the CVS Defendants") submit this memorandum in support of their motion to dismiss the Complaint filed by the Commonwealth of Pennsylvania on the relation of Lawrence S. Krasner, District Attorney of the City of Philadelphia (the "District Attorney"). All six CVS Defendants move to dismiss under Rule 12(b)(6) because the Commonwealth, acting through its Attorney General, has already released the claim asserted here. CVS Health Corporation and Caremark Rx, L.L.C. (the "CVS Holding Companies") additionally move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

**Introduction**

The Commonwealth of Pennsylvania has already settled and released its claim against CVS. On February 15, 2024, the Attorney General of Pennsylvania sued CVS in the Commonwealth Court under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and, the same day, resolved the case by a Consent Judgment. The Commonwealth released CVS Pharmacy, Inc. and all of its parents and subsidiaries—every CVS Defendant here—from all claims relating to the distribution, dispensing, and pharmacy benefit management of prescription opioids. The release binds not only the Commonwealth but every person acting in an official capacity on its behalf, every person claiming by or through it, and every person acting in a sovereign, quasi-sovereign, or *parens patriae* capacity for the general public, "whether or not any of them participate in the Agreement." Ex. B (Consent Judgment) ¶ 10.[1]

Two and a half years later, the District Attorney sued CVS again—in the Commonwealth's name, under the same statute, for the same kind of conduct. The UTPCPL does not permit that duplicative

[1]The Consent Judgment is attached as Exhibit B and is a final judgment of the Commonwealth Court of Pennsylvania. The Court may consider it on this motion as a matter of public record. *See Grp. Against Smog & Pollution, Inc.* v. *Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (considering consent decree on motion to dismiss); *Mayer* v. *Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

action. A public enforcement action is brought "in the name of the Commonwealth" and penalties are recovered "on behalf of the Commonwealth," 73 P.S. §§ 201-4, 201-8(b), whichever officer signs the complaint. The Commonwealth is the client; the Attorney General and the District Attorneys are its lawyers. And a lawyer cannot revive a claim his client has released by filing it again under a new caption. The District Attorney knows this. He represented to the Supreme Court of Pennsylvania in a case involving the effect of similar releases on pending UTPCPL actions that he does "not contest the Attorney General's right under the UTPCPL to settle and release claims of district attorneys who have not elected to pursue UTPCPL claims." Ex. D (District Attorney's Brief) at 60 n.14.[2] When the Attorney General released CVS, the District Attorney had elected to pursue no such claim. His own concession ends this case. And if that were not enough, the Commonwealth's Consent Judgment renders the District Attorney's entire case against CVS res judicata.

There is another, independent reason the claims against CVS Health Corporation and Caremark Rx, L.L.C. cannot proceed here: this Court lacks personal jurisdiction over them. Both are Delaware holding companies headquartered in Rhode Island. Neither provides pharmacy benefit management services, develops formularies, or directs any subsidiary that does. Neither has offices, employees, assets, or operations in Pennsylvania, and neither is registered to do business here. The District Attorney sues them for being the parents of *other* defendants and lumps all six CVS entities together as "CVS Caremark." But corporate parenthood is not a jurisdictional contact, and group pleading is not proof. As this Court recently held, a plaintiff resisting a Rule 12(b)(2) motion must come forward with "actual proofs, not mere allegations." *Freight Innovation LLC* v. *FellowShip Warehousing & Logistics*

[2] "The District Attorney appealed as of right to the Supreme Court of Pennsylvania to review the Commonwealth Court's decision in *Commonwealth by & through Krasner* v. *Att'y Gen.*, 309 A.3d 265, 268 (Pa. Commw. Ct. 2024). The Court heard argument on March 11, 2026 and the appeal remains pending under docket number 8 EAP 2024.

*LLC*, 2026 WL 2455355, at *4 (E.D. Pa., Aug. 21, 2026) (Kenney, J.) (cleaned up). The District Attorney has none.

## Background

### I. The District Attorney's Complaint.

On August 5, 2026, the District Attorney filed this action in the Court of Common Pleas of Philadelphia County "in the name of the Commonwealth of Pennsylvania" against the Express Scripts, Optum, and the CVS Defendants. Compl. at 1 & ¶¶ 3, 6. Defendants removed the action on September 18, 2026. Doc. 1. The District Attorney pleads a single count under the UTPCPL and seeks an injunction, civil penalties, and "restoration" and disgorgement, all "in the name of the Commonwealth" and limited to violations "connected to Philadelphia." Compl. ¶¶ 5, 7–11, 420–51. The District Attorney alleges that pharmacy benefit manager ("PBM") defendants, through formulary design, utilization management, rebate agreements with manufacturers, and the operation of mail-order pharmacies, contributed to an oversupply of opioid medications in Philadelphia. *Id.* ¶¶ 2–4, 429.

The District Attorney defines the six CVS Defendants collectively as "CVS Caremark," sues "CVS Caremark" "in its capacities as a PBM and as a mail-order pharmacy," and attributes every alleged act to that collective label. Compl. ¶¶ 132–33; *see, e.g., id.* ¶¶ 134–39, 192, 204–07, 238–43, 323, 340. As to the CVS Holding Companies specifically, the District Attorney alleges that CVS Health Corporation is a Delaware corporation headquartered in Rhode Island that "transacts business and has locations throughout the United States, including Philadelphia," and that Caremark Rx, L.L.C. is a Delaware limited liability company headquartered in Rhode Island; that each is "the immediate or indirect parent" of the operating subsidiaries; and, in conclusory terms, that "interlocking directorships and shared executives" make the holding companies "directly involved in the conduct of and control of" the subsidiaries, which are their "agents and/or alter egos." *Id.* ¶¶ 99, 102–04, 107, 113–14, 130–31. The only factual support offered is 2013 legislative testimony by Peter Harty, a consultant, describing

the Pennsylvania operations of "CVS Caremark"; descriptions of the PBM business drawn from CVS Health Corporation's consolidated Form 10-K; and a 2016 meeting of CVS Health Corporation's Board concerning opioid abuse. *Id.* ¶¶ 101, 105–07, 291.

**II. The Commonwealth's Consent Judgment Against CVS.**

In December 2022, the Commonwealth, acting through its Attorney General, entered into a settlement agreement with CVS resolving the Commonwealth's prescription opioid-related claims. Ex. B (Consent Judgment). On February 15, 2024, the Attorney General filed a complaint in the Commonwealth Court against CVS, Walmart, and Walgreens asserting a UTPCPL public enforcement action and a public nuisance claim, Ex. E (AG Complaint), and the settlement became effective upon the Commonwealth Court's entry of a Consent Judgment, Ex. C (Order Approving Consent Judgment). The Attorney General determined that the settlement was in the public interest, Ex. B at 2 (Recitals ¶ 2), and the Commonwealth Court so found, *id.* at 5, ¶ 5.

The Consent Judgment released CVS Pharmacy, Inc. and all of its direct and indirect parents and subsidiaries from any claim arising from CVS's distribution, retail dispensing, or pharmacy benefit management services relating to prescription opioids. *Id.* at 4 (definition P); *id.* at 9 (definition HHH). The Attorney General granted the release "to the maximum extent of [her] power," releasing the claims of the Commonwealth; of "any person in his or her official capacity whether elected or appointed to serve [the Commonwealth]"; of any person "claiming by or through [the Commonwealth]"; and of "any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign . . . or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the Commonwealth or any Subdivision in the Commonwealth, whether or not any of them participate in the Agreement." *Id.* at 6, ¶ 10.

## III. The CVS Holding Companies.

The jurisdictional facts are set out in the Declaration of Thomas S. Moffatt ("Moffatt Decl.").[3] CVS Health Corporation is a holding company organized under Delaware law with its principal place of business in Rhode Island; its functions are to issue stock traded on the New York Stock Exchange and to file reports with the Securities and Exchange Commission, and it "performs no operations that are unrelated to its status as a holding company." Ex. A (Moffatt Decl.) at ¶¶ 4–5. Caremark Rx, L.L.C. is likewise a Delaware holding company headquartered in Rhode Island whose functions "pertain exclusively to its role as a holder of corporate interests," and it has never had any direct involvement in operating any subsidiary, including any engaged in pharmacy benefit management. *Id.* ¶¶ 6–7.

Neither CVS Holding Company provides pharmacy benefit management services, plays any role in developing formularies, or operates any subsidiary that provides PBM or mail-order pharmacy services. Ex. A (Moffatt Decl.) at ¶¶ 9–11. Neither has offices, facilities, assets, income, employees, or operations in Pennsylvania; neither is licensed or registered to do business here, has a registered agent here, or is regulated by any Pennsylvania agency; and none of CVS Health Corporation's officers is located here. *Id.* ¶¶ 12–15. Each CVS Defendant is a separate entity that observes corporate formalities and maintains its own governing documents, records, bank accounts, tax returns, and board or managers, who meet separately from the board of CVS Health Corporation. *Id.* ¶ 17. And the Harty testimony and Form 10-K on which the Complaint relies used "CVS Caremark" to describe the collective operations of various operating subsidiaries—not the holding companies. *Id.* ¶ 16.

---

[3]Mr. Moffatt is Vice President, Corporate Secretary and Senior Legal Counsel—Corporate Services of CVS Pharmacy, Inc., has worked within the CVS corporate family since 1997, and is familiar with the corporate structure and business functions of CVS Health Corporation and its subsidiaries, including Caremark Rx, L.L.C. Ex. A (Moffatt Decl.) at ¶¶ 2–3. On a Rule 12(b)(2) motion the Court may consider affidavits, and once the defendant controverts the jurisdictional allegations with evidence, the plaintiff must respond "with actual proofs, not mere allegations." *Patterson by Patterson* v. *F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (cleaned up).

## Standards

On a Rule 12(b)(6) motion, the Court disregards conclusory allegations, *Connelly* v. *Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016), and may consider "matters of public record," *Mayer*, 605 F.3d at 230. On a Rule 12(b)(2) motion, "[o]nce challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor* v. *Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). Absent an evidentiary hearing, the plaintiff must make a prima facie showing, but it "must respond with actual proofs, not mere allegations," *Patterson*, 893 F.2d at 604 (cleaned up), and "prov[e] by affidavits or other competent evidence that jurisdiction is proper," *Metcalfe* v. *Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citation omitted). *Accord Freight Innovation*, 2026 WL 2455355, at *4.

## Argument

### I. The Commonwealth's Consent Judgment Bars The District Attorney's Claims Against All CVS Defendants.

The Commonwealth's release precludes any public claim under the UTPCPL, any claim by any Pennsylvania officer or subdivision seeking relief on behalf of the public, and any claim brought in a sovereign or *parens patriae* capacity. The District Attorney's single UTPCPL count is all three. The argument has four steps: (1) a UTPCPL enforcement action belongs to the Commonwealth, not to the officer who files it; (2) the Attorney General had authority to release it; (3) the release by its terms covers every CVS Defendant and the claim pleaded here; and (4) the question pending before the Supreme Court of Pennsylvania in *Commonwealth ex rel. Krasner* v. *Attorney General*—whether the Attorney General may supersede a district attorney in *previously filed* UTPCPL actions—does not change the analysis, no matter the outcome.

#### A. A UTPCPL Public Enforcement Action Belongs to the Commonwealth, Whichever Officer Files It.

The UTPCPL authorizes the Attorney General or a District Attorney to "bring an action *in the name of the Commonwealth*" to enjoin unlawful practices, 73 P.S. § 201-4 (emphasis added), and provides

that whichever officer brings the action does so "acting in the name of the Commonwealth of Pennsylvania" and recovers civil penalties "*on behalf of the Commonwealth of Pennsylvania*," *id.* § 201-8(b) (emphasis added).[4] The statute thus assigns the claim to a single client and designates two categories of lawyers who may prosecute it. Construing section 201-4.1, the Supreme Court of Pennsylvania held that the Commonwealth is a "person in interest" entitled to restoration, reasoning that it would be "anomalous" to grant "the Commonwealth the authority to seek an injunction" while "prohibiting it from seeking restoration where it lost money or property because of the improper conduct." *Commonwealth by Shapiro* v. *Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1034-35 (Pa. 2018).

Put simply, the Commonwealth is the client; the Attorney General and the District Attorneys are its lawyers. Courts in Pennsylvania routinely refer to the plaintiff in UTPCPL public enforcement actions as "the Commonwealth," whichever officer appears on the pleadings. *See, e.g., Commonwealth* v. *Chesapeake Energy Corp.*, 247 A.3d 934, 936 (Pa. 2021) (considering "whether the Commonwealth, by the Office of Attorney General (OAG), may bring [certain] claims under the . . . UTPCPL"); *Commonwealth* v. *Chesapeake Energy Corp.*, 655 Pa. 599, 600, 218 A.3d 1205 (Pa. 2019) (framing issue as

---

[4] In *Krasner*, the District Attorney advanced the position that section 201-8(b)'s direction that penalties be recovered "on behalf of the Commonwealth" is beside the point because, under the Fiscal Code, money recovered by district attorneys in opioid litigation "shall not be deemed funds of the Commonwealth." 72 P.S. § 1792-A.1(b.1). That provision does not help him. Section 1792-A.1 is a fiscal measure: it establishes a restricted account within the General Fund, directs that opioid recoveries received by State agencies be deposited there, excludes from the account money received by local governments and district attorneys, and provides that the account may be spent only upon appropriation. *Id.* § 1792-A.1(a)–(c). It governs *where* the proceeds of a judgment are deposited; it says nothing about *who* owns the cause of action, and it does not amend the UTPCPL's command that enforcement actions be brought "in the name of the Commonwealth" and that penalties be recovered "on behalf of the Commonwealth." 73 P.S. §§ 201-4, 201-8(b). Whose claim is being litigated—and therefore whose release is binding—is a question of substantive law answered by the UTPCPL and by *Golden Gate*, not by an accounting rule in the Fiscal Code. If anything, the exclusion confirms the point: the General Assembly had to carve district attorneys' opioid recoveries out of the Commonwealth's restricted account precisely because, absent the carve-out, they would be Commonwealth funds. And nothing in section 1792-A.1 purports to limit the Attorney General's authority to release the Commonwealth's claims and bind every person acting in an official capacity or on behalf of the general public "whether or not any of them participate in the Agreement."

whether "the Commonwealth [may] pursue antitrust remedies under the Unfair Trade Practices and Consumer Protection Law"); *Commonwealth by Creamer* v. *Monumental Props., Inc.*, 329 A.2d 812, 814 (Pa. 1974) ("The Commonwealth, pursuant to the Consumer Protection Law, initiated an original action in the Commonwealth Court[.]"); *Commonwealth by Packel* v. *Tolleson*, 321 A.2d 664, 672 (Pa. 1974) ("***Plaintiff is the Commonwealth of Pennsylvania acting by its Attorney General.***"), *aff'd*, 340 A.2d 428 (Pa. 1975) (emphasis added); *Fed. Trade Comm'n* v. *Am. Future Sys., Inc.*, 2021 WL 1721589, at *3 (E.D. Pa., Apr. 30, 2021) (recognizing the Commonwealth of Pennsylvania as "co-Plaintiff" with the FTC). And when a District Attorney brings the action, the result is the same: this Court has held that District Attorneys suing under the UTPCPL act as "alter egos of the Commonwealth." *Pennsylvania ex rel. Krasner* v. *Musk*, 2024 WL 4655418, at *2 (E.D. Pa., Nov. 1, 2024). A lawyer cannot revive a claim his client has released simply by filing a new complaint in the client's name.

### B. The Attorney General Had Authority to Release the Commonwealth's Claims.

Because the claim belongs to the Commonwealth, the Commonwealth's chief law officer could release it, and she did so with the Commonwealth Court's approval and "to the maximum extent of [her] power." Ex. B (Consent Judgment) at 5–6, ¶¶ 5, 10. While section 201-4 gives District Attorneys as well as the Attorney General the power to sue, the statute confers on the District Attorney the power to prosecute the Commonwealth's claim—not a claim of his own—and a lawyer's authority to file suit for a client does not survive the client's release of the claim. That is why "[t]he Attorney General represents the public interests of the entire Commonwealth, *including its municipalities and subdivisions*." *Krasner*, 309 A.3d at 277 (emphasis added). Were the rule otherwise, no Commonwealth settlement under the UTPCPL could ever be final.

### C. The Release Covers Every CVS Defendant and the Claim Pleaded Here.

*Released parties*. The release runs to CVS Health Corporation, CVS Pharmacy, Inc., and all of their "direct and indirect parents [and] subsidiaries." Ex. B (Settlement Agr.) at 4, 11 (definitions Q, KKK).

Every CVS Defendant qualifies, as the District Attorney's own Complaint makes clear, Compl. ¶¶ 107, 110, 112, 117, 122–23, 127, and each appears by name in the Agreement's "Illustrative List of Released Entities," *id.* Ex. E (List of Released Entities) at J-1, J-2, J-13, J-14 (listing every CVS Defendant).

*Released claims.* The release reaches any claim that "in any way relate[s] to" the "Covered Conduct," *id.* at 10 (definition JJJ), which includes "formularies, guidelines, payments and/or rebates" for prescription opioids; "claim and/or benefit administration, claim adjudication, [and] plan design"; and their "dispensing" and "delivery," *id.* at 4 (definition P). The District Attorney sues CVS "in its capacities as a PBM and as a mail-order pharmacy," Compl. ¶ 133, and every practice he challenges concerns either formulary, utilization-management, or rebate practices for prescription opioids or the dispensing of prescription opioids by mail, *id.* ¶¶ 4, 428–29.

*Releasors.* The release binds the District Attorney in every capacity in which he purports to sue. The Releasors include the Commonwealth; "any person in their official capacity whether elected or appointed to serve" it; anyone "claiming by or through" it; and "any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, . . . or other capacity seeking relief on behalf of or generally applicable to the general public"—"whether or not any of them participate in the Agreement." Ex. B at 11 (definition LLL); *Id.* (Consent Judgment) at 6-7, ¶ 10. The District Attorney is an elected officer suing "in his . . . official capacity"; he sues "*ex rel.*"—by and through—the Commonwealth; and he seeks penalties and disgorgement for the public of Philadelphia. Compl. ¶¶ 5–11, 442–51. Only by pretending that he brings this case in his own capacity, rather than the Commonwealth's, can the District Attorney avoid the preclusive effect of the Commonwealth's Consent Judgment. The UTPCPL forbids that pretense. 73 P.S. § 201-4.

### D. The Question Pending in *Krasner* Is Different, and the District Attorney's Concession There Confirms That the Release Applies Here.

The District Attorney may urge the Court to await the Supreme Court of Pennsylvania's decision in *Krasner*. It should not. *Krasner* asks whether the Attorney General may settle or release "*previously-*

*filed enforcement actions* under the UTPCPL over the DAs' objections." 309 A.3d at 270 (emphasis added). The District Attorney framed it that way himself, arguing that "allow[ing] the Attorney General to settle a civil case *already brought* by a district attorney . . . would impinge on the district attorney's own statutory duties," while expressly disclaiming any broader position: the District Attorneys "do not contest the Attorney General's right under the UTPCPL to settle and release claims of district attorneys who have *not* elected to pursue UTPCPL claims." Ex. D (District Attorney's Brief) at 59–60 & n.14 (emphasis added). When the Attorney General released CVS in February 2024, the District Attorney had elected to pursue no UTPCPL claim against CVS concerning pharmacy benefit management. This action was not filed until August 2026. However *Krasner* is decided, the District Attorney has conceded the only question that matters here.

## II. The Consent Judgment Renders The District Attorney's Claim Res Judicata.

The Consent Judgment is not only a release but a judgment of the Commonwealth Court, entered after that court found the settlement to be in the public interest. Ex. B (Consent Judgment) at 5, ¶ 5. This Court must give it "the same preclusive effect as would be given that judgment [in Pennsylvania]." *Fahs ex rel. Fahs* v. *Red Lion Area Sch. Dist.*, 2018 WL 8131758, at *2 (M.D. Pa., Mar. 8, 2018) (quoting *Migra* v. *Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Consent judgments are entitled to the same preclusive effects as any other judgment. *Allegheny Int'l, Inc.* v. *Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1429 (3d Cir. 1994). Under Pennsylvania law, res judicata requires "(1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued"; once those identities concur, "the only remaining inquiry" is "whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights." *Thompson* v. *Karastan Rug Mills*, 323 A.2d 341, 344 (Pa. 1974) (cleaned up).

Each identity is present. The thing sued upon is CVS's alleged conduct relating to prescription opioids, including its PBM services; the cause of action is a UTPCPL public enforcement claim under sections 201-4, 201-4.1, and 201-8; and both actions are brought in the Commonwealth's sovereign capacity on behalf of the public. Compl. at 1 & ¶¶ 5–11; Ex. E (AG Complaint). As for the parties, the plaintiff in both actions is the Commonwealth—that is what "in the name of the Commonwealth" means—and at a minimum the District Attorney is the Commonwealth's privy. Res judicata "permits the persons and parties or their privies to be the same," *Thompson*, 323 A.2d at 345, and privity exists where there is "such an identification of interest of one person with another as to represent the same legal right," *Fahs*, 2018 WL 8131758, at *4 (cleaned up). On that reasoning, *Fahs* held a school district and the Commonwealth in privity because the district's "power to bring the . . . action arose out of Pennsylvania statute" and both asserted "the right of the Commonwealth." *Id.* So too here: the District Attorney's power to sue arises from the UTPCPL, and he sues in the Commonwealth's name to vindicate the Commonwealth's right. The Commonwealth appeared, asserted that right, and resolved it by judgment. The District Attorney may not assert it again.

## III. The Court Lacks Personal Jurisdiction Over The CVS Holding Companies.

Pennsylvania's long-arm statute reaches as far as the Due Process Clause permits, 42 Pa. Cons. Stat. § 5322(b), so the question is whether jurisdiction over each CVS Holding Company comports with due process. *O'Connor*, 496 F.3d at 316. General jurisdiction exists only where a defendant is "essentially at home in the forum State," *Daimler AG* v. *Bauman*, 571 U.S. 117, 127 (2014) (cleaned up); specific jurisdiction exists only where "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State," *Walden* v. *Fiore*, 571 U.S. 277, 284 (2014). Either way, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder* v. *Jones*, 465 U.S. 783, 790 (1984). Neither type of jurisdiction exists here.

### A. There Is No General Jurisdiction.

A corporation is "at home" in its place of incorporation and principal place of business, and only in an "exceptional case" anywhere else. *Daimler*, 571 U.S. at 137, 139 n.19. CVS Health Corporation and Caremark Rx, L.L.C. are organized in Delaware and headquartered in Rhode Island, and neither has offices, employees, assets, income, or operations in Pennsylvania. Ex. A (Moffatt Decl.) at ¶¶ 5–6, 12–15.[5] As this Court held of a New Jersey company with its principal place of business in New Jersey, such defendants are "not considered 'at home' in Pennsylvania." *Freight Innovation*, 2026 WL 2455355, at *7. Other courts presented with the same facts about CVS Health Corporation have uniformly held that it is not subject to general jurisdiction outside Delaware and Rhode Island. *See Corcoran* v. *CVS Health Corp.*, 169 F. Supp. 3d 970, 980–81 (N.D. Cal. 2016); *Callum* v. *CVS Health Corp.*, 137 F. Supp. 3d 817, 837 (D.S.C. 2015); *Tashjian* v. *CVS Pharm., Inc.*, 2020 WL 1931859, at *3 (D. Mass., Mar. 13, 2020), *adopted*, 2020 WL 2048456 (D. Mass., Mar. 30, 2020).

### B. There Is No Specific Jurisdiction.

Specific jurisdiction requires that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum" and that the claims "arise out of or relate to" those contacts. *Hasson* v. *FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (cleaned up). The contacts must be ones "the defendant *himself*" creates; "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 284–85. The CVS Holding Companies have no contacts with Pennsylvania, and nothing in the Complaint supplies them.

---

[5] Registration to do business in Pennsylvania can constitute consent to general jurisdiction, 15 Pa. Cons. Stat. § 411(a); *Mallory* v. *Norfolk S. Ry. Co.*, 600 U.S. 122, 128 (2023), but neither CVS Holding Company is licensed or registered to do business here. Ex. A (Moffatt Decl.) at ¶ 14.

### 1. The CVS Holding Companies Have No Suit-Related Contacts with Pennsylvania.

The uncontroverted evidence is that neither CVS Holding Company provides PBM services, develops formularies, operates any PBM or mail-order subsidiary, or has any direct involvement in any subsidiary's operations or employees; and that neither has offices, facilities, assets, income, employees, or operations in Pennsylvania. Ex. A (Moffatt Decl.) at ¶¶ 4, 6–7, 9–13. Courts across the country, presented with declarations from Mr. Moffatt establishing these facts, have dismissed CVS Health Corporation for lack of personal jurisdiction. *See Corcoran*, 169 F. Supp. 3d at 980–81 (dismissing CVS Health, based on a similar Moffatt affidavit, where plaintiffs failed to establish "CVS Health had any direct involvement in the scheme alleged in the [complaint]" (cleaned up)); *Church Ekklasia Sozo Inc.* v. *CVS Health Corp.*, 2022 WL 1572732, at *3 (W.D.N.C., Feb. 25, 2022) (no jurisdiction over CVS Health Corporation); *MSP Recovery Claims, Series LLC* v. *Caring Voice Coal., Inc.*, 722 F. Supp. 3d 1296, 1310 (S.D. Fla. 2024) (same); *cf. Ma* v. *CVS Pharm., Inc.*, 2020 WL 533702, at *3 (N.D. Ill., Feb. 3, 2020) (noting "evidence that CVS Health is a holding company with no employees"), *aff'd*, 833 F. App'x 10 (7th Cir. 2020). The same analysis applies to Caremark Rx, L.L.C., whose functions are likewise confined to holding corporate interests. Ex. A (Moffatt Decl.) at ¶¶ 6–7.

The Complaint's allegations about the Holding Companies' own conduct do not come close to establishing jurisdiction. The assertion that CVS Health Corporation "transacts business and has locations throughout the United States, including Philadelphia," Compl. ¶ 102, is the kind of "singular, conclusory allegation" that "tells the Court almost nothing." *Freight Innovation*, 2026 WL 2455355, at *13. The Form 10-K excerpts describe the consolidated operations of the corporate family, not the holding company, Ex. A (Moffatt Decl.) at ¶ 16; Compl. ¶¶ 105–07, and a 2016 board meeting in Rhode Island about a national public-health issue, *id.* ¶ 291, is not conduct directed at Pennsylvania. And the allegation that Caremark Rx, L.L.C. is "the immediate or indirect parent" of subsidiaries "that

engaged in the activities in Pennsylvania that gave rise to this Complaint," *id.* ¶ 114, concedes the point: the activities were the subsidiaries', not the parent's.

**2. Corporate Affiliation Does Not Supply the Missing Contacts.**

Lacking contacts of the Holding Companies, the District Attorney falls back on the contacts of their subsidiaries. That theory fails. A parent "is not liable for the acts of its subsidiaries," *United States* v. *Bestfoods*, 524 U.S. 51, 61 (1998), and a subsidiary's forum contacts may be imputed to its parent only where the subsidiary "is merely the agent" of the parent or the parent "otherwise 'controls' the subsidiary." *Shuker* v. *Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (cleaned up). Alter ego jurisdiction requires abnormal control extending to "the day-to-day operations of the subsidiary," *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 735 F. Supp. 2d 277, 319 (W.D. Pa. 2010) (cleaned up), *aff'd*, 683 F.3d 462 (3d Cir. 2012); *see Freight Innovation*, 2026 WL 2455355, at *16 (ten-factor test). The burden is "notoriously difficult" to meet. *Trinity Indus., Inc.* v. *Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018) (cleaned up).

Granted, the Complaint recites that the subsidiaries "are agents and/or alter egos" of the holding companies, that "interlocking directorships and shared executives" make the holding companies "directly involved in the conduct of and control of" the subsidiaries, and that CVS Health Corporation's executives "direct its subsidiaries" on PBM matters. Compl. ¶¶ 103–04, 130–31. But those are labels, not facts. They identify no director, no executive, no decision, and no instruction; they "are not entitled to the assumption of truth," *Connelly*, 809 F.3d at 787 (cleaned up); and, once controverted, they must yield to "actual proofs," *Patterson*, 893 F.2d at 604 (cleaned up).

The Moffatt Declaration, meanwhile, establishes that each CVS entity observes corporate formalities, keeps its own records, accounts, and tax returns, and has its own board or managers who meet separately and that neither operates any PBM or mail-order subsidiary. Ex. A (Moffatt Decl.) at ¶¶ 7, 10–11, 17. This Court rejected alter ego jurisdiction in *Freight Innovation* even where the plaintiff

alleged shared branding, shared accounts, commingled funds, and a common owner, because those allegations did not show the "high-level of operational control" required and were unsupported by evidence. 2026 WL 2455355, at *17–*18 (cleaned up). The District Attorney alleges less and proves nothing.

### 3. Group Pleading Cannot Substitute for Entity-Specific Jurisdictional Facts.

What the District Attorney cannot accomplish through alter ego labels, he attempts through a drafting device: he defines "CVS Caremark" to include all six CVS Defendants, Compl. ¶ 132, and attributes every alleged act to that label. Because "[e]ach defendant's contacts with the forum State must be assessed individually," *Calder*, 465 U.S. at 790, allegations about what "CVS Caremark" did say nothing about what CVS Health Corporation or Caremark Rx, L.L.C. did—particularly where the Complaint concedes that the entities that hold DEA registrations and dispense by mail are the operating subsidiaries, not the holding companies. Compl. ¶ 361. The Harty testimony on which the Complaint relies, *id.* ¶ 101, is no different: like the Form 10-K, it used "CVS Caremark" to describe the collective operations of various operating subsidiaries, not either holding company, and to the extent it could be read otherwise it was inaccurate. Ex. A (Moffatt Decl.) at ¶ 16.

## Conclusion

The Court should dismiss the Complaint against all CVS Defendants with prejudice as barred by the Commonwealth's Consent Judgment, both as a release and as res judicata, and, independently, dismiss the claims against CVS Health Corporation and Caremark Rx, L.L.C. for lack of personal jurisdiction.

Dated: October 30, 2026

Respectfully submitted,

*/s/ Robert J. Norcia*
Robert J. Norcia
STRADLEY RONON STEVENS & YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, Pennsylvania 19103
(215) 564-8663
rnorcia@stradley.com

Steven N. Herman
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
(202) 778-1800
sherman@zuckerman.com

Conor B. O'Croinin
Admitted *pro hac vice*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, Maryland 21202
(410) 949-1160
cocroinin@zuckerman.com

*Attorneys for Defendants CVS Health Corporation; CVS Pharmacy, Inc.; Caremark Rx, L.L.C.; Caremark, L.L.C.; CaremarkPCS Health, L.L.C.; and AdvanceRx.com, L.L.C.*