# EXHIBIT D

Received 7/2/2024 3:39:21 PM Supreme Court Eastern District

Filed 7/2/2024 3:39:00 PM Supreme Court Eastern District
8 EAP 2024

**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

---

**Docket No. 8 EAP 2024**

---

**THE COMMONWEALTH OF PENNSYLVANIA, BY AND THROUGH THE PHILADELPHIA DISTRICT ATTORNEY, LARRY KRASNER, AND THE COMMONWEALTH OF PENNSYLVANIA, BY AND THROUGH THE ALLEGHENY COUNTY DISTRICT ATTORNEY, STEPHEN A. ZAPPALA, Petitioners-Appellants,**

**v.**

**THE ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA, MCKESSON CORP., CARDINAL HEALTH, INC., and AMERISOURCEBERGEN DRUG CORP., JOHNSON & JOHNSON, JANSSEN PHARMACEUTICALS, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., AND JANSSEN PHARMACEUTICA, INC., Respondents-Appellees.**

---

**APPEAL OF THE PHILADELPHIA DISTRICT ATTORNEY, LARRY KRASNER, AND THE ALLEGHENY COUNTY DISTRICT ATTORNEY, STEPHEN A. ZAPPALA, JR.**

---

**Appeal from Opinion and Order entered January 26, 2024, of the Commonwealth Court of Pennsylvania, No. 283 MD 2022, granting the Attorney General's Application for Summary Relief and denying Petitioners' Application for Summary Relief**

---

# BRIEF FOR APPELLANTS

---

Jerry R. DeSiderato (No. 201097)
Timothy J. Ford (No. 325290)
Silvio A. Trentalange (No. 320606)

Russell W. Budd*
Catherine Hancock Dorsey*
Christine Mansour*

Stanford B. Ponson (No. 322548)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel.: (215) 575-7000
Fax: (215) 575-7200
jdesiderato@dilworthlaw.com
tford@dilworthlaw.com
strentalange@dilworthlaw.com
sponson@dilworthlaw.com

*Counsel for Appellants, the Commonwealth of Pennsylvania, by and through the Philadelphia District Attorney, Larry Krasner, and by and through the Allegheny County District Attorney, Stephen A. Zappala, Jr.*

Stephen A. Zappala, Jr. (No. 41254)
ALLEGHENY COUNTY
DISTRICT ATTORNEY'S OFFICE
Room 303 Courthouse
436 Grant Street
Pittsburgh, PA 15219
Tel.: (412) 350-4401

William G. Brucker (No. 32983)
Charles J. Porter, Jr. (No. 43676)
Joseph G. Heminger (No. 81780)
BRUCKER AND PORTER
Suite 410, 180 Fort Couch Road
Pittsburgh, PA 15241
Tel.: (412) 881-6620
bruckerand@aol.com
cjporterjr@aol.com
jgheminger@aol.com

*Counsel for Appellant, the Commonwealth of Pennsylvania, by and through the Allegheny County*

Brian L. Williams*
BARON & BUDD, P.C.
600 New Hampshire Avenue NW
Washington, DC 20037
Tel.: (202) 333-4873
rbudd@baronbudd.com
cdorsey@baronbudd.com
cmansour@baronbudd.com
brwilliams@baronbudd.com

Nancy Winkelman (No. 48928)
Lawrence S. Krasner (No. 49667)
OFFICE OF THE PHILADELPHIA
DISTRICT ATTORNEY
3 South Penn Square
Philadelphia, PA 19107
Tel: (215) 686-8000
nancy.winkelman@phila.gov

Gregory B. Heller (No. 61130)
FELDMAN SHEPHERD
WOHLGELERNTER TANNER
WEINSTOCK DODIG LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Tel: (215) 567-8300
gheller@feldmanshepherd.com

Andrew Sacks (No. 41390)
John Weston (No. 26314)
SACKS WESTON, LLC
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com

David Kairys (No. 14535)
P.O. Box 4073
8225 Germantown Avenue

*District Attorney, Stephen A. Zappala, Jr.*

** admitted pro hac vice*

Philadelphia, PA 19118
Tel: (215) 204-8959
dkairys@verizon.net

Stephen A. Sheller (No. 3270)
SHELLER, P.C.
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (215) 790-7300
sasheller@sheller.com

*Counsel for Appellant, the Commonwealth of Pennsylvania, by and through the Philadelphia District Attorney, Larry Krasner*

Dated: July 2, 2024

# TABLE OF CONTENTS

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 5

ORDER IN QUESTION ........ 5

STATEMENT OF THE SCOPE OF REVIEW AND STANDARD OF REVIEW ........ 6

STATEMENT OF THE QUESTIONS INVOLVED ........ 6

STATEMENT OF THE CASE ........ 8

- I. Statement of the Form of Action ........ 8
- II. Statement of Prior Determination ........ 9
- III. Judge Whose Determinations Are to Be Reviewed ........ 9
- IV. Chronological Statement of Record Facts ........ 9
  - A. The Opioid Epidemic in Pennsylvania ........ 9
  - B. Pennsylvania Opioid Litigation ........ 11
  - C. The Attorney General's Settlement Agreements ........ 12
  - D. Commonwealth Court Litigation ........ 15
- V. Statement of Place of Raising or Preservation of Issues ........ 19

SUMMARY OF ARGUMENT ........ 19

ARGUMENT ........ 23

- I. The UTPCPL Unambiguously Confers Equal Rights on the Attorney General and District Attorneys to Bring Public Enforcement Actions. ........ 23
  - A. The UTPCPL Confers Statutory Standing on the Attorney General and District Attorneys to File Public Enforcement Actions. ........ 24
  - B. Public Interest Actions Must be Filed "In the Name of the Commonwealth" but Such a Designation Does Not Make the Commonwealth a Party ........ 25

C. The UTPCPL's Silence as to Whether the Attorney General Can Usurp a District Attorney's UTPCPL Action Does Not Create Ambiguity. ....... 31

II. Intervention Provides the Exclusive Means by Which the Attorney General Can Participate in a District Attorney's UTPCPL Action...... 33

A. The Attorney General Has a Statutory Right to Intervene in a District Attorney's UTPCPL Action, But Failed to Intervene Here. 33

B. No Other Authority Gives the Attorney General a Right to Interfere in a District Attorney's UTPCPL Action. ....... 35

III. The Commonwealth Court Erred in Concluding that the UTPCPL Was Ambiguous. ....... 38

IV. Even if the UTPCPL Were Ambiguous, the Commonwealth Court Erred in Concluding that the Legislature Intended for the Attorney General to be Able to Wrest Control of a District Attorney's UTPCPL Action. ....... 44

A. The Commonwealth Court Relied on Overruled Cases as Evidence of Legislative Intent. ....... 45

B. The Commonwealth Court Created New Meaning for "Chief Law Officer" Not Provided by Statute or Precedent. ....... 48

C. The Commonwealth Court Did Not Fully Grasp the Policy Considerations of its Decision. ....... 49

D. The Commonwealth Court Mistakenly Believed that the District Attorneys' Actions Could Not Obtain Additional Relief. ....... 52

E. The Commonwealth Court Failed to Consider that the District Attorneys' Actions Could Potentially Recover More for Their Communities than Participation in the Settlement. ....... 55

F. The Commonwealth Court Erred Further by Disregarding the District Attorneys' Authority. ....... 57

CONCLUSION ....... 60

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re 171.481 Acres to Borough of Millersville, Lancaster Cty.*,
290 A.2d 102 (Pa. 1972) ........ 34

*L.S. ex rel. A.S. v. Eschbach*,
874 A.2d 1150 (Pa. 2005) ........ 32

*Allstate Life Ins. Co. v. Com.*,
52 A.3d 1077 (Pa. 2012) ........ 34

*Borough of Millersville v. Lancaster Twp.*,
279 A.2d 349 (Pa. Cmwlth. 1971) ........ 34

*Brittain v. Beard*,
974 A.2d 479 (Pa. 2009) ........ 6

*Burton v. Schamp*,
25 F.4th 198 (3d Cir. 2022) ........ 50

*Carter v. City of Philadelphia*,
181 F.3d 339 (3d Cir. 1999) ........ 38

*City of Philadelphia v. Schaller*,
25 A.2d 406 (Pa. Super. 1942), *cert. denied,* 317 U.S. 649 (1942) ........ 47

*Com. v. Briggs*,
12 A.3d 291 (Pa. 2011) ........ 36

*Com. v. Carsia*,
517 A.2d 956 (Pa. 1986) ........ *passim*

*Com. v. Derr*,
293 A.3d 671 (Pa. Super.), *appeal denied,* 308 A.3d 766 (Pa. 2023) ........ 50

*Com. v. Fudeman*,
152 A.2d 428 (Pa. 1959) ........ 45

*Com. v. Gamby*,
283 A.3d 298 (Pa. 2002) .......................................................................26

*Com. v. Janssen Pharmaceutica, Inc.*,
8 A.3d 267 (Pa. 2010) ...........................................................................24

*Com. v. Mayfield*,
247 A.3d 1002 (Pa. 2021) .....................................................................40

*Com. v. Monsanto Co.*,
269 A.3d 623 (Pa. Cmwlth. 2021)...................................................39, 40

*Com. v. Mulholland*,
702 A.2d 1027 (Pa. 1997) .....................................................................36

*Com., for Use of Fayette Cty. v. Perry*,
199 A. 204 (Pa. 1938) ...........................................................................27

*Com., Pa. Game Comm'n v. Com., Dep't of Envtl. Res.*,
555 A.2d 812 (Pa. 1989) .......................................................................24

*Commonwealth v. Schab*,
383 A.2d 819 (Pa. 1978) ..................................................................*passim*

*Com. ex rel. Corbett v. People's Benefit Servs., Inc.*,
923 A.2d 1230 (Pa. Cmwlth. 2007).......................................................54

*Curro v. Com.*,
43 Pa. D. & C.3d 596 (Pa. Ct. Com. Pl. Del. Cty. 1985) .......................40

*In re Dauphin Cty. Fourth Investigating Grand Jury*,
943 A.2d 929 (Pa. 2007) ...................................................................31, 32

*Delgado v. Plaza Las Americas, Inc.*,
139 F.3d 1 (1st Cir. 1998) .....................................................................30

*United States ex rel. Eisenstein v. City of New York*,
556 U.S. 928 (2009) ........................................................................27, 42

*Gregg v. Ameriprise Fin., Inc.*,
245 A.3d 637 (Pa. 2021) .......................................................................54

*Hilton v. S.C. Pub. Rys. Comm'n*,
502 U.S. 197 (1991) .......... 49

*HTR Restaurants, Inc. v. Erie Ins. Exch.*,
307 A.3d 49 (Pa. 2023) .......... 28

*Hunt v. U.S. Tobacco Co.*,
538 F.3d 217 (3d Cir. 2008) .......... 54

*In re Investigation by Dauphin County Grand Jury*,
2 A.2d 783 (Pa. 1939) .......... 45

*Jubelirer v. Rendell*,
953 A.2d 514 (Pa. 2008) .......... 6

*Kim v. Com., Dep't of Transp.*,
270 A.3d 1284 (Pa. Cmwlth. 2022) .......... 34

*Koken v. Reliance Ins. Co.*,
893 A.2d 70 (Pa. 2006) .......... 25

*Appeal of Margiotti*,
75 A.2d 465 (Pa. 1950) .......... 45

*Matson v. Margiotti*,
88 A.2d 892 (Pa. 1952) .......... 45

*Commonwealth ex rel. Minerd v. Margiotti*,
188 A. 524 (Pa. 1936) .......... 7, 45, 46, 47

*Pa. Envtl. Def. Found. v. Com.*,
161 A.3d 911 (Pa. 2017) .......... 6

*Pa. Envtl. Def. Found. v. Com.*,
279 A.3d 1194 (Pa. 2022) .......... 6

*Pa. Gamefowl Breeders Ass'n v. Com.*,
551 A.2d 361 (Pa. Cmwlth. 1988) .......... 57

*Piehl v. City of Philadelphia*,
987 A.2d 146 (Pa. 2009) .......... 26

*POM of Pa., LLC v. Dep't of Revenue*,
221 A.2d 717 (Pa. Cmwlth. 2019)......9

*Rivers v. Roadway Express, Inc.*,
511 U.S. 298 (1994)......47

*In re Rodriguez*,
900 A.2d 341 (Pa. 2003)......47

*Schwartz v. Rockey*,
932 A.2d 885 (Pa. 2007)......54

*Shroeck v. Pa. State Police*,
362 A.2d 486 (Pa. Cmwlth. 1976)......58

*Sivick v. State Ethics Comm'n*,
238 A.3d 1250 (Pa. 2020)......32, 38

*Synthes USA HQ, Inc. v. Com.*,
289 A.3d 846 (Pa. 2023)......29, 49

*Trib Total Media, Inc. v. Highlands Sch. Dist.*,
3 A.3d 695 (Pa. Cmwlth. 2010)......9

*United States v. Sec. Indus. Bank*,
459 U.S. 70 (1982)......47

*Walker v. City of Philadelphia*,
45 A. 657 (Pa. 1900)......30

*Weinberg v. Sun Co., Inc.*,
777 A.2d 442 (Pa. 2001)......24, 54

**Statutes**

8 P.S. § 146......28

County Code, 16 P.S. § 1402(a)......57, 58, 59

16 P.S. § 14302......28

43 P.S. § 272......26

47 P.S. § 6-611(b)......26

55 P.S. § 425 .......... 26

63 P.S. § 1604(c) .......... 28

69 P.S. § 2603 .......... 26

69 P.S. § 2605(a) .......... 26

Fiscal Code, 72 P.S. § 1792-A.1(b.1) .......... 42, 57

1 Pa. C.S. § 1903 .......... 26

1 Pa. C.S. § 1922(1) .......... 48

1 Pa. C.S. § 1932 .......... 34

Race Horse Development and Gaming Act ("Gaming Act"),
4 Pa.C.S. § 1101 *et seq.* .......... 31, 32

42 Pa. C.S. § 723(a) .......... 5

42 Pa. C.S. § 5105(a) .......... 5

Commonwealth Attorneys Act ("CAA"), 71 P.S. § 732-101 *et seq.* .......... *passim*

§ 732-201(a) .......... 36

§ 732-204(c) .......... *passim*

§ 732-205 .......... 37, 38

§ 732-206 .......... 58

§ 732-206(a) .......... 57

§ 732-303 .......... 37

§ 732-403 .......... 37

Unfair Trade Practices and Consumer Protection Law
("UTPCPL"), 73 P.S. § 201-1 *et seq.* .......... *passim*

73 P.S. § 201-4.1 .......... 54

73 P.S. § 201-8 .......... 29, 42

73 P.S. § 201-8(b) .......... 54, 57

73 P.S. § 201-9.2 .......... 55

73 P.S. § 201-9.2(a) .......... 11, 54

Cash Consumer Protection Act, 73 P.S. § 204-1 *et seq.* .......... 26

False Claims Act, 31 U.S.C. § 3730 *et seq.* .......... 41, 42

31 U.S.C. § 3730(b) .......... 41

31 U.S.C. § 3730(c) .......... 42

**Other Authorities**

Black's Law Dictionary (11th ed. 2019) .......... 24, 30, 42

Pa. Const. art. IV, § 4.1 .......... 35, 49

Pa. R.A.P. 341(a) .......... 5

Pa. R.A.P. 341(b)(1) .......... 5

Pa. R.A.P. 903(a) .......... 5

Pa. R.A.P. 1101(b) .......... 5

Pa. R.A.P. 1532(b) .......... 6

Pa.R.Civ.P. 2102 .......... 25

## INTRODUCTION

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") provides concurrent authority to the Attorney General and district attorneys to bring civil law enforcement actions for unfair or deceptive acts or practices. Pursuant to that authority, the District Attorneys of Philadelphia and Allegheny Counties brought actions to protect their respective jurisdictions from unfair and deceptive trade practices in the marketing, sale, distribution, and dispensing of prescription opioids. The Philadelphia District Attorney actively litigated his UTPCPL claims for years, while the Allegheny District Attorney's claims were stayed in the coordinated proceedings.

Although the then-Attorney General was aware of those suits, he never exercised his right under the Commonwealth Attorneys Act ("CAA") to intervene in those actions to represent the Commonwealth's interests. Instead, apart from that litigation and before filing any action against the Defendants, the prior Attorney General independently reached a general settlement with the Defendants that purported to release all claims against them, *including the District Attorneys' UTPCPL public interest claims.* The District Attorneys, however, did not join that settlement or agree to release their claims.

The Attorney General's unilateral release of the District Attorneys' claims was *ultra vires*. The Attorney General lacks authority to usurp and settle a district attorney's UTPCPL public interest action. There is no statutory or constitutional authority in Pennsylvania, including in the UTPCPL, that grants the Attorney General a right to wrest control of (or settle) another plaintiff's civil action in which the Commonwealth is not a party. Indeed, the Commonwealth Court did not identify any statutory language, in the UTPCPL or otherwise, that purports to confer such power on the Attorney General.

The Commonwealth Court nevertheless concluded that the UTPCPL was ambiguous. The Court determined that the *absence* of language authorizing the Attorney General to supersede a district attorney creates a potential conflict as to whether a district attorney or the Attorney General represents the Commonwealth, and which individual has ultimate authority over the Commonwealth's claims. There cannot be any conflict in representation, however, because district attorneys do not, and cannot, represent the Commonwealth in UTPCPL actions. A district attorney brings a UTPCPL public interest action in the name of the Commonwealth for and on behalf of the citizens of the County in which he is elected. The Commonwealth itself is not a party to that action, absent the Attorney

General's intervention. Thus, because there is no ambiguity, the plain language of the UTPCPL—which lacks any right of supersession—controls.

Even if the UTPCPL's language was unclear, the Commonwealth Court's conclusion that the legislature intended the Attorney General to be able to supersede a district attorney is deeply flawed. First, the Commonwealth Court relied on *overruled* precedent to determine that the Attorney General had a common law right to supersede a district attorney in civil actions. Then the Court relied on the *absence* of any language in the UTPCPL abrogating that common law power to conclude that the legislature intended to incorporate that power in the UTPCPL. Moreover, the Commonwealth Court brushed aside the Pennsylvania Constitution and the CAA, even though this Court has held that those authorities limit the Attorney General's powers to those expressly enumerated by statute and exclude common law powers. In short, the *absence* of statutory language in the UTPCPL revoking a purported common law power—which this Court has held not to exist—cannot qualify as a statutorily enumerated power within the meaning of the Constitution and the CAA.

Moreover, the Commonwealth Court's decision has serious consequences for consumer protection, both in general and in this specific case. In general, by giving the Attorney General and district attorneys equal

authority to bring civil law enforcement actions, the UTPCPL promotes robust enforcement. The Commonwealth Court's ruling, by permitting the Attorney General to settle cases after district attorneys have done the work, discourages district attorneys from investing resources into UTPCPL public interest actions.

In this case, specifically, the Commonwealth Court has deprived the District Attorneys of an opportunity to try to obtain a better result for their electorates than through the Attorney General's settlement. The Commonwealth Court erred by suggesting there was nothing left for the District Attorneys to recover in their *public interest* UTPCPL actions because Philadelphia and Allegheny County settled their *private* UTPCPL actions. But those are different claims, brought under different statutory sections, with different remedies, and different burdens of proof. Here, the District Attorneys, as the plaintiffs controlling their own cases, made a reasonable determination that the Attorney General's settlements undervalued their claims. Indeed, that same calculus recently proved extremely favorable for Philadelphia, which, after opting out of a settlement by the Attorney General, reached a $110 million settlement with Walgreens for unlawful dispensing of prescription opioids.

Thus, because there is no statutory text—in the UTPCPL, CAA, or elsewhere—that confers on the Attorney General a power to take over and settle another plaintiff's lawsuit, the Attorney General lacked authority to release the District Attorneys' UTPCPL claims here. This Court should reverse the judgment.

## STATEMENT OF JURISDICTION

The Commonwealth Court's January 26, 2024 Order disposed of all claims and all parties. Thus, the order is final and appealable. 42 Pa. C.S. § 5105(a); Pa. R.A.P. 341(a), (b)(1). The District Attorneys filed a timely notice of appeal on February 26, 2024. Pa. R.A.P. 903(a), 1101(b). Because the action was originally commenced in the Commonwealth Court, this Court has exclusive jurisdiction over the appeal. 42 Pa. C.S. § 723(a).

## ORDER IN QUESTION

The Commonwealth Court's January 26, 2024 Order states:

> AND NOW, this 26th day of January, 2024, the Application for Summary Relief (ASR) filed by Respondent Attorney General of the Commonwealth of Pennsylvania is GRANTED; the ASR filed by Petitioners is DENIED; and the ASR filed by remaining Respondents is DISMISSED as moot in accordance with the foregoing opinion.

## STATEMENT OF THE SCOPE OF REVIEW AND STANDARD OF REVIEW

"In reviewing the Commonwealth Court's decision on cross-motions for summary relief pursuant to Pa.R.A.P. 1532(b)," this Court "may grant relief only if no material questions of fact exist and the right to relief is clear." *Pa. Envtl. Def. Found. v. Com.*, 279 A.3d 1194, 1202 (Pa. 2022) (quoting *Pa. Envtl. Def. Found. v. Com.*, 161 A.3d 911, 929 (Pa. 2017)) (internal quotation marks omitted). Whether summary relief was correctly granted or denied is a question of law such that this Court's standard of review is *de novo* and its scope of review is plenary. *See, e.g.*, *Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008); *Brittain v. Beard*, 974 A.2d 479, 483 (Pa. 2009).

## STATEMENT OF THE QUESTIONS INVOLVED

1. Whether the Commonwealth Court erred in concluding that the Attorney General generally has the authority to supersede District Attorneys in civil actions such that the Attorney General is authorized to release claims brought by District Attorneys under the UTPCPL, 73 P.S. § 201-4.

*Answer below:* The Commonwealth Court disagreed.

2. Whether the Attorney General lacks authority to supersede District Attorneys in actions brought by District Attorneys under the UTPCPL, 73 P.S. § 201-4, because the plain text of the statute provides concurrent

jurisdiction to the Attorney General and district attorneys, and the Attorney General's powers are strictly limited to legislative designation and enumeration.

*Answer below:* The Commonwealth Court disagreed.

3. Whether the Commonwealth Court erred in concluding that the Attorney General has plenary authority to act on behalf of the Commonwealth in the UTPCPL claims brought by the District Attorneys, including by superseding the District Attorneys and releasing their claims, even though those claims were brought by the District Attorneys pursuant to their express authority under 73 P.S. § 201-4, not by the Commonwealth, and the Attorney General failed to timely intervene in these actions.

*Answer below:* The Commonwealth Court disagreed.

4. Whether the Commonwealth Court, in interpreting the legislative intent behind the UTPCPL, 73 P.S. §§ 201-1 *et seq.*, erred by continuing to apply *Commonwealth ex rel. Minerd v. Margiotti*, 188 A. 524 (Pa. 1936), and its progeny—which held that the Attorney General had common law authority to supersede a District Attorney—even though the Supreme Court overruled those cases and the Pennsylvania Constitution has limited the Attorney General's powers to those expressly enumerated by statute.

*Answer below:* The Commonwealth Court disagreed.

5. Whether the Commonwealth Court erred in concluding that the Attorney General had the power to supersede the District Attorneys in their own geographic jurisdictions and release their UTPCPL claims when the Attorney General did not even intervene in the District Attorneys' actions.

*Answer below:* The Commonwealth Court disagreed.

## STATEMENT OF THE CASE

### I. Statement of the Form of Action

On May 17, 2022, Appellants, Philadelphia District Attorney, Larry Krasner, and Allegheny County District Attorney, Stephen A. Zappala, Jr., filed a Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief. 53a–85a. In the Petition for Review, Appellants sought to enjoin the Attorney General from releasing the District Attorneys' UTPCPL claims against certain manufacturers and distributors of prescription opioids. 85a.

On July 27, 2022, Appellants filed an Application for Summary Relief. On August 2 and 5, 2022, the "Settling Defendants"[1] and the Attorney

[1] "Settling Defendants" include Respondents-Appellees McKesson Corp., Cardinal Health, Inc., AmerisourceBergen Drug Corp., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

General each filed respective Cross-Applications for Summary Relief. The Commonwealth Court heard oral argument on October 12, 2022.

## II. Statement of Prior Determination

The Commonwealth Court granted the Attorney General's Application for Summary Relief, denied Appellants' Application for Summary Relief, and dismissed the Settling Defendants' Cross-Application for Summary Relief as moot in an *en banc* Order and Opinion issued on January 26, 2024. 23a.

## III. Judge Whose Determinations Are to Be Reviewed

The Commonwealth Court's *en banc* Order and Opinion was authored by the Honorable Michael H. Wojcik.

## IV. Chronological Statement of Record Facts

### A. The Opioid Epidemic in Pennsylvania

According to the Petition for Review,[2] beginning in the mid-1990s, prescription opioid drug manufacturers—including Settling Defendant Janssen Pharmaceuticals, Inc. ("Janssen")—employed a sophisticated campaign that downplayed the significant risks of prescribing and using

[2] The parties filed cross-applications for summary relief after pleadings. "[T]hus, 'all of the opposing party's allegations are viewed as true and only those facts which have been specifically admitted by him may be considered against him.'" *POM of Pa., LLC v. Dep't of Revenue*, 221 A.2d 717, 722 n.7 (Pa. Cmwlth. 2019) (quoting *Trib Total Media, Inc. v. Highlands Sch. Dist.*, 3 A.3d 695, 698 n.2 (Pa. Cmwlth. 2010)).

opioids for chronic pain. Manufacturers engaged in massive, systematic false and deceptive marketing, spending tens of millions of dollars aggressively promoting prescription opioids to treat chronic pain and dismissing the significant risk of addiction. These efforts were directed at doctors, patients, and the public. The Manufacturer Defendants' false and deceptive marketing succeeded in significantly modifying the prescribing practices of physicians around the country and in the Philadelphia and Allegheny County areas, thereby dramatically increasing the use of prescription opioids in those communities. 557a; 719a.

The three largest distributors of pharmaceutical drugs—Settling Defendants McKesson Corp., Cardinal Health, Inc., and AmerisourceBergen Drug Corp. (the "Distributors")—created, enabled, and fueled a secondary market for prescription opioids by failing to effectively control their distribution, while also publicly misrepresenting their anti-diversion efforts. 570a–571a; 650a–664a; 731a–732a; 806a–819a. From 2006 to 2014, 436,949,317 prescription pain pills—enough for 39 pills per person per year—were distributed into Allegheny County. 66a. Over the same period, 518,013,833 prescription pain pills—enough for 38 pills per person per year—were distributed into Philadelphia. 66a.

The opioid crisis caused by the Settling Defendants has ravaged the lives of Philadelphia and Allegheny County residents. 57a. As of the filing of the Petition for Review in 2022, "Allegheny County has had about 3,400 opioid deaths in the last five and one-half years; roughly 2 people per day." 57a. The District Attorneys alleged that, "[i]n Philadelphia, during the first three quarters of 2020, as the pandemic decimated City budgets and shutdowns made access to treatment difficult, overdose deaths in the City rose 11%, with Black overdose deaths soaring 40.3%."[3] 57a.

### B. Pennsylvania Opioid Litigation

In response to this public health crisis and the unlawful actions of opioid manufacturers and distributors, Pennsylvania local governments and district attorneys took action.[4] On February 2, 2018, Philadelphia District Attorney

---

[3] The City of Philadelphia updated the figures cited in the Petition for Review on October 2, 2023, reporting a record 1,413 unintentional overdose deaths in 2022, an 11% increase over the previous record of 1,276 unintentional overdose deaths in 2021. More than 80% of the unintentional overdose deaths involved opioids. Press Release, "Philadelphia Records More than 1,400 Overdose Deaths in 2022; Deaths among Black Residents Rose Nearly 20%," *City of Philadelphia* (Oct. 2, 2023), https://www.phila.gov/2023-10-02-philadelphia-records-more-than-1400-overdose-deaths-in-2022-deaths-among-black-residents-rose-nearly-20/.

[4] In addition to the District Attorneys' actions, both the City of Philadelphia and Allegheny County filed private actions against manufacturers and distributors of opioids under a different section of the UTPCPL, 73 P.S. § 201-9.2(a).

Larry Krasner brought a single-count UTPCPL enforcement action. He filed an amended complaint on November 14, 2018. 67a. On February 3, 2021, Allegheny County District Attorney Stephen A. Zappala, Jr. similarly brought a single-count UTPCPL enforcement action. 67a.

On May 27, 2018, the Delaware County Court of Common Pleas issued an order coordinating all the Pennsylvania opioid litigation, including the District Attorneys' UTPCPL actions. 70a.

In the coordinated proceedings, the Philadelphia District Attorney's case was designated as one of four "bellwether" cases. 58a. As a result, the Philadelphia District Attorney actively litigated his case for years. 58a–59a. His office spent considerable resources, including tens of thousands of hours collecting, reviewing, and producing documents and working with experts. 58a–59a. The Allegheny County District Attorney's case was stayed as a result of coordination. 58a. The then-Attorney General did not have a case, intervene, or otherwise participate in the coordinated proceedings. 70a.

### C. The Attorney General's Settlement Agreements

Instead of bringing his own UTPCPL enforcement action against the Settling Defendants or intervening in the District Attorneys' cases, the then-Attorney General participated in an "investigation" of the opioid crisis by "a bipartisan group of Attorneys General." 55a. On October 21, 2019, the

Attorney General announced a $48 billion "agreement in principle" to a national settlement with five opioid companies, including the Settling Defendants and one other opioid manufacturer. The agreement was ultimately rejected by a majority of state attorneys general as well as major municipalities across the United States. 56a.

Almost two years later, the Attorney General still had not filed a lawsuit against the Settling Defendants or intervened in the District Attorneys' cases, but announced yet another settlement with the Settling Defendants. 57a. The terms of the Settlement Agreement purported to release *all* claims against the Settling Defendants, including UTPCPL actions brought by district attorneys. The Settlement Agreements provide:

> The releases provided for in this Agreement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of each Settling State and its Attorney General to release claims. This Agreement shall be a complete bar to any Released Claim.

142a–143a (Distributor Settlement Agreement); *see also* 425a (Janssen Settlement Agreement) (containing identical language).

Separately, the Attorney General negotiated "side agreements"—one with the Distributors and one with Janssen—committing to expend the full resources of his office to extinguish the District Attorneys' claims. The

Distributor Side Agreement dated, February 7, 2022, amends Section XI(G) of the Distributor Agreement and the Janssen Side Agreement, dated January 31, 2022, amends Section IV of the Janssen Agreement to include the following representation and warranty:

> The Attorney General of the Commonwealth of Pennsylvania has the authority to represent the Commonwealth and all Commonwealth agencies and has the authority to settle and release the claims of the Commonwealth and Commonwealth agencies, and hereby settles and releases, all Released Claims of the District Attorneys brought in the name of the or on behalf of the Commonwealth and/or Commonwealth agencies.

2786a; 2791a. The Attorney General further warranted that he would "take all necessary steps, including by filing an appeal or petition for allocator [*sic*] to Pennsylvania Supreme Court or by intervening in trial or post-trial proceedings, to secure the dismissal with finality of the Released Claims of the Litigating PA District Attorneys in coordination with the Distributors" and with Janssen. 2787a (Distributors); *see also* 2792a (Janssen).

During the opt-in period, the City of Philadelphia and Allegheny County opted into the Settlement Agreements, agreeing to settle their private UTPCPL actions (and any other claims they could have brought). The Philadelphia and Allegheny County District Attorneys, however, opted out of the Settlement Agreements, declining to settle their separate UTPCPL actions.

Only after the Settlement Agreements had been reached, on April 18, 2022, did the former Attorney General initiate lawsuits against the Settling Defendants. Days later, on April 29, 2022, the Attorney General filed Consent Judgments—one for the Distributors Settlement Agreement and one for the Janssen Settlement Agreement. The Consent Judgments state that the parties have satisfied all conditions of the Settlement Agreement, including that the Attorney General has "exercised the fullest extent of his or her powers to release the Settling Distributors and all other Released Entities from all Released Claims pursuant to the release." 863a; 1531a. On July 12, 2022, the Commonwealth Court entered the final Consent Judgments. 2783a–2784a.

**D. Commonwealth Court Litigation**

Because the Consent Judgments purport to extinguish the District Attorneys' UTPCPL claims against the Distributors and Janssen, the Philadelphia and Allegheny County District Attorneys filed a Petition for Review in the Commonwealth Court, seeking a declaration that the Attorney General lacked authority to release their claims. After the pleadings closed, the District Attorneys filed an application for summary relief. The Attorney General and the Settling Defendants filed cross-applications for summary relief.

On January 26, 2024, the Commonwealth Court granted the Attorney General's application for summary relief, denied Appellants' application for summary relief, and dismissed as moot the Settling Defendants' application for summary relief.

The Commonwealth Court first concluded that, "[a]lthough both the Attorney General and a district attorney many bring concurrent enforcement actions under the UTPCPL," the statute is ambiguous because it "does not make it clear whether the Attorney General may override or supersede a district attorney *when conflict in representation of the Commonwealth occurs*." 10a (emphasis added).

Given its conclusion that the statute is ambiguous, the Commonwealth Court attempted to discern the General Assembly's legislative intent in enacting the UTPCPL. First, the Court looked to the UTPCPL's text, observing that actions under section 4 must be in the "public interest" and filed "in the name of the Commonwealth." 11a–12a (citing 73 P.S. § 201-4).

The Court next turned to the Pennsylvania Constitution and the CAA, which it held "must be read *in pari materia* with the UTPCPL," since "both relate to the authority of the Attorney General and district attorneys." 12a. The Court explained that, under the Constitution, "the Attorney General's powers are derived from statutes as enacted by the General Assembly." 12a

(citing *Com. v. Carsia*, 517 A.2d 956, 957 (Pa. 1986)). "Consistent with the Pennsylvania Constitution," the General Assembly enacted the CAA to define the "general powers and duties of the Attorney General." 13a. The Commonwealth Court recognized that this Court has interpreted the CAA as the "sole source of the Attorney General's powers." 13a (quoting *Carsia*, 517 A.2d at 958).

The Commonwealth Court explained that the Attorney General's civil authority under the CAA is broad, relying exclusively on section 204(c), which provides, in part, that "'the Attorney General shall represent the Commonwealth and all Commonwealth agencies . . . in *any action brought by* or against the Commonwealth or its agencies, and may intervene in any other action." 14a–15a (quoting 71 P.S. § 732-204(c)). The court further noted that, "[a]lthough the General Assembly delegated some authority to district attorneys to bring UTPCPL claims in the name of the Commonwealth, *it never limited the Attorney General's authority over UTPCPL matters or civil actions in general*." 17a (emphasis added). The court reasoned that "because the Attorney General's authority to pursue [civil actions] was not altered" by the CAA, "*a supersession provision was not necessary in order for the Attorney General to act on behalf of the Commonwealth*" in civil actions. 17a (emphasis added). Based solely on the Attorney General's

purportedly broad authority to "represent" the Commonwealth, the Court rejected the District Attorneys' argument that the absence of any supersedure provisions means that the Attorney General lacks such authority. 15a.

To support its conclusion, the Court relied on a series of cases that, at the time the UTPCPL was enacted and reenacted, "established that the Attorney General possessed common law powers to replace or supersede a district attorney." 17a. The Commonwealth Court noted in a footnote that this Court, in *Commonwealth v. Schab*, overruled those cases and explained why no such common law power existed. 17a. Yet the Commonwealth Court nevertheless concluded that, because "[t]he plain language of the UTPCPL did not abrogate" what was, at the time, a "well-established common law rule," the legislature must have intended for the UTPCPL to incorporate that phantom common-law power. 18a–19a. The Commonwealth Court then observed that, "[a]lthough the common law has since changed, the changes in the Pennsylvania Constitution and the adoption of the CAA after the UTPCPL did not impinge the Attorney General's foremost authority over civil litigation." 18a.

The Court further found that public policy favors construing the UTPCPL to permit the Attorney General to supersede district attorneys

because "[t]he Attorney General, as the 'chief law officer,' outranks all district attorneys and is in the best position to represent the 'public interest' in pursuing and resolving the *Commonwealth*'s UTPCPL claims. . . particularly where, as here, a conflict in representation exists." 20a (emphasis added).

Finally, the Court concluded that it would be futile to let the District Attorneys' claims proceed because "[t]he authorized representatives of the City of Philadelphia and Allegheny County have agreed to the terms of the settlements," and "there is nothing left for [the District Attorneys] to obtain." 20a-21a. As a result, the Court concluded that "the Attorney General has the authority to supersede the [District Attorneys'] UTPCPL claims." 21a.

## V. Statement of Place of Raising or Preservation of Issues

Appellants preserved the issues in this appeal in their Application for Summary Relief, their Brief in Support of their Application for Summary Relief, their Brief in Opposition to Appellees' Applications for Summary Relief, and their Reply Brief in Further Support of their Application for Summary Relief.

## SUMMARY OF ARGUMENT

The Attorney General lacked express or implied authority to supersede the District Attorneys and settle their UTPCPL public interest claims. The Commonwealth Court therefore erred and its judgment should be reversed.

The UTPCPL itself contains no language that the Attorney General can take over a district attorney's UTPCPL action and settle it. Although the CAA provides the Attorney General with a statutory right to intervene in any civil action to represent the Commonwealth's interests, the Attorney General did not exercise that right here. The Commonwealth, therefore, is not a party to the District Attorneys' actions. And there is no authority that confers on the Attorney General the power to supersede a district attorney's UTPCPL action. As this Court has held, the Pennsylvania Constitution and the CAA limit the Attorney General's powers to those prescribed by statute. Although the CAA also provides that the Attorney General "shall represent" the Commonwealth, that provision does not confer on the Attorney General a substantive right to supersede a district attorney in any civil action.

The Commonwealth Court erred, therefore, in concluding that the UTPCPL was ambiguous because it created a potential conflict between a district attorney and the Attorney General in the Commonwealth's representation. Even though the action must be captioned "in the name of the Commonwealth," the plaintiff in a district attorney's UTPCPL public enforcement action is the district attorney, not the Commonwealth, and the district attorney does not represent the Commonwealth. Significantly, if the Commonwealth were the plaintiff in every UTPCPL public enforcement

action, the Attorney General would be required to represent the Commonwealth pursuant to the CAA and district attorneys would effectively be precluded from pursuing these actions.

Nor does the UTPCPL's purported "silence" on how to resolve any representation conflict render the statute ambiguous. If the General Assembly had wanted to provide a supersedure power to the Attorney General, it knew how to do so. But where the General Assembly has not so provided, and the statutory text is clear—both of which are true of the UTPCPL—courts must apply the statute as written.

Even if the UTPCPL were ambiguous, the Commonwealth Court was wrong when it concluded that the legislature intended to authorize the Attorney General to supersede district attorneys. The court's reasoning hinges on a series of cases that this Court expressly overruled. Because those cases are—and always were—wrong, the legislature should not be presumed to have intended to propagate that legal error. Moreover, the Commonwealth Court compounded its flawed construction of the UTPCPL by concluding that the Pennsylvania Constitution and the CAA "did not impinge the Attorney General's foremost authority over civil litigation." But the Commonwealth Court was obligated to follow *Carsia,* which ruled that the 1978 constitutional amendment limits the Attorney General's authority to

that provided by statute, and that the CAA is the sole statutory source of power. Accordingly, even if the Attorney General did have the authority to supersede a district attorney at common law, and even if the UTPCPL would have been understood to incorporate that power because it was not expressly abrogated, such an interpretation of the UTPCPL was prohibited after the constitutional amendments and the CAA.

The Commonwealth Court also made other notable errors that infected its interpretation of the UTPCPL. For example, in weighing policy considerations, the Commonwealth Court failed to appreciate that its interpretation would seriously undermine enforcement of the UTPCPL, thereby harming the Commonwealth. The court also mistakenly thought that the District Attorneys' claims were futile because the District Attorneys would not be entitled to any relief even if their actions proceeded. But that is simply not true. The private claims released by the City of Philadelphia and Allegheny County are not the same as the District Attorneys' public interest claims and, in any event, the City and County have no authority to release the District Attorneys' claims. The District Attorneys were entitled to pursue their claims in the hope of achieving a better result for their electorates. Finally, the Commonwealth Court's interpretation also diminished the district attorneys' role as "chief law enforcement officer" within their jurisdictions.

For all of these reasons, the Commonwealth Court's decision was in error and its judgment should be reversed.

## ARGUMENT

### I. The UTPCPL Unambiguously Confers Equal Rights on the Attorney General and District Attorneys to Bring Public Enforcement Actions.

Section 201-4 of the UTPCPL provides that "[w]henever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth." 73 P.S. § 201-4. That provision gives both the Attorney General and district attorneys standing to serve as plaintiffs for UTPCPL public interest actions and specifies that such suits must be styled "in the name of the Commonwealth."

Just because public interest actions brought *by district attorneys* on behalf of their electorates are captioned "in the name of the Commonwealth" does not mean that their suits are brought *by the Commonwealth*. The caption requirement does not make the Commonwealth itself a party to the action. Furthermore, nothing in the UTPCPL gives either the Attorney General or a district attorney superior powers over the other. This case can and should be resolved in favor of the District Attorneys based alone on the

unambiguous, concurrent authority of the Attorney General and district attorneys each to bring their own UTPCPL public interest actions.

### A. The UTPCPL Confers Statutory Standing on the Attorney General and District Attorneys to File Public Enforcement Actions.

Section four of the UTPCPL confers standing on both the Attorney General and district attorneys to bring UTPCPL public interest actions. 73 P.S. § 201-4; *see also, e.g.*, *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 444–45 (Pa. 2001). The "purpose of the 'standing' requirement is to insure that a legal challenge is by a proper party." *Com., Pa. Game Comm'n v. Com., Dep't of Envtl. Res.*, 555 A.2d 812, 815 (Pa. 1989). The General Assembly may confer statutory standing by designating certain individuals or entities as proper plaintiffs. *See, e.g.*, *Com. v. Janssen Pharmaceutica, Inc.*, 8 A.3d 267, 274 (Pa. 2010) ("The General Assembly has frequently enacted statutes conferring standing on particular individuals or entities in specific situations.") (citing examples). Section 4 of the UTPCPL does just that by designating both the Attorney General and district attorneys as proper plaintiffs for public enforcement actions. *See* Black's Law Dictionary (11th ed. 2019) (defining "plaintiff" as "[t]he party who brings a civil suit in a court of law").

Significantly, the text of the UTPCPL does not differentiate between the authority of the Attorney General and that of a district attorney to bring a public interest action. The UTPCPL, therefore, unambiguously gives district attorneys and the Attorney General co-equal rights as plaintiffs in UTPCPL public interest actions. That plain, unambiguous language controls. *See, e.g.*, *Koken v. Reliance Ins. Co.*, 893 A.2d 70, 82 (Pa. 2006).

### B. Public Interest Actions Must be Filed "In the Name of the Commonwealth" but Such a Designation Does Not Make the Commonwealth a Party

Section 4 requires public interest actions, regardless of whether they are brought by the Attorney General or a district attorney, to be filed "in the name of the Commonwealth." 73 P.S. § 201-4. That is solely a captioning requirement. *Cf.* Pa.R.Civ.P. 2102 (action by the Commonwealth must be "style[d] "in the name of the Commonwealth"). The purpose of requiring the action be filed "in the name of the Commonwealth" is to reflect that UTPCPL enforcement actions are in the public interest. 73 P.S. § 201-4 (Attorney General or a district attorney must have "reason to believe" "that proceedings would be in the public interest").

Indeed, numerous statutes authorize non-Commonwealth parties to bring other types of civil enforcement actions to increase enforcement and serve the public interest, and those statutes are similarly captioned "in the

name of the Commonwealth." *See, e.g.*, 43 P.S. § 272 (authorizing a factory inspector to bring an action "in the name of the Commonwealth" for violations regarding assignment of wages); 47 P.S. § 6-611(b) (authorizing district attorney and others to bring action "in the name of the Commonwealth" to enjoin common nuisances); 55 P.S. § 425 (authorizing any person to sue "in the name of the Commonwealth" for neglect and recover half of the fine, and the other half is paid to the Commonwealth's school fund); 73 P.S. §§ 204-5, 204-8(a) (Cash Consumer Protection Act granting equal authority for the Attorney General and district attorneys to bring civil claims); 69 P.S. §§ 2603, 2605(a) (same for credit cards).

Although the UTPCPL does not specifically define the phrase "in the name of the Commonwealth," that phrase should be construed in accordance with its ordinary or usual meaning, which, as explained above, is to designate that the case is brought in the public interest. *See, e.g., Com. v. Gamby*, 283 A.3d 298, 306 (Pa. 2002) ("We ascertain the plain meaning of a statute by ascribing to the particular words and phrases the meaning which they have acquired through their common and approved usage, and in context."); 1 Pa. C.S. § 1903.

Moreover, the caption is not determinative of the parties to an action. *See, e.g.*, *Piehl v. City of Philadelphia*, 987 A.2d 146, 154-55 (Pa. 2009)

(rejecting the argument that the caption is controlling as to the parties to a lawsuit); *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 935 (2009) ("A person or entity can be named in the caption of a complaint without necessarily becoming a party to the action"). Thus, the fact that a plaintiff's complaint is captioned "in the name of the Commonwealth" does not make the Commonwealth an actual party to the suit.

This Court previously rejected the notion that the Commonwealth is necessarily the plaintiff because the suit is styled "in the name of the Commonwealth." *See Com., for Use of Fayette Cty. v. Perry*, 199 A. 204, 207 (Pa. 1938). In *Perry*, Fayette County filed suit "in the name of the Commonwealth" against a surety of a tax collector's bond. The surety contended that the County's action was barred by the statute of limitations, while the County argued that limitations periods should not apply to its action. Although this Court recognized that "a statutory period of limitations will not be applied against the commonwealth as a party unless it is expressly [] provided," the Court concluded that the County's suit "in the name of the Commonwealth" was *not* a suit brought by the Commonwealth, meaning the County could not avail itself of the Commonwealth's exemption from the statute of limitations. *See id.* at 207 ("The real party here is not the commonwealth but the political subdivision.").

The conclusion that the Commonwealth is not automatically the plaintiff in a suit brought "in the name of the Commonwealth" is further reinforced by principles of statutory construction. "Where the legislature has used two different words, rules of statutory construction require courts to give those words distinct meanings." *HTR Restaurants, Inc. v. Erie Ins. Exch.*, 307 A.3d 49, 67 (Pa. 2023). There are a number of statutes that distinguish between suits "brought by the Commonwealth" or in which the Commonwealth is a party, and suits brought "in the name of the Commonwealth," making clear that those phrases have distinct meanings. For example, 16 P.S. § 14302 states that, "The district attorney shall sign each bill of indictment and conduct in court each criminal and other prosecution, *in the name of the Commonwealth, or, if the Commonwealth is a party*, that arises in the county for which the district attorney is elected." 16 P.S. § 14302 (emphasis added); *see also* 63 P.S. § 1604(c) (authorizing insured to bring suit "in the name of the Commonwealth" on a public adjuster's bond "[i]f no suit should be brought by the Commonwealth of Pennsylvania"); 8 P.S. § 146 (authorizing person who has supplied contractor with labor and materials for any public contract, but has not been paid, to bring suit "in the name of the Commonwealth" against contractor's surety bond "[i]f no suit be brought by

the Commonwealth"). In sum, the fact that an action is filed "in the name of the Commonwealth" does not make the Commonwealth a party-plaintiff.

Indeed, if filing suit "in the name of the Commonwealth" rendered the Commonwealth the plaintiff, no matter who initiated the action, then the General Assembly's grant of standing to district attorneys would effectively be rendered meaningless. If the Commonwealth is the plaintiff in every section 4 UTPCPL action, including one filed by a district attorney, then the Attorney General would be required to litigate that action. *See* 71 P.S. § 732-204(c) ("The Attorney General shall represent the Commonwealth . . . in any action brought by or against the Commonwealth . . . ."); *Synthes USA HQ, Inc. v. Com.*, 289 A.3d 846, 862 (Pa. 2023) (Attorney General's duty to represent the Commonwealth under section 204(c) begins "when an 'action' is brought").

The district attorney's role under the UTPCPL would therefore be limited solely to initiating litigation. Such a limited role for a district attorney bringing a UTPCPL public interest action, however, is inconsistent with the statutory text, the plain language of which confers equal authority on the Attorney General and district attorneys and contemplates that a district attorney will litigate his action through to completion, including recovery of civil penalties. *See* 73 P.S. § 201-8 (authorizing "the Attorney General *or the*

*appropriate District Attorney*" to "recover, on behalf of the Commonwealth of Pennsylvania, a civil penalty") (emphasis added). Moreover, such an interpretation would obligate the Attorney General, as the Commonwealth's representative, to litigate all UTPCPL cases brought by district attorneys, including cases that the Attorney General declined to bring herself.

Thus, the fact that the District Attorneys' UTPCPL actions were brought "in the name of the Commonwealth" does not alter the fact that the District Attorneys are the plaintiffs in those actions and the UTPCPL claims are theirs to litigate, settle, or release, at least absent any contrary statutory authority. *See*, *e.g.*, *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998) ("the plaintiff has the right to control his own litigation"); Black's Law Dictionary (defining "party" as "[o]ne by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit *and has a right to control the proceedings*, make a defense, or appeal from an adverse judgment") (emphasis added); *Walker v. City of Philadelphia*, 45 A. 657, 657 (Pa. 1900) ("Parties . . . are all persons having a right to control the proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from the decision if any appeal lies.").

### C. The UTPCPL's Silence as to Whether the Attorney General Can Usurp a District Attorney's UTPCPL Action Does Not Create Ambiguity.

The UTPCPL contains no contrary provisions that suggest that the Attorney General can unilaterally wrest control of a district attorney's action, including by settling it, when the Attorney General has not even intervened. Indeed, even if the Attorney General also files a public interest action against the same defendants, based on the same conduct, there is nothing in the UTPCPL that authorizes the Attorney General to take over, dismiss, or settle a district attorney's action. The UTPCPL does not give either potential plaintiff any authority over another plaintiff's action.

The absence of such authority does not render the statute ambiguous. As this Court recognized, in addressing a similar statute that conferred concurrent authority on district attorneys and the Attorney General to conduct criminal investigations for violations of the Gaming Act, the absence of any statutory provision conferring superior authority on the Attorney General, or limiting the authority of district attorneys, did not make the statute ambiguous. *In re Dauphin Cty. Fourth Investigating Grand Jury*, 943 A.2d 929, 938 (Pa. 2007). Referring to the statute's "plain and unambiguous language," this Court explained, the Gaming Act "plainly confers authority upon county district attorneys to prosecute violations of the Act and does not

subordinate that authority to that of the Attorney General." *Id.* The Court noted that, because its "task is solely interpretive, and the language of the Act is clear," the question of "whether it was wise for the General Assembly to draft the Gaming Act in a way which allows county district attorneys to undertake criminal investigations" was not before it. *Id.*

The same is true here. The UTPCPL's plain language is clear: both the Attorney General and district attorneys have standing to bring public interest actions, and the General Assembly did not differentiate between their authority. "[I]f the General Assembly wanted the Attorney General to have exclusive or primary authority over [public interest actions], it easily could have done so explicitly." *Id.* at 937. But it did not. This Court must apply the statute as written. *See, e.g.*, *Sivick v. State Ethics Comm'n*, 238 A.3d 1250, 1264 (Pa. 2020) ("It is axiomatic that we may not add statutory language where we find the extant language somehow lacking."); *L.S. ex rel. A.S. v. Eschbach*, 874 A.2d 1150, 1156 (Pa. 2005) ("[I]n construing a statute, the court must ascertain and give effect to the legislative intention as expressed in the language of the statute, and cannot, under its powers of construction, supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted.") (internal quotation marks omitted).

## II. Intervention Provides the Exclusive Means by Which the Attorney General Can Participate in a District Attorney's UTPCPL Action.

### A. The Attorney General Has a Statutory Right to Intervene in a District Attorney's UTPCPL Action, But Failed to Intervene Here.

Although the UTPCPL does not confer any right on the Attorney General to usurp a district attorney's public enforcement action in which the Commonwealth is not a party, the Attorney General has a statutory right to intervene in all civil actions in which the Commonwealth is not already a party, which would include a district attorney's UTPCPL action.

The CAA provides that "[t]he Attorney General shall represent the Commonwealth and all Commonwealth agencies . . . in any [civil] action brought by or against the Commonwealth or its agencies, and *may intervene in any other action*[.]" 71 P.S. § 732-204(c) (emphasis added). A district attorney's UTPCPL public interest action is brought by the district attorney, not "by . . . the Commonwealth," and therefore qualifies under the CAA's plain language as "any other [civil] action" in which the Attorney General may intervene.

Here, therefore, the Attorney General had a right to intervene in the District Attorneys' UTPCPL actions. If the then-Attorney General had exercised that right, the Commonwealth would have become a party to the actions and the Attorney General could have represented the

Commonwealth's interests according to the rules and procedures applicable to intervention. The Attorney General, however, never sought to participate in the District Attorneys' actions.

The Attorney General's right to intervene in any civil action in which the Commonwealth is not a party, including a district attorney's UTPCPL public interest action, reinforces the conclusion that the UTPCPL's silence as to any right of supersession does not render the statute ambiguous. Where possible, statutes *in pari materia* should be construed together as one law. *See, e.g.*, *Allstate Life Ins. Co. v. Com.*, 52 A.3d 1077, 1080–81 (Pa. 2012); 1 Pa. C.S. § 1932. Because the CAA provides the Attorney General with a right to intervene to represent the Commonwealth's interests, and because the UTPCPL provides a district attorney with the authority to bring a public enforcement action, when the CAA and UTPCPL are read together, there is no gap or ambiguity in the UTPCPL. *See Borough of Millersville v. Lancaster Twp.*, 279 A.2d 349, 351–52 (Pa. Cmwlth. 1971), *aff'd and remanded on other grounds, In re 171.481 Acres to Borough of Millersville, Lancaster Cty.*, 290 A.2d 102 (Pa. 1972) (when two statutes are *in pari materia*, a particular provision in one will control when the other statute is silent as to that matter); *Kim v. Com., Dep't of Transp.*, 270 A.3d 1284, 1293 (Pa. Cmwlth. 2022).

Thus, reading the UTPCPL and the CAA together, the UTPCPL does not provide the Attorney General with any right to supersede a district attorney's public interest action, but the CAA provides the Attorney General a right to intervene in that action. Here, therefore, the Attorney General could have intervened in the District Attorneys' UTPCPL actions to represent the Commonwealth's interests. The former Attorney General, however, failed to exercise that right. Having slept on his rights to represent the Commonwealth's interests, the Attorney General cannot now craft out of whole cloth a statutory right to supersession that appears nowhere in the UTPCPL (or in any other source of authority).

**B. No Other Authority Gives the Attorney General a Right to Interfere in a District Attorney's UTPCPL Action.**

No state law authorizes the Attorney General to usurp, another plaintiff's action when the Commonwealth is not a party. The Pennsylvania Constitution provides that the Attorney General "shall be the chief law officer of the Commonwealth and shall exercise such powers and perform such duties *as may be imposed by law*." Pa. Const. art. IV, § 4.1 (emphasis added). This Court has explained that the "as may be imposed by law" language "clearly shows an extension of power to the legislature to statutorily define and regulate the powers and duties of the Attorney General." *Carsia*, 517 A.2d at 958. In other words, "[i]t is now firmly established in this

Commonwealth that 'the powers of the attorney general are strictly limited and are solely a 'matter of legislative designation and enumeration.'" *Com. v. Briggs*, 12 A.3d 291, 328 (Pa. 2011) (quoting *Com. v. Mulholland*, 702 A.2d 1027, 1037 (Pa. 1997)). Thus, the Attorney General's powers derive solely from statute. *Carsia*, 517 A.3d at 958 (rejecting the argument that the Attorney General's powers include common law powers that existed prior to the Pennsylvania Constitution).

Moreover, the Attorney General's constitutional role as the Commonwealth's "chief law officer" does not confer any independent powers upon the Attorney General aside from those granted by statute. This Court has repeatedly held, despite the "chief law officer" language, that the Attorney General's powers derive exclusively from statutes. *See, e.g.*, *Briggs*, 12 A.3d at 328; *Carsia*, 527 A.2d at 958.

In the wake of the constitutional amendment that made the Attorney General an elected (rather than an appointed) official, the General Assembly enacted the Commonwealth Attorneys Act, in part to define the Attorney General's powers. The Act states, "[t]he Attorney General *shall* exercise such powers and perform such duties *as are hereinafter set forth*." 71 P.S. § 732-201(a) (emphases added). This Court has recognized that the CAA

"is the *sole source* of the Attorney General's powers." *Carsia*, 517 A.2d at 958 (emphasis added).

Section 732-204(c) provides that the Attorney General "shall represent the Commonwealth" in actions "brought by or against the Commonwealth," and may intervene in any other action . . . ." 71 P.S. § 732-204(c). Notably lacking from the CAA is any authority for the Attorney General to supersede a plaintiff in a civil action. Similarly, absent intervention, the Attorney General's authority to represent the Commonwealth does not provide the Attorney General with any authority to participate in an action that is *not* brought by or against the Commonwealth, which includes a district attorney's UTPCPL action.

Indeed, the fact that the CAA does not give the Attorney General broad authority to supersede a district attorney in civil cases is highlighted by the fact that the General Assembly expressly conferred supersession authority on other individuals elsewhere in the statute. *See, e.g.*, 71 P.S. § 732-303 (when authorized by the Attorney General, General Counsel may supersede the Attorney General and represent any executive branch agency, the Governor, or executive branch official); *id.* § 732-403 (when authorized by the Attorney General, agency counsel may supersede the Attorney General and represent the agency or its official). And pursuant to § 732-205, the

Attorney General may petition the court in any criminal proceeding "to supersede the district attorney in order to prosecute a criminal action or to institute criminal proceedings." *Id.* § 732-205. That the legislature granted the Attorney General such power in certain criminal cases, but did not do so in any civil cases, precludes an inference that the legislature broadly intended to empower the Attorney General to supersede district attorneys in all civil cases, including UTPCPL actions. *See, e.g.*, *Sivick*, 238 A.3d at 1264 (applying the doctrine *expressio unius est exclusio alterius*); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 353 (3d Cir. 1999) ("[I]n Pennsylvania, unlike many other jurisdictions, the AG has no inherent authority to supersede a district attorney's decisions generally.").

Thus, although the Attorney General has a right to intervene in any civil action in which the Commonwealth is not already a party, the Attorney General lacks any statutory authority to usurp another plaintiff's action, including a UTPCPL action that the legislature has expressly authorized a district attorney to bring. 73 P.S. § 201-4.

## III. The Commonwealth Court Erred in Concluding that the UTPCPL Was Ambiguous.

The Commonwealth Court concluded that the UTPCPL was ambiguous because it understood the statute to permit both the Attorney General and district attorneys to "represent" the Commonwealth in UTPCPL

public interest actions, but not to provide which entity has final decision-making authority for the Commonwealth when there is a conflict. *See* 10a ("Although both the Attorney General and a district attorney may bring concurrent enforcement actions under the UTPCPL, the *UTPCPL does not make it clear whether the Attorney General may override or supersede a district attorney when conflict in representation of the Commonwealth occurs*.") (emphasis added). In other words, the Commonwealth Court understood the plaintiff in a UTPCPL public interest action to always be the Commonwealth itself. In so doing, the Commonwealth Court ignored the difference between actions brought by district attorneys on behalf of their electorates, and actions brought by the Commonwealth. In the Commonwealth Court's view, if *both* the Attorney General and a district attorney file UTPCPL actions, there is a conflict as to who represents the Commonwealth. 22a.

The UTPCPL, however, says nothing about representation. Rather, as explained above, the UTPCPL confers standing and specifically provides that both the Attorney General and district attorneys are proper plaintiffs. *See, e.g.*, *Com. v. Monsanto Co.*, 269 A.3d 623, 636 (Pa. Cmwlth. 2021) (standing "is concerned only with the question of *who* is entitled to make a legal challenge to the matter involved") (emphasis in original). By contrast,

the CAA is concerned with representation, but not standing. *Id*. at 647 n.17 (recognizing that the CAA, which authorizes representation of the Commonwealth, does not confer standing on the Commonwealth). The Commonwealth Court failed to offer any textual support or explanation for its interpretation that section 4 concerned representation, rather than standing.

Furthermore, the Commonwealth Court's interpretation runs headlong into section 204(c) of the CAA, which authorizes the Attorney General, not district attorneys, to represent the Commonwealth in civil actions brought by the Commonwealth. There is no statutory authority, including the UTPCPL, authorizing a *district attorney* to represent the Commonwealth in any civil action. *See Com. v. Mayfield*, 247 A.3d 1002, 1006 (Pa. 2021) (recognizing that, pursuant to the CAA, district attorneys represent the Commonwealth in *criminal* proceedings, subject to three statutory exceptions); *Curro v. Com.*, 43 Pa. D. & C.3d 596, 599 (Pa. Ct. Com. Pl. Del. Cty. 1985) (under the CAA, the Attorney General represents the Commonwealth in all civil actions). If the Commonwealth itself were the plaintiff in every UTPCPL public interest action, as the Commonwealth Court assumed, then, pursuant to the CAA,

only the Attorney General could represent the Commonwealth. If that were the case, then there would be no conflict in representation.[5]

The Commonwealth Court concluded that "the true party in interest [in any UTPCPL public enforcement action] is the Commonwealth," 11a–12a,[6] such that the Commonwealth is the actual party-plaintiff in all public interest actions. But because section 4 expressly provides that district attorneys are authorized plaintiffs, when a district attorney files a public interest UTPCPL action, the district attorney is the plaintiff, *not* the Commonwealth.

In many respects, a UTPCPL public interest action is analogous to a claim brought by a private plaintiff under the federal False Claims Act. The False Claims Act authorizes private plaintiffs (called relators) to bring suit "in the name of the Government" for false claims made to the United States. 31 U.S.C. § 3730(b). In such an action, the relator is the party-plaintiff and controls the litigation unless the United States intervenes. 31 U.S.C. § 3730(b)(4) (relator has "the right to conduct the action" when United States declines to intervene). In that context, the United States Supreme Court has

[5] As explained above, the Commonwealth's Court interpretation would also render a district attorney's authorization to bring a UTPCPL action an effective nullity: the Attorney General would always have to take over a district attorney's action.

[6] The Commonwealth Court provided no analysis to support this conclusion.

expressly rejected the argument that, because the action is brought "in the name of the Government," the United States is the plaintiff. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934-35 (2009). As the Supreme Court explained, "[a] person or entity can be named in the caption of a complaint without necessarily becoming a party to the action." *Id.* at 935. "A 'party' to litigation is '[o]ne by or against whom a lawsuit is brought,'" or who becomes a party by intervening. *Id.* at 933 (quoting Black's Law Dictionary). In an FCA action, the United States becomes a party only if it intervenes, notwithstanding the statutory requirement that the action be brought "in the name of the Government." *Id.* at 935. And although the United States shares in any recovery under the FCA, the United States is not the plaintiff (just as under the UTPCPL, although penalties are paid to the Commonwealth in non-opioids cases,[7] that fact does make the Commonwealth the plaintiff). In addition, the fact that the relator brings suit "in the name of the Government" does not mean that the relator represents the United States. Instead, the U.S. Attorney General can intervene to represent the United States. 31 U.S.C. § 3730(c); *cf*. *Eisenstein*, 556 U.S.

---

[7] *Compare* 73 P.S. § 201-8 (UTPCPL) *with* 72 P.S. § 1792-A.1(b.1) (Fiscal Code); *see also infra* Section IV.E (Fiscal Code).

at 936 (rejecting notion that, because the Government may be bound by a decision in a relator's suit, the Government is a party to relator's suit).

Indeed, the Commonwealth Court's interpretation of section 4 as rendering the Commonwealth itself the plaintiff, represented by either the Attorney General or a district attorney, would cause a host of problems if applied to similar statutes giving various individuals statutory standing to sue "in the name of the Commonwealth." An interpretation construing such individuals as representatives of the Commonwealth would permit those named individuals (some of whom are private individuals) to make binding decisions for the Commonwealth, including filing suit for the Commonwealth, which would then obligate the Commonwealth to litigate the action. Giving such authority to private individuals to make decisions for the Commonwealth would seriously impair the Commonwealth's sovereignty. Those statutes, and the UTPCPL, must instead be understood to give the statutorily-designated individuals standing to bring suit and litigate the designated actions, *see supra* section I.B, as private attorneys general, from which the Commonwealth might ultimately benefit.

Accordingly, the Commonwealth Court plainly erred in holding that the UTPCPL is ambiguous because of a potential conflict of representation of the Commonwealth. The UTPCPL does not (and could not) authorize a

district attorney to represent the Commonwealth; under the CAA the Attorney General has exclusive authority to represent the Commonwealth in civil actions.

## IV. Even if the UTPCPL Were Ambiguous, the Commonwealth Court Erred in Concluding that the Legislature Intended for the Attorney General to be Able to Wrest Control of a District Attorney's UTPCPL Action.

As explained above, the Commonwealth Court erred in concluding that the UTPCPL is ambiguous, despite the UTPCPL's plain text granting the Attorney General and district attorneys concurrent authority to bring enforcement actions and the absence of any language granting one plaintiff superior powers over another. But even if the UTPCPL were ambiguous, the Court's analysis of the legislative intent underlying the UTPCPL was deeply flawed.

Most significantly, the Commonwealth Court relied on a series of cases that interpreted the Attorney General's common law powers (prior to the UTPCPL's enactment), but which this Court has expressly overruled. The court compounded that error by brushing aside constitutional and statutory authority that further limit the Attorney General's relevant authority. The court also failed to consider that District Attorneys would be dissuaded from bringing UTPCPL actions that the Attorney General could settle, leading to less robust consumer protection, contrary to the express purpose of the

UTPCPL. The Commonwealth Court's speculation as to legislative intent was further affected by other improper considerations, including its mistaken understanding that, if the District Attorneys' claims were allowed to proceed, they would not be entitled to any relief. The Commonwealth Court's decision also impairs the district attorneys' authority in their own counties to settle civil cases that they were authorized to bring.

### A. The Commonwealth Court Relied on Overruled Cases as Evidence of Legislative Intent.

The Commonwealth Court held that, when "the General Assembly enacted (1968) and reenacted (1976) the UTPCPL, it was well established that the Attorney General possessed common law powers to replace or supersede a district attorney." 17a.[8] Because "[t]he plain language of the UTPCPL did not abrogate this well-established common law rule," the Commonwealth Court determined that the legislature intended to incorporate those common law powers into the UTPCPL. 18a–19a.

But the cases the Commonwealth Court relied upon have been explicitly overruled, as the Court acknowledged in a footnote. 17a n.10. In

[8] The Commonwealth Court cited to several cases in support of this proposition: *Com. v. Fudeman*, 152 A.2d 428, 430 (Pa. 1959); *Matson v. Margiotti*, 88 A.2d 892, 898 (Pa. 1952); *Appeal of Margiotti*, 75 A.2d 465, 466 (Pa. 1950); *In Re Investigation by Dauphin County Grand Jury*, 2 A.2d 783, 789 (Pa. 1939); *Com. ex rel. Minerd v. Margiotti*, 188 A. 524, 531 (Pa. 1936). 17a. All of these cases were overruled by *Schab*.

*Commonwealth v. Schab*, 383 A.2d 819, 821 (Pa. 1978), this Court explained that those cases, establishing the Attorney General's common law power to supersede a district attorney, were incorrectly decided. Those cases had held that, because Pennsylvania adopted England's office of the Attorney General, and England's Attorney General had the power to supersede his deputy prosecuting attorneys in the 18th century, Pennsylvania's Attorney General must have the same power. *Id*. (citing *Minerd*, 188 A. at 526–30).

*Schab* debunked that reasoning, explaining that, because elected prosecutors—such as district attorneys—did not exist in England, "[n]o analogy can rightly be drawn between [the English] system, one of deputized attorneys general, and the system which has existed in Pennsylvania since the office of elective District Attorney was created by" statute in 1850, and then constitutionalized in 1874. *Id*.; *see also id.* at 822 ("[s]imply because the Attorney General had the common law power to replace his own deputies does not justify the conclusion that he now has the right to supersede an elected District Attorney"). As a result, even before the 1978 constitutional amendment, *Schab* held that "the Attorney General of Pennsylvania has no common law power to supersede at his discretion a District Attorney of this

Commonwealth." *Id*. at 822. Thus, the *Minerd* line of cases relied upon by the Commonwealth Court was never the correct understanding of the law.

The Commonwealth Court, therefore, plainly erred in relying on those overruled cases to determine the legislative intent underlying the UTPCPL. "When a former decision is overruled, the reconsidered pronouncement will be considered as the law from the beginning." *City of Philadelphia v. Schaller*, 25 A.2d 406, 409 (Pa. Super. 1942), *cert. denied,* 317 U.S. 649 (1942); *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 312–13 (1994) ("judicial decisions operate retrospectively") (quoting *United States v. Sec. Indus. Bank,* 459 U.S. 70, 79 (1982)). Thus, in determining that the legislature intended to incorporate the Attorney General's common law powers in the UTPCPL, 19a (citing *In re Rodriguez*, 900 A.2d 341, 344 (Pa. 2003)),[9] the Commonwealth Court should have relied on *Schab*'s correct pronouncement of those common law powers, rather than on phantom powers that this Court has made clear do not (and never did) exist. Indeed, under the Commonwealth Court's reasoning, a misunderstanding of the common law could be codified in perpetuity simply because the legislature

[9] *Rodriguez* did not involve an incorrect interpretation of common law, *In re Rodriguez*, 900 A.2d at 344–46, and therefore does not support the proposition that the legislature intends to incorporate a mistaken or non-existent common law power whenever it passes a statute that does not expressly repeal that power.

did not directly address it when enacting a statute. Such a result is absurd. 1 Pa. C.S. § 1922(1) ("the General Assembly does not intend a result that is absurd").

The Commonwealth Court then compounded its mistake by ignoring both the express terms of the Pennsylvania Constitution and the CAA, as well as this Court's decisions interpreting those provisions. According to the Commonwealth Court, "the changes in the Pennsylvania Constitution and the adoption of the CAA after the UTPCPL did not impinge the Attorney General's foremost authority over civil litigation." 19a. But that is not true. *Carsia* held that those provisions limit the Attorney General's authority to statutorily enumerated powers. 517 A.2d at 956-58 (holding that the Attorney General could not rely on purported common law powers). Thus, even if the Attorney General had a common law power to supersede (*Schab* clarified there was not), *Carsia* made clear that, after the enactment of the Pennsylvania Constitutional amendments and the CAA, the Attorney General cannot exercise such power unless it has been codified by statute.

### B. The Commonwealth Court Created New Meaning for "Chief Law Officer" Not Provided by Statute or Precedent.

In divining that the legislature enacting the UTPCPL intended the Attorney General to have a right to supersede a district attorney, the Commonwealth Court erred in over-relying on the constitutional phrase

"chief law officer," read in conjunction with the UTPCPL. 13a, 19a, 20a, 22a. While the 1978 constitutional amendment identified the Attorney General as the "chief law officer of the Commonwealth," that same sentence limited the Attorney General's powers to "such powers . . . and such duties as may be imposed by law." Pa. Const. art. IV, § 4.1. But instead of construing that provision to limit the Attorney General's powers, consistent with this Court's precedents, the Commonwealth Court used the phrase "chief law officer" to infer a power to supersede in the UTPCPL, thereby broadening the Attorney General's powers. That was error.

This Court has held that the phrase "chief law officer" does not expand the Attorney General's enumerated powers. *Synthes*, 289 A.3d at 859; *Carsia*, 517 A.2d at 958; *see also supra* section II.B. The Commonwealth Court's interpretation, therefore, is simply inconsistent with this Court's prior rulings. And principles of stare decisis counsel against this Court revisiting its prior rulings. *See, e.g.*, *Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197, 202 (1991) (stare decisis is afforded "special force in the area of statutory interpretation").

### C. The Commonwealth Court Did Not Fully Grasp the Policy Considerations of its Decision.

The Commonwealth Court also justified its decision by finding that "as a matter of public policy, any uncertainty or inconsistency about the

Commonwealth's position in separate litigations should result in deference to the Attorney General." 7a, 19a.[10] But to the extent that public policy implications are relevant, the Commonwealth Court failed to consider the significant consequences of its decision.

Providing the Attorney General with an unlimited right to supersede district attorneys' UTPCPL enforcement actions will likely discourage overall enforcement. The UTPCPL's grant of concurrent authority to both district attorneys and the Attorney General means that the Attorney General does not bear the entire burden of enforcing the UTPCPL, including investigating and punishing those who have engaged in unfair or deceptive acts. Rather, there are 67 district attorneys who can enforce the UTPCPL in their jurisdictions, thereby increasing consumer protection for the Commonwealth and its people.

If the Commonwealth Court's decision stands, district attorneys will likely decline to invest time and money to prosecute UTPCPL actions

---

[10] The District Attorneys maintain that, because the statute is unambiguous, policy considerations are irrelevant. *See supra* section I. *See, e.g., Com. v. Derr*, 293 A.3d 671, 681 (Pa. Super.), *appeal denied,* 308 A.3d 766 (Pa. 2023) ("Because we find the text of the statute 'clear and free from all ambiguity,' we will not entertain the policy concerns considered by the trial court."); *Burton v. Schamp*, 25 F.4th 198, 207 (3d Cir. 2022) (same). But if the Commonwealth Court considered policy because the statute was ostensibly ambiguous, it should have also considered countervailing policy.

because of the real possibility that the Attorney General could wait for them to do all the work and then settle their claims out from under them. Indeed, this case will be the cautionary tale for district attorneys. Here, after expending considerable resources and tens of thousands of hours, the District Attorneys have no prospect of recovery for their constituencies. Other district attorneys will think twice before bringing their own UTPCPL actions and risking the same result.

The net result of diminished enforcement will be unchecked consumer fraud, to the detriment of Pennsylvania consumers. This runs counter to the UTPCPL's purpose and express grant of concurrent authority, the Pennsylvania Constitution, and the power explicitly conferred upon district attorneys under Pennsylvania law.

Moreover, it is unseemly for one enforcement agency to settle another enforcement agency's claim, when principles of good governance would contemplate that the Commonwealth's law enforcement officers should work together to produce results that use their respective resources to investigate and punish those who commit trade practices that damage Pennsylvania consumers, and at the very least would not interfere with another enforcement agency's pursuit of bad actors. Indeed, the former Attorney General could have practiced those principles by intervening in the District

Attorneys' actions in a timely manner rather than circumventing the legal process available for the Attorney General to represent the Commonwealth's interests.

Indeed, there are many situations where a district attorney and the Attorney General might make different decisions, just as two district attorneys, both with concurrent jurisdiction to prosecute a crime, for example, might make different decisions. Often, there are rules and procedures in place to address how to resolve those differences. In this case, however, the UTPCPL itself is silent as to any right of supersession. And no other statutory authority provides such a right. As the Commonwealth Court would have it, however, the District Attorneys' cases are settled because the Attorney General says they are settled. But the legislative silence that is the fulcrum of the Commonwealth Court's analysis is entirely too slender a reed to support such an extraordinary grant of authority, particularly one that undermines the express statutory authority granted to district attorneys in the UTPCPL.

### D. The Commonwealth Court Mistakenly Believed that the District Attorneys' Actions Could Not Obtain Additional Relief.

Further coloring the Commonwealth Court's analysis of whether the General Assembly intended for the Attorney General to supersede a district

attorney was its finding that, "even if the [District Attorneys'] UTPCPL actions were permitted to proceed, there is nothing left for them to obtain. The Settlement Agreements have achieved all remedies available for a public UTPCPL claim, including injunctive relief, restitution for victims, and civil penalties." 20a–21a. But that is incorrect.[11] The Commonwealth Court misunderstood the differences between the District Attorneys' UTPCPL public enforcement actions, and the claims brought by the City of Philadelphia and Allegheny County that were resolved by the Settlement Agreement.

Only a District Attorney or the Attorney General may bring a public enforcement action. 73 P.S. § 201-4. All other persons or entities are limited to a private action:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property . . . as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private

[11] Importantly, the Settlement Agreements explicitly disclaimed fines, penalties, and disgorgement from the compensatory restitution amount provided in the Agreements. 132a ("For the avoidance of doubt . . . no portion of the Compensatory Restitution Amount constitutes disgorgement or is properly characterized as the payment of statutory or other fines, penalties, punitive damages, or other punitive assessments."); 446a–447a (same). Accordingly, the Settlement Agreements cannot disclaim the District Attorneys from seeking those fees now.

> action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 P.S. § 201-9.2(a); *see also Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 444–45 (Pa. 2001) (distinguishing private actions from public enforcement actions).

These separate causes of action have different standards of proof and different available relief. In a public enforcement action, no proof of causation or reliance is required. *Weinberg,* 777 A.2d at 446; *Hunt v. U.S. Tobacco Co.,* 538 F.3d 217, 222–23 (3d Cir. 2008) (public enforcement actions do not require reliance). Similarly, "[n]either the intention to deceive nor actual deception must be proved [in a public enforcement action]; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way." *Com. ex rel. Corbett v. People's Benefit Servs., Inc.,* 923 A.2d 1230, 1236 (Pa. Cmwlth. 2007) (citations omitted). In contrast, private actions require proof of causation and justifiable reliance. *Gregg v. Ameriprise Fin., Inc.,* 245 A.3d 637, 646 (Pa. 2021); *Schwartz v. Rockey*, 932 A.2d 885, 898 n.16 (Pa. 2007); *Weinberg,* 777 A.2d at 446.

Public enforcement actions and private actions also differ in the relief available. In a public enforcement action, the Attorney General or a district attorney may seek an injunction, restoration, and civil penalties. 73 P.S. §§ 201-4, 201-4.1, 201-8(b). A plaintiff in a private action may obtain actual

damages, including treble damages, costs, and attorney fees. 73 P.S. § 201-9.2.

Any agreement by the "authorized representatives of the City of Philadelphia and Allegheny County," 21a, concerning the Attorney General's settlement could release only those entities' own claims; they could not release UTPCPL public interest claims for injunctive relief, restoration, and civil penalties. In any event, the City of Philadelphia and Allegheny County are local government entities, separate and independent from the Offices of the District Attorneys, with their own counsel. Those local government entities have no authority over the District Attorneys. As a result, that those entities agreed to the Settlements has no bearing on the District Attorneys' claims or their decision *not* to participate in the Settlements. The Commonwealth Court's mistaken finding that there would be no harm in construing the UTPCPL to permit the Attorney General to supersede the District Attorneys' claims improperly skewed its analysis.

**E. The Commonwealth Court Failed to Consider that the District Attorneys' Actions Could Potentially Recover More for Their Communities than Participation in the Settlement.**

Although the then-Attorney General believed that the Settlement was the best result for the Commonwealth, the District Attorneys were free to make a different decision for their constituencies, based in part on what they

potentially could recover if their UTPCPL suits were successful. For example, after the former Attorney General joined a separate national opioid settlement with Walgreens in 2022, which will net about $236 million for the Commonwealth over 15 years,[12] the City of Philadelphia opted out of the settlement, and, in April of 2024, reached its own settlement with Walgreens for $110 million to be paid over five years. The City benefited significantly, therefore, by opting out of the Attorney General's settlement.[13] The District Attorneys here were entitled to make that same calculus, attempting to achieve a better result through litigation of their claims.

That calculus was no doubt informed by legislation passed in 2021, which provided that any settlement or judgment the District Attorneys obtained in their UTPCPL action would be paid to the District Attorneys, rather than to the Commonwealth. Although civil penalties in UTPCPL public

---

[12] Press Release, "AG Josh Shapiro Secures Over $10 Billion in Opioid Crisis Relief Funds from CVS and Walgreens," *Pennsylvania Attorney General* (Dec. 12, 2022), https://www.attorneygeneral.gov/taking-action/ag-josh-shapiro-secures-over-10-billion-in-opioid-crisis-relief-funds-from-cvs-and-walgreens/#:~:text=Pennsylvania's%20share%20of%20the%20CVS,include%20Purdue%2C%20Malinckrodt%20and%20Endo.

[13] Press Release, "City of Philadelphia Announces $110 Million Settlement Agreement in Lawsuit Against Walgreens," *City of Philadelphia* (Apr. 19, 2024), https://www.phila.gov/2024-04-19-city-of-philadelphia-announces-110m-settlement-agreement-in-lawsuit-against-walgreens-2/.

enforcement actions are normally paid to the Commonwealth (*see* 73 P.S. § 201-8(b)), the General Assembly amended the Fiscal Code in 2021 to establish an "Opioid Settlement Restricted Account." That amendment explicitly provides that "[m]oney received by county, municipal or local governments and agencies, *including district attorneys*, *shall not be deemed funds of the Commonwealth* and shall not be deposited into the [Commonwealth's Opioid Settlement Restricted Account]." 72 P.S. § 1792-A.1(b.1) (emphasis added).

### F. The Commonwealth Court Erred Further by Disregarding the District Attorneys' Authority.

The Commonwealth Court's decision that the Attorney General can supersede a district attorney's UTPCPL action brought in his own jurisdiction, on behalf of the citizens who elected him, interferes with a district attorney's authority in his county in which he is the "chief law enforcement officer." 71 P.S. § 732-206(a).

The Commonwealth Court correctly recognized that, "[a]lthough district attorneys may file suit in the name of the Commonwealth, their enforcement powers extend only to such matters '***which arise in the county for which the district attorney is elected***.'" 19a–20a (quoting 16 P.S. § 1402(a)) (emphasis in original). In civil or criminal matters, district attorneys act for the benefit of the county in which they are elected. *See, e.g.*, *Pa. Gamefowl*

*Breeders Ass'n v. Com.*, 551 A.2d 361, 363 (Pa. Cmwlth. 1988); *Shroeck v. Pa. State Police*, 362 A.2d 486, 490 (Pa. Cmwlth. 1976). The UTPCPL contemplates that district attorneys are well positioned to understand and vigorously protect against the harm suffered by their constituents. In light of that, "[i]t would be incongruous to place the district attorney in the position of being responsible to the electorate for the performance of his duties while actual control over his performance was, in effect, in the Attorney General." *Schab*, 383 A.2d at 822. Allowing the Attorney General to override the district attorney's authority "undermines self-government" and "is precisely the approach rejected in Pennsylvania by statute in 1850 and constitutionally in 1874." *Id.* (citation omitted).

The Commonwealth Court found that the legislature intended the Attorney General to be able to supersede in civil cases based in part on an artificial distinction between civil and criminal matters. In criminal matters, the Commonwealth Court recognized that "[t]he district attorney shall be the chief law enforcement officer ***for the County*** in which he is elected." 16a (quoting 71 P.S. § 732-206) (emphasis in original). In limiting district attorneys' authority to criminal matters, the Commonwealth Court also pointed to the County Code, which provides that the district attorney "so elected shall sign all bills of indictment, and conduct in court ***all criminal and***

***other prosecutions*** in the name of the Commonwealth . . . ***which arise in the county for which he is elected***, and perform all duties which now by law are to be performed by deputy attorney generals." 15a–16a (quoting 16 P.S. § 1402(a)) (emphasis in original). Because the district attorney has primary responsibility for criminal matters within his jurisdiction, the Commonwealth Court found that the Attorney General could not supersede a district attorney without express statutory authority.

In civil matters, however, the Commonwealth Court concluded that because the Attorney General has primary responsibility, no supersession provision was necessary. 17a. But this ignores the remainder of the "[d]uties of [a] district attorney" in the County Code, which "shall be in addition to all other duties given to the said district attorney by other statutes," 16 P.S. § 1402(a)—such as the authority to bring a civil law enforcement action under the UTPCPL.

When a district attorney has already brought a UTPCPL public interest action in its own geographic jurisdiction, the Attorney General may intervene or may bring her own UTPCPL public interest action pursuant to her equal authority under the UTPCPL. But inferring legislative intent to allow the Attorney General to settle a civil case already brought by a district attorney within his own geographic jurisdiction would impinge on the district attorney's

own statutory duties.[14] The Commonwealth Court failed to take those duties into consideration.

## CONCLUSION

For the forgoing reasons, Appellants respectfully request that this Court reverse the portions of the Commonwealth Court's order of January 26, 2024 granting the Attorney General's Application for Summary Relief and denying Appellants' Application for Summary Relief and direct the entry of judgment in favor of Appellants.

[14] Appellants do not contest the Attorney General's right under the UTPCPL to settle and release claims of district attorneys who have *not* elected to pursue UTPCPL claims.

Dated: July 2, 2024 By: ______________________________

Jerry R. DeSiderato (No. 201097)

______________________________

Timothy J. Ford (No. 325290)

______________________________

Silvio Trentalange (No. 320606)

______________________________

Stanford B. Ponson (No. 322548)
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: (215) 575-7000
jdesiderato@dilworthlaw.com
tford@dilworthlaw.com
strentalange@dilworthlaw.com
sponson@dilworthlaw.com

*Counsel for Appellants, the Commonwealth of Pennsylvania, by and through the Philadelphia County District Attorney, Larry Krasner, and by and through the Allegheny County District Attorney, Stephen A. Zappala, Jr.*

Russell W. Budd, *admitted pro hac vice*

Catherine Hancock Dorsey, *admitted pro hac vice*

Christine Mansour, *admitted pro hac vice*

Brian L. Williams, *admitted pro hac vice*
**BARON & BUDD, P.C.**
600 New Hampshire Avenue NW
Washington, DC 20037
Tel.: (202) 333-4873
rbudd@baronbudd.com
cdorsey@baronbudd.com
cmansour@baronbudd.com
brwilliams@baronbudd.com

Nancy Winkelman (No. 48928)
Lawrence S. Krasner (No. 49667)
**OFFICE OF THE PHILADELPHIA DISTRICT ATTORNEY**
3 South Penn Square
Philadelphia, PA 19107
Tel: (215) 686-8000
nancy.winkelman@phila.gov

Gregory B. Heller (No. 61130)
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK DODIG LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Tel.: (215) 567-8300
gheller@feldmanshepherd.com

Andrew Sacks (No. 41390)
John Weston (No. 26314)
**SACKS WESTON, LLC**
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com

Prof. David Kairys (No. 14535)
P.O. Box 4073
8225 Germantown Avenue
Philadelphia, PA 19118
Tel: (215) 204-8959
dkairys@verizon.net

Stephen A. Sheller (No. 3270)
**SHELLER, P.C.**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (215) 790-7300
sasheller@sheller.com

Nancy Winkelman (No. 48928)
Lawrence S. Krasner (No. 49667)
**OFFICE OF THE PHILADELPHIA DISTRICT ATTORNEY**
3 South Penn Square
Philadelphia, PA 19107
Tel: (215) 686-8000
nancy.winkelman@phila.gov

Gregory B. Heller (No. 61130)
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK DODIG LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Tel.: (215) 567-8300
gheller@feldmanshepherd.com

Andrew Sacks (No. 41390)
John Weston (No. 26314)
**SACKS WESTON, LLC**
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com

Prof. David Kairys (No. 14535)
P.O. Box 4073
8225 Germantown Avenue
Philadelphia, PA 19118
Tel: (215) 204-8959
dkairys@verizon.net

Stephen A. Sheller (No. 3270)
**SHELLER, P.C.**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (215) 790-7300
sasheller@sheller.com

Nancy Winkelman (No. 48928)
Lawrence S. Krasner (No. 49667)
**OFFICE OF THE PHILADELPHIA DISTRICT ATTORNEY**
3 South Penn Square
Philadelphia, PA 19107
Tel: (215) 686-8000
nancy.winkelman@phila.gov

Gregory B. Heller (No. 61130)
**FELDMAN SHEPHERD WOHLGELERNTER TANNER WEINSTOCK DODIG LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
Tel.: (215) 567-8300
gheller@feldmanshepherd.com

Andrew Sacks (No. 41390)
John Weston (No. 26314)
**SACKS WESTON, LLC**
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103
Tel: (215) 925-8200
asacks@sackslaw.com
jweston@sackslaw.com

Prof. David Kairys (No. 14535)
P.O. Box 4073
8225 Germantown Avenue
Philadelphia, PA 19118
Tel: (215) 204-8959
dkairys@verizon.net

Stephen A. Sheller (No. 3270)
**SHELLER, P.C.**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (215) 790-7300
sasheller@sheller.com

Prof. David Kairys (No. 14535)
P.O. Box 4073
8225 Germantown Avenue
Philadelphia, PA 19118
Tel: (215) 204-8959
dkairys@verizon.net

Stephen A. Sheller (No. 3270)
**SHELLER, P.C.**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (215) 790-7300
sasheller@sheller.com

*Counsel for Appellant, the Commonwealth of Pennsylvania, by and through the Philadelphia County District Attorney, Larry Krasner*

Stephen A. Zappala, Jr. (No. 41254)
**ALLEGHENY COUNTY DISTRICT ATTORNEY'S OFFICE**
Room 303 Courthouse
436 Grant Street
Pittsburgh, PA 15219
Tel.: (412) 350-4401

William G. Brucker (No. 32983)
Charles J. Porter, Jr. (No. 43676)
Joseph G. Heminger (No. 81780)
**BRUCKER AND PORTER**
Suite 410, 180 Fort Couch Road
Pittsburgh, PA 15241
Tel.: (412) 881-6620
bruckerand@aol.com
cjporterjr@aol.com
jgheminger@aol.com

*Counsel for Appellant, the*

Stephen A. Zappala, Jr. (No. 41254)
**ALLEGHENY COUNTY**
**DISTRICT ATTORNEY'S OFFICE**
Room 303 Courthouse
436 Grant Street
Pittsburgh, PA 15219
Tel.: (412) 350-4401

William G. Brucker (No. 32983)
Charles J. Porter, Jr. (No. 43676)
Joseph G. Heminger (No. 81780)
**BRUCKER AND PORTER**
Suite 410, 180 Fort Couch Road
Pittsburgh, PA 15241
Tel.: (412) 881-6620
bruckerand@aol.com
cjporterjr@aol.com
jgheminger@aol.com

*Counsel for Appellant, the Commonwealth of Pennsylvania, by and through the Allegheny County District Attorney, Stephen A. Zappala, Jr.*

## CERTIFICATE OF COMPLIANCE – Pa. R.A.P. 2135

This response complies with the type-volume limitation of Pa. R.A.P. 2135(a)(1) because, excluding the parts of the document exempted by Pa. R.A.P. 2135(b), this document contains 12,684 words.

This response complies with the requirements of Pa. R.A.P. 124(a) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Arial 14-point font.

Dated: July 2, 2024 *<u>/s/ Timothy J. Ford</u>*

## **CERTIFICATE OF COMPLIANCE – Pa. R.A.P. 127**

I certify that this filing complies with the provisions of the Case Records Public Access Policy of the Unified Judicial System of Pennsylvania that require filing confidential information and documents differently than non-confidential information and documents.

Dated: July 2, 2024 *_/s/ Timothy J. Ford_____________*

# **OPINIONS BELOW**

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| The Commonwealth of Pennsylvania, by and through the Philadelphia District Attorney, Larry Krasner, and The Commonwealth of Pennsylvania, by and through the Allegheny County District Attorney, Stephen A. Zappala, Jr., | |
| Petitioners | |
| v. | No. 283 M.D. 2022<br>Argued: October 12, 2022 |
| The Attorney General of the Commonwealth of Pennsylvania, McKesson Corp., Cardinal Health, Inc., AmerisourceBergen Drug Corp., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc., | |
| Respondents | |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge

OPINION BY JUDGE WOJCIK FILED: January 26, 2024

Before this Court, in our original jurisdiction, are the cross-Applications for Summary Relief (ASRs) filed by the Petitioners, Commonwealth of Pennsylvania, by and through Philadelphia District Attorney, Larry Krasner (DA Krasner), and the Allegheny County District Attorney, Stephen A. Zappala, Jr. (DA

Zappala) (collectively, DAs); Respondent Attorney General of the Commonwealth of Pennsylvania (Attorney General); and Respondents McKesson Corp., Cardinal Health, Inc., AmerisourceBergen Drug Corp. (Settling Distributors), and Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (Settling Manufacturers) (collectively, Settling Defendants). In this case of first impression, the parties seek a declaration on the issue of whether the Attorney General has the authority to settle and release claims brought by the DAs under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL).[1] Upon review, we grant summary relief in favor of the Attorney General, deny the relief sought by the DAs, and dismiss the relief sought by Settling Defendants as moot.

## I. Background

This case involves a dispute of authority regarding the Attorney General's ability to settle and release claims brought by the DAs under the UTPCPL against manufacturers and distributors of prescription opioid drugs as part of the nationwide settlement with Settling Defendants.

On May 17, 2022, the DAs filed a Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief (PFR). Therein, the DAs alleged that they filed civil enforcement actions, as authorized by Section 4 of the UTPCPL, 73 P.S. §201-4, in the name of the Commonwealth, against certain manufacturers and distributors of opioid drugs, including Settling Defendants, seeking to hold them accountable for engaging in commercial activities that fueled the deadly opioid

[1] Act of December 17, 1968, P.L. 1224, reenacted by the Act of November 24, 1976, P.L. 1166, *as amended*, 73 P.S. §§201-1 - 201-10.

epidemic.[2] Therein, the DAs similarly alleged that the manufacturers violated the UTPCPL by using unfair methods of competition and unfair or deceptive acts or practices in the manufacture, sale, and promotion of prescription opioid products, and that the distributors furthered the improper distribution of prescription opioid drugs made and marketed by manufacturers. Both enforcement actions sought injunctive relief and monetary remedies derived from the disgorgement of revenues. *See* PFR, Exhibits C and D.

The DAs were not alone in pursuing legal recourse against opioid manufacturers and distributors. In Pennsylvania, district attorneys from various counties including Berks, Bucks, Chester, Clearfield, Dauphin, Delaware, Erie, Lehigh, Northampton, and Westmoreland, filed similar suits as did other states, territories, and local governments.[3] PFR, ¶34. On April 18, 2022, the Attorney General filed two suits on behalf of the Commonwealth in this Court under the UTPCPL, which this Court consolidated. *See Commonwealth of Pennsylvania v. Johnson & Johnson* (Pa. Cmwlth., Nos. 243 & 244 M.D. 2022, consolidation order filed May 9, 2022).

During the pendency of these multiple enforcement actions, the Attorney General, together with attorneys general from other states, negotiated two nationwide settlement agreements (Settlement Agreements) with the Settling

[2] DA Krasner filed an amended complaint on November 14, 2018, in the Philadelphia County Court of Common Pleas; DA Zappala filed a complaint on February 3, 2021, in the Allegheny County Court of Common Pleas.

[3] Similar complaints were filed against retail pharmacies for their role in the opioid crisis. *See, e.g.*, *Commonwealth of Pennsylvania v. RiteAid Corporation* (Pa. Cmwlth., No. 215 M.D. 2022). In addition, private parties filed actions under Section 9.2 of the UTPCPL, added by the Act of November 24, 1976, *as amended*, 73 P.S. §201-9.2. This case, however, does not concern claims against retail pharmacies or any private UTPCPL claim, only claims against the Settling Defendants.

Defendants to resolve claims against those defendants for their role in contributing to the opioid crisis.[4] The Settling Defendants agreed to pay a total of $26,000,000,000 to the states and their "Subdivisions," which included $1,000,000,000 for Pennsylvania. In Pennsylvania, 333 of 356 eligible municipal entities voluntarily agreed to join the Settlement Agreements, including all 67 counties, 256 of 277 municipalities, and 10 of 12 district attorneys. The City of Philadelphia and Allegheny County were among the municipalities that joined the Settlement Agreements, but their DAs refused to discontinue their UTPCPL claims. On behalf of the Commonwealth, the Attorney General and Settling Defendants then filed a Joint Motion to Enter Final Consent Judgments with this Court to approve both Settlement Agreements, which this Court entered on July 12, 2022 (Consent Judgments). PFR, Exhibits G and H; *see Commonwealth of Pennsylvania v. Johnson & Johnson* (Pa. Cmwlth., Nos. 243 & 244 M.D. 2022, filed July 12, 2022).

As part of the settlement, the Attorney General, acting on behalf of the Commonwealth, agreed to settle and release all claims against the Settling Defendants, including those previously filed by the DAs. In the Settlement Agreements, the Attorney General represented and warranted that he had "the authority to settle and release" all claims.[5] PFR, Exhibit A, Distributor Settlement Agreement at 48, ¶XI(G); Exhibit B, Janssen Settlement Agreement at 17, ¶IV(E). As to whether the Attorney General had such power, the parties agreed that disputes

---

[4] One Settlement Agreement resolved claims against the Settling Manufacturers, identified as "Janssen Settlement Agreement"; the other resolved claims against the Settling Distributors, identified as "Distributor Settlement Agreement." PFR, Exhibits A & B.

[5] This was further confirmed in a memorandum of understanding between the settling parties. *See* Commonwealth Application for Summary Relief, Exhibit B, ¶2. Therein, the Attorney General agreed to take all necessary steps to secure the dismissal with finality of the released claims, including those of the DAs. *Id.*, ¶6.

regarding the Attorney General's "authority under the state law, including the extent of the authority to release claims" would be resolved in state court. PFR, Exhibit A, Distributor Settlement Agreement at 36, ¶VI(F)(1)(b)(iv); *id*., Exhibit B, Janssen Settlement Agreement at 44, ¶XII(F)(2)(d). The issue of the Attorney General's authority is the precise issue now before this Court.

By filing the PFR, the DAs seek declaratory and injunctive relief on the basis that the Attorney General lacks the authority to extinguish their UTPCPL claims. In response to the DAs' PFR, both the Attorney General and Settling Defendants filed answers and new matters, including counterclaims seeking declaratory relief that the Attorney General has the authority to release all UTPCPL claims against the Settling Defendants on behalf of the Commonwealth, including the DAs' claims. As there are no factual issues in dispute, the DAs, Attorney General, and Settling Defendants have each moved for summary relief by filing cross-ASRs.[6]

---

[6] As this Court has explained:

> An [ASR] may be granted if a party's right to judgment is clear and no material issues of fact are in dispute. Pa.R.A.P. 1532(b); *Jubelirer v. Rendell*,[] 953 A.2d 514, 521 ([Pa. ]2008); *Eleven Eleven Pennsylvania, LLC v. Commonwealth*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017). When ruling on an application for summary relief, "'we must view the evidence of record in the light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law.'" *Eleven Eleven*, 169 A.3d at 145 (quoting *Markham v. Wolf*, 147 A.3d 1259, 1270 (Pa. Cmwlth. 2016) (citation omitted)).

*Gregory v. Pennsylvania State Police*, 185 A.3d 1202, 1205 (Pa. Cmwlth. 2018).

## II. Issue

The crux of the matter is whether the Attorney General, who has concurrent authority with the DAs to bring a UTPCPL enforcement action in the name of the Commonwealth, may supersede or override the DAs' statutory enforcement authority by settling or releasing the DAs' previously-filed enforcement actions under the UTPCPL over the DAs' objections.

## III. Discussion

### A. Contentions

#### 1. DAs

The DAs argue that the Attorney General lacks the authority to settle their ongoing, previously-filed UTPCPL claims. First, the UTPCPL gives both the Attorney General and DAs concurrent authority to bring independent claims on behalf of the Commonwealth and does not provide that the Attorney General may usurp and settle a claim brought by a district attorney. Second, no other Pennsylvania law—including the Pennsylvania Constitution and the Commonwealth Attorneys Act (CAA)[7]—empowers the Attorney General to supersede an elected district attorney in a civil case and release his claims, let alone the ongoing, previously-filed UTPCPL claims at issue in this case. Because the Attorney General did not have the authority to release the DAs' UTPCPL claims, those claims were not released by the Settlement Agreements or the Consent Judgments and may proceed.

[7] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§732-101 - 732-506.

**2. Attorney General**

The Attorney General counters that, although the UTPCPL allows both the Attorney General and any district attorney to bring a claim on behalf of the Commonwealth, this case concerns what happens when two parallel litigations diverge into mutually exclusive tracks, forcing a determination about which official—the Attorney General or a district attorney—can decide the Commonwealth's position. In this situation, it must be the Attorney General who decides what is in the Commonwealth's best interest and who ultimately controls the direction of its UTPCPL claim. First, the Attorney General's broad authority in civil matters empowers him to supersede the authority of a district attorney under the UTPCPL. Although the statutory language does not expressly say what happens when the Attorney General and a district attorney pursue distinct claims, at the time the UTPCPL was drafted, the established law provided that the Attorney General had broad, common law power to supersede a district attorney. Based on the canons of statutory construction, that understanding was grafted into the text of the UTPCPL. Second, changes in the Pennsylvania Constitution and the adoption of the CAA after the UTPCPL was enacted unequivocally give the Attorney General—and not a district attorney—the power to pursue civil litigation on behalf of the Commonwealth. This further solidifies the legal principle that the Attorney General is the final voice for the Commonwealth. Third, as a matter of public policy, any uncertainty or inconsistency about the Commonwealth's position in separate litigations should result in deference to the Attorney General. The Attorney General, as a statewide elected official, is in the best position to determine the Commonwealth's interest. The Attorney General has concluded that the Settlement Agreements are in the best interest of the Commonwealth because they provide

industry changes and monetary relief immediately and with certainty. Finally, even if the DAs' actions were permitted to proceed, there is nothing left to attain. The settlements have achieved all of the remedies available for a public UTPCPL claim, including injunctive relief, restitution for victims, and civil penalties.

**3. Settling Defendants**

The Settling Defendants similarly argue that the Attorney General, in his capacity as the Commonwealth's chief law officer, has the constitutional and statutory authority to release UTPCPL claims on behalf of the Commonwealth. The Attorney General has exercised this authority via the Settlement Agreements and Consent Judgments. The Settlement Agreements and Consent Judgments require dismissal of the claims asserted by the DAs against Settling Defendants for three reasons. First, the releases provided by the Attorney General in the Settlement Agreements bar the claims brought by the DAs. There is no dispute that those releases, by their express terms, cover the UTPCPL claims brought by the DAs against Settling Defendants. Under the Pennsylvania Constitution and the CAA, the Attorney General has the ultimate authority over all civil litigation brought in the name of the Commonwealth. Accordingly, the Attorney General has the authority to release UTPCPL claims maintained in the name of the Commonwealth, including in circumstances where those claims were first initiated by subordinate law officers, such as local district attorneys. Such a reading is supported by traditional canons of statutory interpretation as well as by sound public policy. Second, the Consent Judgments are *res judicata*. It is undisputed that the now-final Consent Judgments, which incorporate the terms of the Settlement Agreements, resolve the same UTPCPL claims as those asserted by the DAs. The two sets of claims involve the

same parties or their privies as both are asserted on behalf of the Commonwealth of Pennsylvania. Third, the Commonwealth, the City of Philadelphia, and Allegheny County have all released their claims against Settling Defendants and disavowed any entitlement to further relief from the Settling Defendants. Consequently, there are no non-releasing parties left for the DAs to represent. The DAs nonetheless purport to seek relief for those very entities. The fact that the DAs' lawsuits are brought in a purely representative capacity, coupled with the fact that further pursuit of the lawsuits has been expressly disclaimed by the very entities that the DAs purport to represent, compels dismissal of the DAs' UTPCPL claims.

**B. Analysis**

Section 4 of the UTPCPL provides:

> Whenever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act[, 73 P.S. §201-3,] to be unlawful, and that proceedings would be in the *public interest*, *he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice*.

73 P.S. §201-4 (emphasis added). Section 3 of the UTPCPL declares as unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 73 P.S. §201-3. The remedies available under the UTPCPL are temporary or permanent injunctive relief, the payment of costs and restitution, and civil penalties. *Id.*; Section 4.1 of the UTPCPL, added by the Act of November 24, 1976, P.L. 1166, 73 P.S. §201-4.1; Section 8(b) of the UTPCPL, 73 P.S. §201-8(b).

Although both the Attorney General and a district attorney may bring concurrent enforcement actions under the UTPCPL, the UTPCPL does not make it clear whether the Attorney General may override or supersede a district attorney when conflict in representation of the Commonwealth occurs. Discerning the meaning of the UTPCPL is a question of statutory interpretation.[8] In all matters of statutory interpretation, we are guided by the Statutory Construction Act of 1972 (SCA), 1 Pa. C.S. §§1501-1991.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. §1921(a). "To accomplish that goal, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *O'Rourke v. Commonwealth*, 778 A.2d 1194, 1201 (Pa. 2001).

"When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. §1921(b). The "plain language of a statute generally provides the best indication of legislative intent." *Commonwealth v. Lehman*, 243 A.3d 7, 16 (Pa. 2020). However, when a statute's language is not clear and unambiguous, we may discern legislative intent by considering:

> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.

---

[8] "An issue of statutory construction presents a pure question of law[,] and our standard of review is *de novo* and our scope of review is plenary." *Spahn v. Zoning Board of Adjustment*, 977 A.2d 1132, 1142 (Pa. 2009).

> (4) The object to be attained.
>
> (5) The former law, if any, including other statutes upon the same or similar subjects.
>
> (6) The consequences of a particular interpretation.
>
> (7) The contemporaneous legislative history.
>
> (8) Legislative and administrative interpretations of such statute.

1 Pa. C.S. §1921; *see Klar v. Dairy Farmers of America, Inc.*, 300 A.3d 361, 372 n.56 (Pa. 2023).

We are also mindful that we must presume that "the General Assembly does not intend to violate the Constitution of the United States or this Commonwealth." 1 Pa. C.S. §1922. "[If] a statute is susceptible of two reasonable constructions, one of which would raise constitutional difficulties and the other of which would not, we adopt the latter construction." *Commonwealth v. Herman*, 161 A.3d 194, 212 (Pa. 2017).

Finally, we apply the *in pari materia* rule, which provides:

> (a) Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things.
>
> (b) Statutes *in pari materia* shall be construed together, if possible, as one statute.

1 Pa. C.S. §1932.

With these principles in mind, we first examine the context of the UTPCPL. By its own terms, actions brought under Section 4 of the UTPCPL must be in the "public interest," rather than any private or personal interest. 73 P.S. §201-4. Although district attorneys may bring suit under the UTPCPL, the true party in interest is the Commonwealth, and not the local jurisdiction. 73 P.S. §201-4. The

action is filed in the name of the Commonwealth and must be in the "public interest." *Id*.

Next, we turn to the Pennsylvania Constitution and the CAA for guidance as they both relate to the authority of the Attorney General and district attorneys and must be read *in pari materia* with the UTPCPL. 1 Pa. C.S. §1932. The Attorney General's office was established by the 1968 Constitution of Pennsylvania, article IV, section 1, Pa. Const. art. IV, §1, and is included within the executive branch of State government. The Attorney General is the "***chief law officer*** of the Commonwealth and shall exercise such powers and perform such duties as may be imposed by law." Pa. Const. art. IV, §4.1 (emphasis added). As our Supreme Court recently opined: "[T]he Pennsylvania Constitution designates the Attorney General as the 'chief law officer' for the Commonwealth as a whole, accountable directly to the Pennsylvania voters, and independent of the Governor and the Commonwealth agencies. Pa. Const. art. IV, §4.1." *Synthes USA HQ, Inc. v. Commonwealth*, 289 A.3d 846, 859 (Pa. 2023). "Prior to the adoption of [a]rticle [IV], section 4.1, the Attorney General was appointed by the Governor, and served at his pleasure as a member of his cabinet." *Commonwealth v. Carsia*, 517 A.2d 956, 957 (Pa. 1986) (footnotes omitted).

Although the present-day office of the Attorney General is now constitutionally established, the Attorney General's powers are derived from statutes as enacted by the General Assembly. *Carsia*, 517 A.2d at 957. Our Supreme Court has interpreted the constitutional language "as may be imposed by law" as requiring the General Assembly to "statutorily define and regulate the powers and duties of the Attorney General." *Id*. at 958 (quoting Pa. Const., art. IV, §4.1).

In 1980, "[t]he General Assembly utilized that grant of constitutional powers . . . and enacted the CAA." *Carsia*, 517 A.2d at 958. The CAA "made it clear that the powers of the state Attorney General are no longer an emanation from some bed of common law precepts but are now strictly a matter of legislative designation and enumeration." *Id.*

Consistent with the Pennsylvania Constitution, Section 206 of the CAA states: "The Attorney General shall be the chief law enforcement officer of the Commonwealth . . . ." 71 P.S. §732-206. The general powers and duties of the Attorney General are set out in the CAA. Section 201(a) of the CAA declares:

> The Office of Attorney General shall be an independent department and shall be headed by the Attorney General. The Attorney General ***shall exercise such powers and perform such duties as are hereinafter set forth***.

71 P.S. §732-201(a) (emphasis added). Our Supreme Court has interpreted this provision as expressly stating "that the powers of the Attorney General are those which are set forth in the [CAA] itself." *Carsia*, 517 A.2d at 958. The Supreme Court continued:

> If there is any doubt that the [CAA] is the sole source of the Attorney General's powers, such doubt must be dispelled by the Final Report of the Joint State Government Commission Task Force on the Office of the Elected Attorney General. That report states that there was substantial consensus for the concept that "[l]egislation enacted by the General Assembly is the exclusive source of the powers and duties of the elected Attorney General pursuant to [a]rticle IV, [s]ection 4.1. . . .

*Id.* (citation omitted).

The CAA distinctly and separately describes the Attorney General's criminal authority and civil authority. The Attorney General's criminal authority is

limited. Section 205 of the CAA, 71 P.S. §732-205, governing criminal litigation, empowers the Attorney General to prosecute only certain criminal cases in county court. Section 205(a) of the CAA sets forth specific kinds of criminal cases over which the Attorney General has prosecutorial authority. 71 P.S. §732-205(a). As to three of those case types, the Attorney General shall have "concurrent prosecutorial jurisdiction with the district attorney." 71 P.S. §732-205(b). Specifically, concurrent jurisdiction extends to cases: against State officials or employees affecting public performance; involving corrupt organizations; or arising out of enforcement provisions of a statute charging an agency with a duty to enforce its provision. 71 P.S. §732-205(a)(1), (2) and (6).

Under the CAA, the Attorney General's authority to supersede a district attorney in a particular criminal prosecution is circumscribed. *See* 71 P.S. §732-205(a)(3)-(5). The Attorney General must be invited by a district attorney to step in or "petition the court having jurisdiction over *any* criminal proceeding to permit the Attorney General to ***supersede*** the district attorney in order to prosecute a criminal action or to institute criminal proceedings." 71 P.S. §732-205(a)(3), (4) (emphasis added). To supersede by court petition, the Attorney General must establish "by a preponderance of the evidence that the district attorney has failed or refused to prosecute and such failure or refusal constitutes abuse of discretion." 71 P.S. §732-205(5*); see Carter v. City of Philadelphia*, 181 F.3d 339, 353 (3d Cir. 1999) ("The Attorney General is permitted only a narrowly circumscribed power to supersede a district attorney in a particular criminal prosecution subject to court authorization under an abuse of discretion standard (or at the district attorney's own invitation.")).

The Attorney General's civil authority under the CAA is much broader. Section 204(c) of the CAA provides that "the Attorney General shall represent the

Commonwealth and all Commonwealth agencies . . . in ***any action brought by*** or against the Commonwealth or its agencies, and may intervene in any other action . . . ." 71 P.S. §732-204(c) (emphasis added). "This section unambiguously gives the [Attorney General] the authority to represent . . . the Commonwealth" in ***any*** civil litigation. *Synthes USA HQ*, 289 A.3d at 859-60.

Section 204 of the CAA does not contain a similar supersedure authority applicable to civil litigation. The DAs ask this Court to interpret such omission as demonstrative that the Attorney General has no power to supersede the DAs under the canon of statutory construction, *inclusio unius est exclusio alterius*, "the expression or inclusion of one thing in a statute implies the exclusion of an alternative." *Downs Racing, L.P. v. Commonwealth*, 288 A.3d 542, 548 n.11 (Pa. Cmwlth. 2022) (internal citation and quotation omitted). We do not agree. A comparative review of the history of the offices of Attorney General and district attorney and the statutory division of authority between the two offices illustrate why.

"Prior to 1850, investigation and prosecution of criminal offenses in Pennsylvania were exclusively the duty of the Attorney General of the Commonwealth," or his deputy. *Commonwealth ex rel. Specter v. Bauer*, 261 A.2d 573, 575 (Pa. 1970). In 1850, the General Assembly created the office of elective district attorney. *Id.*; Section 1 of the Act of May 3, 1850, P.L. 654, 16 P.S. §7701. "The elected [d]istrict [a]ttorney was to perform the function of local prosecutor previously performed by the [d]eputy Attorney General." *Commonwealth v. Schab*, 383 A.2d 819, 821 (Pa. 1978). The General Assembly defined the duties of the new office as follows: "The officer so elected shall sign all bills of indictment, and conduct in court ***all criminal and other prosecutions*** in the name of the

Commonwealth . . . ***which arise in the county for which he is elected***, and perform all duties which now by law are to be performed by deputy attorney generals . . . ." *Id.* (emphasis added); *accord* Section 1402(a) of The County Code.[9]

"In 1874, the district attorney was made a constitutional officer. Pa. Const. [a]rt. XIV, [§]1 (1874), now in Pa. Const. [a]rt. IX, [§]4." *Schab*, 383 A.2d at 821. Article IX, section 4 of the Pennsylvania Constitution states that "[c]ounty officers shall consist of . . . district attorneys . . . ." Pa. Const. art. IX, §4.

Consistent with Pennsylvania Constitution, Section 206 of the CAA provides: "[t]he district attorney shall be the chief law enforcement officer ***for the county*** in which he is elected." 71 P.S. §732-206 (emphasis added). "[D]istrict attorneys in this Commonwealth have the power-and the duty-to represent the Commonwealth's interests in the enforcement of its *criminal laws*." *Bauer*, 261 A.2d at 575. "[T]he [d]istrict [a]ttorney is statutorily and constitutionally responsible for law enforcement at the local level . . . ." *Schab*, 383 A.2d at 824. Thus, in criminal matters, the district attorneys are the primary authority for criminal prosecution.

As discussed above, the General Assembly carved out very specific exceptions where the Attorney General may criminally prosecute despite the broad delegation of authority to the district attorneys. 71 P.S. §732-205. Only in those limited circumstances, as prescribed by statute, may the Attorney General interfere with the district attorney's principal authority in criminal matters. *Schab*, 383 A.2d at 824. This limitation on the Attorney General's ability to usurp the authority of the district attorneys necessitated the supersession provisions. *Id.* "[T]he Attorney

[9] Act of August 9, 1955, P.L. 423, *as amended*, 16 P.S. §1402.

General must establish good cause for the supersession" because the Attorney General is encroaching upon the district attorney's statutory authority. *Id.*

Such is not the case with civil matters. The General Assembly mandated that the Attorney General "shall represent" the Commonwealth in "any" civil action brought by the Commonwealth without limitation. 71 P.S. §732-204(c); *Synthes USA HQ*, 289 A.3d at 859-60. UTPCPL enforcement actions are civil in nature. *Gabriel v. O'Hara*, 534 A.2d 488, 495 (Pa. Super. 1987). Although the General Assembly delegated some authority to district attorneys to bring UTPCPL claims in the name of the Commonwealth, it never limited the Attorney General's authority over UTPCPL matters or civil actions in general. Unlike with criminal prosecutions, a supersession provision was not necessary in order for the Attorney General to act on behalf of the Commonwealth to proceed in civil actions because the Attorney General's authority to pursue such claims was not altered.

Notably, at the time the General Assembly enacted (1968) and reenacted (1976) the UTPCPL, it was well established that the Attorney General possessed common law powers to replace or supersede a district attorney. *See Commonwealth v. Fudeman*, 152 A.2d 428, 430 (Pa. 1959); *Matson v. Margiotti*, 88 A.2d 892, 898 (Pa. 1952); *Appeal of Margiotti*, 75 A.2d 465, 466 (Pa. 1950); *In Re Investigation by Dauphin County Grand Jury*, 2 A.2d 783, 789 (Pa. 1939); *Commonwealth ex rel. Minerd v. Margiotti*, 188 A. 524, 531 (Pa. 1936).[10] "[W]here

---

[10] However, in *Commonwealth v. Schab*, 383 A.2d 819, 821 (Pa. 1978), the Supreme Court rejected that holding explaining the line of reasoning was erroneous and not controlling. The *Schab* Court explained that the underlying premise for common law authority was based on the powers of the King's Attorney in England, the precursor to the modern office of the Attorney General. *Id.* The Court continued:

**(Footnote continued on next page…)**

a common[ ]law principle is well established," the courts may presume that the legislative body "has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Federal Savings & Loan Associaton v. Solimino*, 501 U.S. 104, 108 (1991) (internal quotation marks and citation omitted). Under the SCA, "an implication alone cannot be interpreted

---

> The King's attorney, appointed by the Crown, was the chief law enforcement officer in England. He managed all of the Crown's legal affairs, including the prosecution of all suits, both criminal and civil, in which the Crown was interested. The King's Attorney also had the right to appoint deputies, over which he had complete control and could replace at any time. The question as to the common law power of an Attorney General to supersede a District Attorney on his own motion never arose at common law for the simple reason that elected prosecuting officers were unknown to England's political institutions.
>
> No analogy can rightly be drawn between that system, one of deputized attorneys general, and the system which has existed in Pennsylvania since the office of elective District Attorney was created by [Section 431 of] the Act of May 3, 1850, P.L. 654, [formerly] 16 P.S. §3431[, repealed by the Act of November 22, 2011, P.L. 431] (now 16 P.S. §7701). The elected District Attorney was to perform the function of local prosecutor previously performed by the Deputy Attorney General.
>
> * * * *
>
> Simply because the Attorney General had the common law power to replace his own deputies does not justify the conclusion that he now has the right to supersede an elected District Attorney, an officer unknown to the common law. It would be incongruous to place the district attorney in the position of being responsible to the electorate for the performance of his duties while actual control over his performance was, in effect, in the Attorney General. To countenance such a separation of accountability and control undermines self-government and promotes centralization.

*Id*. at 822.

as abrogating existing law. The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded." *In re Rodriguez*, 900 A.2d 341, 344 (Pa. 2003) (internal citation and quotation omitted). The plain language of the UPTCPL did not abrogate this well-established common law rule that existed. Although the common law has since changed, the changes in the Pennsylvania Constitution and the adoption of the CAA after the UTPCPL did not impinge the Attorney General's foremost authority over civil litigation.[11]

Furthermore, as a matter of public policy, any uncertainty or inconsistency about the Commonwealth's position in separate litigations must result in deference to the Attorney General. The Attorney General is elected statewide and is accountable to the broader electorate. The Attorney General represents the public interests of the entire Commonwealth, including its municipalities and subdivisions. The Attorney General is the chief law officer.

Conversely, district attorneys are accountable to the voters of their districts, not the statewide electorate. Although district attorneys may file suit in the name of the Commonwealth, their enforcement powers extend only to such matters

---

[11] Likewise, with respect to the Attorney General's common law *parens patriae* powers, the Pennsylvania Superior Court has recognized:

> Under [Section 7710(d) of the Uniform Trust Act], "[t]he Office of Attorney General has the rights of a charitable organization expressly named in the trust instrument to receive distributions from a trust having its situs in this Commonwealth and the right to notice of any proceeding or nonjudicial settlement agreement in which there is a charitable interest or purpose." 20 Pa. C.S. §7710(d). The Attorney General must be made a party in all proceedings involving charitable trusts. *See In re Pruner's Estate*, [136 A.2d 107, 110 (Pa. 1957)] (discussing predecessor to present statute).

*In re Jackson*, 174 A.3d 14, 21 n.4 (Pa. Super. 2017).

"***which arise in the county for which the district attorney is elected***." 16 P.S. §1402(a). That jurisdictional limitation is reflected in the DAs' UTPCPL complaints. The DAs alleged that their actions, and those of other district attorneys, were "limited to their respective jurisdictions," as opposed to the Commonwealth at large, and sought relief specific to their municipalities. *See* PFR ¶34; *see id*., Exhibits C & D. The DAs alleged how the opioid manufacturers and distributors harmed their respective municipalities and sought specific relief to aid their municipalities, but not the entire Commonwealth. *See* PFR, ¶7 and Exhibits C & D.

Because the district attorneys of coordinate jurisdictions are of equal rank, no single district attorney would have the legal or lawful authority to supersede another district attorney in litigation or to settle another district attorney's claims under the UTPCPL. A district attorney in pursuit of his/her UTPCPL claim could adopt a contrary position that is not shared by other district attorneys or the Attorney General, which is not in the best interest of the Commonwealth. *See Commonwealth v. Wardlaw*, 249 A.3d 937, 955 (Pa. 2021) (Dougherty, J., concurring) (expressing concern for potential harm in the criminal context when a single district attorney, answerable only to his/her county constituents, may "adopt a position that is not shared by other district attorneys or the Attorney General"). The Attorney General, as the "chief law officer," outranks all district attorneys and is in the best position to represent the "public interest" in pursuing and resolving the Commonwealth's UTPCPL claims against Settling Defendants particularly where, as here, a conflict in representation exists.

Finally, we note that even if the DAs' UTPCPL actions were permitted to proceed, there is nothing left for them to obtain. The Settlement Agreements have achieved all remedies available for a public UTPCPL claim, including injunctive

relief, restitution for victims, and civil penalties. The authorized representatives of the City of Philadelphia and Allegheny County have agreed to the terms of the settlements.[12]

## IV. Conclusion

Upon review, when the UTPCPL is examined within its context and history, as well as in conjunction with other constitutional and statutory provisions governing the authority of the Attorney General and district attorneys, the Attorney General has the authority to supersede the DAs' UTPCPL claims. The Attorney General, as the statewide elected official, has the duty to serve the interests of the public at large, whereas the district attorney serves the interests of his/her local

[12] Notwithstanding, we conclude that the parties' dispute is not moot. The doctrine of mootness requires that an actual case or controversy be in existence "at all stages of review, not merely at the time the complaint is filed." *In re Gross*, 382 A.2d 116, 119 (Pa. 1978). "[A] legal question can become moot on appeal as a result of an intervening change in the facts of the case." *Id*. at 119. There are limited exceptions to the mootness doctrine, namely, when (1) the conduct complained of is capable of repetition yet evading review, or (2) involves questions important to the public interest, or (3) will cause one party to suffer some detriment without the Court's decision." *Driscoll v. Zoning Board of Adjustment of City of Philadelphia*, 201 A.3d 265, 269 (Pa. Cmwlth. 2018) (internal citation and quotation omitted). The issue here is not only one of great public importance, but it is capable of repetition yet likely to evade review. This Court previously sustained preliminary objections and dismissed the DAs' similar claims against the Attorney General and Settling Defendants on the basis that the matter was not ripe because the Settlement Agreements and Consent Judgments were contemplated but not yet executed. *See Commonwealth by and through The Philadelphia District Attorney v. The Attorney General of the Commonwealth* (Pa. Cmwlth., Nos. 233, 250, 260, and 261 M.D. 2021, filed February 4, 2022). We opined: "[T]he DAs' claims involve[] uncertain and contingent events that may not occur as anticipated or at all, and any relief that this Court may grant is bound up in the facts as they relate to the terms of the Settlement Agreement and Release that have yet to be finalized or executed." *Id.*, slip op. at 11 (internal quotations omitted). To conclude that those now ripe claims are moot would place the DAs in an untenable catch-22 position of never having this issue resolved. Additionally, we note that the Settlement Agreements directed final resolution of the issue in state court. PFR, Exhibit A, Distributor Settlement Agreement at 36, ¶VI(F)(1)(b)(iv); *Id.*, Exhibit B, Janssen Settlement Agreement at 44, ¶XII(F)(2)(d).

constituents. Although those interests may often align, where, as here, a conflict in representation arises, the Attorney General has authority to control the litigation as the "chief law officer." That control permits the Attorney General to settle such claims when he determines it is in the best interest of the Commonwealth to do so. *See* 7 Am. Jur. 2d Attorney General §29 (2d ed. 2023). The concurrent authority of the district attorneys to bring UTPCPL actions cannot be interpreted in such a way that undermines the Attorney General's authority to resolve such matters on behalf of the Commonwealth for the common benefit. To conclude otherwise would subvert the office of Attorney General to a position inferior to that of the district attorneys, which runs afoul of both the Pennsylvania Constitution and the CAA.

Accordingly, we grant judgment in favor of the Attorney General and against the DAs and declare that the Settlements and Consent Judgments fully release all of the Commonwealth's UTPCPL claims against the Settling Defendants, including those filed by the DAs. In light of this disposition, we dismiss the Settling Defendants' ASR as moot.

MICHAEL H. WOJCIK, Judge

Judge McCullough did not participate in the decision of this case.
Judge Covey did not participate in the decision of this case.
Judge Fizzano Cannon did not participate in the decision of this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| The Commonwealth of Pennsylvania, by and through the Philadelphia District Attorney, Larry Krasner, and The Commonwealth of Pennsylvania, by and through the Allegheny County District Attorney, Stephen A. Zappala, Jr., | |
| Petitioners | |
| v. | No. 283 M.D. 2022 |
| The Attorney General of the Commonwealth of Pennsylvania, McKesson Corp., Cardinal Health, Inc., AmerisourceBergen Drug Corp., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc., | |
| Respondents | |

**O R D E R**

AND NOW, this 26th day of January, 2024, the Application for Summary Relief (ASR) filed by Respondent Attorney General of the Commonwealth of Pennsylvania is GRANTED; the ASR filed by Petitioners is DENIED; and the ASR filed by remaining Respondents is DISMISSED as moot in accordance with the foregoing opinion.

MICHAEL H. WOJCIK, Judge

Order Exit
01/26/2024