# EXHIBIT E

Received 2/15/2024 4:34:38 PM Commonwealth Court of Pennsylvania

Filed 2/15/2024 4:34:00 PM Commonwealth Court of Pennsylvania
58 MD 2024

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA,<br>Acting by Attorney General<br>Michelle Henry,<br><br>Petitioner,<br><br>v.<br><br>CVS PHARMACY, INC.;<br>WALGREEN CO.; and<br>WALMART, INC.,<br>Respondents, | C.A. NO.:<br><br>CIVIL ACTION |

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action **within thirty (30) days** after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you, and a judgment may be entered against you without further notice for any money claimed in the complaint or for any other claim or relief requested by the petitioner. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS NOTICE TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE(S) SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

Central Pennsylvania Legal Services, Inc.
213-A North Front Street
Harrisburg, PA. 17101
(717) 232-0581

Public Services and Legal Referral Committee
Dauphin County Bar Association
213 North Front Street
Harrisburg, PA. 17101
(717) 232-7536

Neil F. Mara
Chief Deputy Attorney General
PA Attorney I.D. No. 64895
Office of Attorney General
Public Protection Division
1000 Madison Avenue #310
Norristown, PA 19403

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA,<br>Acting by Attorney General<br>Michelle Henry,<br><br>Petitioner,<br><br>v.<br><br>CVS PHARMACY, INC.;<br>WALGREEN CO.; and<br>WALMART, INC.,<br>Respondents, | C.A. NO.:<br><br>CIVIL ACTION |

**PETITION FOR REVIEW IN THE NATURE OF A COMPLAINT**

COMES NOW Petitioner, the Commonwealth of Pennsylvania, by and through its Attorney General Michelle Henry, and brings this action against Respondents CVS Pharmacy Inc., Walgreen Co., and Walmart Inc. (collectively "Respondents") pursuant to the *Unfair Trade Practices and Consumer Protection Law,* 73 P.S. §§ 201-1, *et seq.* ("Consumer Protection Law") and to the common law of the Commonwealth of Pennsylvania and alleges as follows.

## I. JURISDICTION AND STATUTORY AUTHORITY

1. This enforcement action is brought by Attorney General Michelle Henry in the name of the Commonwealth of Pennsylvania and in the public interest pursuant to the authority granted by 73 P.S. § 201-4, upon the ground that

Respondents have engaged in unfair or deceptive acts and practices in or affecting commerce as declared unlawful by Section 201-3 (a) and have created a public nuisance prohibited by the common law of the Commonwealth of Pennsylvania.

2. At all times described below, Respondents and their agents have engaged in conduct affecting "commerce," as defined in 73 P.S. § 201-2(3).

3. Petitioner has reason to believe that Respondents have caused and will cause immediate, irreparable injury, loss, and damage to the Commonwealth of Pennsylvania by unlawfully dispensing prescription opioids. Therefore, these proceedings are in the public interest.

## II. JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 42 Pa. C.S.A § 761.

5. This Court has personal jurisdiction over each of the Respondents as they each conduct business in Pennsylvania, and have the requisite minimum contacts with Pennsylvania to constitutionally permit the Court to exercise jurisdiction.

## III. PARTIES

6. Petitioner is the Commonwealth of Pennsylvania ("Commonwealth" or "Petitioner"). The Commonwealth is charged with, among other things, enforcing and seeking redress for violations of Pennsylvania's Consumer Protection Law.

7. Respondent **CVS Pharmacy, Inc**. is a corporation organized under the laws of Rhode Island and has its principal place of business in Rhode Island, at One CVS Drive, Woonsocket, Rhode Island 02895.

8. Respondent **Walgreen, Co**.is a corporation organized under the laws of Illinois and has its principal place of business in Illinois, at 108 Wilmot Road, Deerfield, Illinois 60015.

9. Respondent **Walmart, Inc**. is a corporation organized under the laws of Delaware and has its principal place of business in Arkansas, at 702 S.W. 8th Street, Bentonville, Arkansas 72716.

10. Respondents conduct business in the Commonwealth of Pennsylvania.

11. Whenever this Complaint alleges that Respondents did any act, it means that Respondents:

a. Performed or participated in the act; or

b. Their subsidiaries, officers, successors in interest, agents, partners, trustees, or employees performed or participated in the act on behalf of and under the authority of the Respondents.

## IV. FACTUAL ALLEGATIONS

12. The United States saw a nearly four-fold increase in the annual number of opioid pills dispensed by pharmacies between 1999 and 2014. This increase contributed to numerous instances of opioid abuse, dependence, addiction,

and overdose deaths in the Commonwealth. It also contributed to a sharp increase in the use of even more powerful drugs such as fentanyl and heroin, which are sometimes used by themselves and other times used in combination with prescription opioids. Fentanyl and heroin use exacerbated opioid abuse, dependence, addiction, and overdose deaths in the Commonwealth.

13. Among the ways that the surge in the use of prescription opioids has caused the current public health crisis is through the diversion of prescription opioids from legitimate distribution channels to illegitimate and illegal channels. Diversion can range from forging prescriptions, to using legitimate prescriptions to obtain pills that can be resold on the street, to obtaining prescriptions from corrupt prescribers who are profiting off of their prescription pads.

14. The federal Controlled Substances Act, along with the Pennsylvania Controlled Substance, Drug, Device and Cosmetics Act, were designed to "provide an interlocking trellis of laws which will enable government at all levels to more effectively control the [narcotic and dangerous drug] problem." Special Message to the Congress on Control of Narcotics and Dangerous Drugs, Pub. Papers of the Presidents of the United States: Richard Nixon, 1969, at 513, 514 (July 14, 1969).

15. A main objective of these laws was to establish a closed regulatory system for the legitimate handlers of controlled drugs that would prevent

controlled substances moving from legitimate channels to illegitimate channels, thereby guarding against diversion.

16. As a dispenser of opioids, Respondents played a crucial role in stopping the diversion of opioids. The law makes pharmacies and pharmacists the last line of defense in preventing the illegal diversion of controlled substances.

17. Specifically, the federal Controlled Substances Act, similar to the Pennsylvania Controlled Substance, Drug, Device and Cosmetics Act, obligates pharmacies to practice their "corresponding responsibility" to dispense only legitimate prescriptions for controlled substances written for legitimate medical purposes. 21 C.F.R. § 1306.04(a); 35 P.S. § 780, *et seq*.

18. To comply with its legal duty to dispense only legitimate opioid prescriptions written for legitimate medical purposes, a pharmacy must, among other things, engage in due diligence to identify opioid prescriptions that have one or more "red flags" that are indicia of diversion and resolve those red flags before dispensing a prescription.

19. Red flags can relate to the prescriber, the patient, and/or the physical prescription itself. Examples of red flags include, but are not limited to: (1) patients who seek to fill opioid prescriptions written by multiple doctors over a short period; (2) patients who seek to pay in cash for an opioid prescription despite having insurance information on file; (3) opioid prescriptions that appear altered or

photocopied; (4) opioid prescriptions that contain misspellings or non-standard abbreviations; or (5) opioid prescriptions written by a doctor located far away from the patient's residence or the pharmacy's location.

20. Chain pharmacy companies like Respondents have unique real-time knowledge of opioid prescriptions dispensed by their thousands of pharmacies across the country. This allows chain pharmacies like Respondents to have access to, and the ability to track, aggregate, and maintain, data related to suspicious opioid prescriptions with red flags. As a result of the red flag data available to Respondents, they have a unique ability to spot and guard against diversion of opioids.

21. Respondents had the resources to implement systems to use their real time knowledge of their pharmacies' opioid ordering volume and prescription red flags to guard against diversion because of their enormous annual revenues. Yet Respondents did not timely implement such systems, and when they did, such systems were inadequate and ineffective, as described below.

22. Respondents failed to perform their corresponding responsibility adequately by implementing insufficient controls to identify and resolve signs of diversion, as required by federal and state controlled substances laws.

23. Respondents had policies with the stated purpose of identifying suspicious opioid orders and conducting due diligence to resolve the suspicion.

But Respondents frequently designed, or applied, their policies in such a manner that they were ineffective controls against diversion, thereby violating their legal obligations to guard against diversion of opioids by practicing their corresponding responsibility.

24. The sheer volume of diverted opioids has wreaked havoc throughout the Commonwealth.

25. Yet for numerous opioid prescriptions in the Commonwealth that resulted in one or more red flags, Respondents nevertheless dispensed the opioids without first making sufficient inquiries into the legitimacy of the prescription. Respondents also implemented policies in which their pharmacists were given insufficient time and resources to practice their corresponding responsibility, resulting in Respondents' pharmacists too often ignoring or insufficiently investigating the red flags that they did identify.

26. Year after year as their opioid dispensing increased and the opioid crisis grew, Respondents failed to practice their corresponding responsibility, including dispensing controlled substances without first resolving the red flags presented by suspicious prescriptions.

27. Respondents knew that their internal compliance program was inadequate to fulfill their anti-diversion duties pursuant to state and federal law.

28. Through their actions and inactions in connection with the dispensing of opioids, including those alleged above, Respondents materially contributed to the creation of an opioid addiction crisis that has injured, harmed, and otherwise disrupted the lives of thousands of residents of the Commonwealth as well as cost state, county and municipal governments billions of dollars in expenditures to prevent, mitigate and remedy the multitude of different societal harms and injuries caused by the addiction crisis. Respondents knew, or in the exercise of reasonable care and diligence should have known, that their actions and inactions would lead to this result.

## COUNT ONE

## VIOLATIONS OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

29. The Commonwealth incorporates and adopts by reference the allegations contained in paragraphs 1 through 28.

30. Respondents, in the course of dispensing opioid-containing prescription drugs, engaged in unfair or deceptive acts and practices that are prohibited by Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-201-9. Respondents' unfair or deceptive acts and practices include, but are not limited to, the following:

a. Failing to provide effective controls and procedures to guard against diversion of opioids in the Commonwealth of Pennsylvania, and

b. Failing to practice their corresponding responsibility and dispensing opioids in the Commonwealth of Pennsylvania despite not resolving red flags indicating that a prescription may be for an illegitimate purpose.

31. By failing to provide effective controls to prevent the diversion of opioids, and by failing to practice their responsibility for dispensing opioids, Respondents offered a product and/or service that was materially different from what it purported to be in the marketplace.

32. The foregoing acts and practices constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Consumer Protection Law, 73 P.S. §201-3, as defined by Section 201-2(4) by, among other things:

a. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

b. Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;

c. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

d. Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another; and

e. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding.

73 P.S. §§ 201-2(4) (ii), (iii), (v), (vii), and (xxi)

**WHEREFORE**, the Commonwealth respectfully requests this Honorable Court to issue an Order:

A. Declaring Respondents' conduct to be in violation of the Consumer Protection Law;

B. Permanently enjoining Respondents, their agents, successors, assigns, and employees acting directly or through any corporate device from engaging in the aforementioned acts, practices, methods of competition, or any other practice violative of the Consumer Protection Law;

C. Directing Respondents to comply with the Consumer Protection Law and any amendments thereto;

D. Directing Respondents, pursuant to Section 201-8(b) of the Consumer Protection Law, to pay civil penalties in the amount of One Thousand and 00/100 Dollars ($1,000.00) for each and every violation of the Consumer Protection Law, which will increase to Three Thousand and 00/100 Dollars ($3,000.00) for each violation involving a victim sixty (60) or older;

E. Directing Respondents to disgorge and forfeit all profits they have derived as a result of their unfair and deceptive acts and practices as set forth in this Complaint;

F. Directing Respondents to pay the Commonwealth for the costs of its investigation and prosecution of this action;

G. Directing Respondents to forfeit their right or franchise to engage in business within the Commonwealth of Pennsylvania until such time as all monies have been paid for restitution, costs, and civil penalties; and

H. Providing such other relief as the Court may deem necessary and appropriate.

## COUNT TWO

## COMMON LAW PUBLIC NUISANCE

33. The Commonwealth incorporates and adopts by reference the allegations contained in paragraphs 1 through 32.

34. Respondents, in the course of dispensing opioid-containing prescription drugs, created a public nuisance by unreasonably interfering with rights common to the general public as prohibited by the common law of the Commonwealth of Pennsylvania. Respondents' acts and practices that unreasonably interfered with rights common to the general public include, but are not limited to, the following:

a. Failing to provide effective controls and procedures to guard against diversion of opioids in the Commonwealth of Pennsylvania; and

b. Failing to practice their corresponding responsibility and dispensing opioids in the Commonwealth of Pennsylvania despite not resolving numerous red flags indicating that prescriptions may have been for illegitimate purposes.

35. Respondents' conduct described above resulted in a dramatic increase in the number of prescriptions for opioids. Because opioids were so abundant, vast quantities flooded the market and were diverted illegally.

36. While some consumers may be able to use opioids to relieve pain, others have become severely addicted. Respondents' conduct increased opioid use and dependence across all age groups. The Respondents' dispensing of opioids without adequate safeguards has been detrimental to public health and safety.

37. The misuse of and addiction to opioids, including prescription pain relievers, heroin, and synthetic opioids such as fentanyl, remains a serious national crisis that affects public health as well as social and economic welfare throughout this Commonwealth and the county as a whole. The economic burden of prescription opioid misuse is estimated to cost nearly $80 billion per year, including the costs of healthcare, lost productivity, addiction treatment, and criminal justice involvement all of which has caused severe harm to the public health, public safety and the general well-being of the residents of the Commonwealth.

38. The Respondents' actions described caused an increase in addiction among new opioid users resulting in a public health emergency of epic proportions, which is detrimental to public health and public safety.

39. The Respondents' conduct resulted in an epidemic that has taken the lives of hundreds of thousands of users and constitutes a significant interference with the public health and public safety.

40. The Respondents' conduct unreasonably interferes with a public right embodied by federal and state laws prohibiting the diversion of opioid products and illegitimate prescriptions.

41. The Respondents' conduct interfered with the public's right to be free from the widespread distribution of products that cause addiction.

42. The Respondents' conduct unreasonably interferes with the public's right to be free from addictive substances hazardous to health, and has caused harm to the public health, public safety, and the general well-being of the residents of the Commonwealth.

43. The Respondents' conduct is of a continuing nature and has knowingly produced a permanent and long-lasting effect on public health and public safety.

44. The Respondents' conduct complained of in this Complaint is outrageous and demonstrates the Respondents' willful, wanton, and reckless indifference to the rights of others.

45. Unless the Respondents are enjoined from continuing such conduct and ordered to take affirmative steps to undo and abate the harm and confusion caused thereby, the unreasonable interference with public health and public safety as described above will continue, for which the Commonwealth has no adequate remedy at law.

**WHEREFORE**, the Commonwealth respectfully requests this Honorable Court to issue an Order:

A. Declaring Respondents' conduct a Public Nuisance;

B. Permanently enjoining Respondents, their agents, successors, assigns, and employees acting directly or through any corporate device from engaging in the aforementioned acts, practices, methods of competition, or any other practice that subjects the Commonwealth and/or it citizens to any unreasonable conduct that interferes with the health, safety, and the general well-being of the Commonwealth and its citizens;

C. Enter judgment against Respondents for compensatory damages in an amount in excess of $50,000, including interest and delay damages, reserving the Commonwealth's or any other person or entity's right to seek additional compensatory damages associated with opioid use in the event that additional long-term negative health effects or other damages associated with opioid use are discovered in the future;

D. Directing Respondents to provide funds for opioid remediation in Pennsylvania to (1) address the misuse and abuse of opioid products, (2) treat or mitigate opioid use or related disorders, or (3) mitigate other

alleged effects of the opioid abuse crisis, including on those injured as a result of the opioid abuse crisis.

E. Directing Respondents to disgorge and forfeit all profits they have derived as a result of their unfair and deceptive acts and practices as set forth in this Complaint;

F. Directing Respondents to pay the Commonwealth for the costs of its investigation and prosecution of this action;

G. Directing Respondents to forfeit their right or franchise to engage in business within the Commonwealth of Pennsylvania until such time as all monies have been paid for restitution, costs, and civil penalties; and

H. Providing such other relief as the Court may deem necessary and appropriate.

Respectfully submitted,

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

MICHELLE HENRY
Attorney General

JAMES A. DONAHUE, III
First Deputy Attorney General

Date: 2/15/2024

By: */s/ Neil F. Mara*

NEIL F. MARA
Chief Deputy Attorney General
P.A. Attorney ID No. 64895
Office of Attorney General
Public Protection Division
1000 Madison Avenue, #310
Norristown, PA 19403
Telephone: (717) 787-3391
Email: nmara@attorneygeneral.gov

TYLER W. RITCHIE
Deputy Attorney General
PA Attorney I.D. No. 329895

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA,<br>Acting by Attorney General<br>Michelle Henry,<br><br>Petitioner,<br><br>v.<br><br>CVS PHARMACY, INC.;<br>WALGREEN CO.; and<br>WALMART, INC.,<br>Respondents, | C.A. NO.:<br><br>CIVIL ACTION |

**VERIFICATION**

I, Neil F. Mara, hereby state that I am a Chief Deputy in the Public Protection Division of the Pennsylvania Office of Attorney General, and am authorized to make this verification on behalf of the Petitioner in the within action. I hereby verify that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge or information and belief.

I understand that the statements contained herein are subject to the penalties of 18 Pa. C.S. § 4904 relating to unsworn falsification to authorities.

Date: 2/15/2024

By: */s/ Neil F. Mara*
NEIL F. MARA
Chief Deputy Attorney General

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA,<br>Acting by Attorney General<br>Michelle Henry,<br><br>Petitioner,<br><br>v.<br><br>CVS PHARMACY, INC.;<br>WALGREEN CO.; and<br>WALMART, INC.,<br>Respondents, | C.A. NO.:<br><br>CIVIL ACTION |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Date: 2/15/2024

By: */s/ Neil F. Mara*
NEIL F. MARA
Chief Deputy Attorney General
P.A. Attorney ID No. 64895
Office of Attorney General
Public Protection Division
1000 Madison Avenue, #310
Norristown, PA 19403
Telephone: (717) 787-3391
Email: nmara@attorneygeneral.gov