**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE COMMONWEALTH OF PENNSYLVANIA *ex rel.* LAWRENCE S. KRASNER, PHILADELPHIA DISTRICT ATTORNEY,<br><br>Plaintiff,<br><br>v.<br><br>EXPRESS SCRIPTS, INC. *et al.*,<br><br>Defendants. | No. 2:26-cv-07251-CFK |

**MEMORANDUM OF LAW SUPPORTING**
**UNITEDHEALTH GROUP, INC., OPTUM, INC.,**
**OPTUMINSIGHT, INC., OPTUMINSIGHT LIFE SCIENCES, INC.,**
**OPTUM HEALTH NETWORKS, INC., OPTUMHEALTH CARE SOLUTIONS, LLC,**
**AND OPTUMHEALTH HOLDINGS, LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARD ........ 3

ARGUMENT ........ 5

I. THE COURT LACKS PERSONAL JURISDICTION OVER THE 12(b)(2) DEFENDANTS—OPTUMINSIGHT LIFE SCIENCES, INC. AND OPTUMHEALTH HOLDINGS, LLC ........ 5

A. The Court lacks general jurisdiction over the 12(b)(2) Defendants. ........ 5

B. The Court lacks specific jurisdiction over the 12(b)(2) Defendants. ........ 6

II. THE COMPLAINT FAILS TO STATE A CLAIM. ........ 10

A. UHG and Optum, Inc. ........ 10

B. OptumInsight, Inc. and OptumInsight Life Sciences, Inc. ........ 12

C. Optum Health Networks, Inc., OptumHealth Care Solutions, LLC and OptumHealth Holdings, LLC ........ 12

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anne Arundel Cnty. v. Express Scripts, Inc.*,
2025 WL 254807 (D. Md. Jan. 21, 2025) ... 7, 8

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017) ... 4, 9, 10

*Calder v. Jones*,
465 U.S. 783 (1984) ... 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ... 4, 5

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ... 4

*Frank v. P N K (Lake Charles) L.L.C.*,
947 F.3d 331 (5th Cir. 2020) ... 5

*Gu v. Wang*,
2025 WL 660625 (D.N.J. Feb. 28, 2025) ... 7

*Heartrepreneur, LLC v. Jones*,
2020 WL 2839102 (E.D. Pa. May 29, 2020) ... 6

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998) ... 4

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021) ... 6, 8, 9

*Jovanovic v. U.S. Olympic & Paralympic Comm.*,
2023 WL 7179298 (D.N.J. Mar. 31, 2023) ... 6

*Keeton v. Hustler Mag., Inc.*,
465 U.S. 770 (1984) ... passim

*Mallory v. Norfolk S. Ry.*,
600 U.S. 122 (2023) ... 5

*Mississippi v. Optum, Inc.*,
No. 3:24-cv-00718 (S.D. Miss. June 12, 2026) ... 7

*Pottstown Sch. Dist. v. Montgomery Cnty. Bd. of Assessment Appeals*,
335 A.3d 1125 (Pa. 2025) .......... 11

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) .......... 5

*Rush v. Savchuk*,
444 U.S. 320 (1980) .......... passim

*TorcUP, Inc. v. Aztec Bolting Servs., Inc.*,
386 F. Supp. 3d 520 (E.D. Pa. 2019) (Kenney, J.) .......... 6

*United States v. Bestfoods*,
524 U.S. 51 (1998) .......... 11

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... passim

**RULES**

Fed. R. Civ. P. 12(b)(2) .......... 3

Fed. R. Civ. P. 12(b)(6) .......... 1, 4, 10

**STATUTES**

42 Pa. Cons. Stat. § 5322(b) .......... 4

73 P.S. § 201 .......... 11

## INTRODUCTION

As explained in Defendants' contemporaneously filed Rule 12(b)(6) motion to dismiss, the Commonwealth's claim against all twenty-two named Defendants fails. But the Court need not reach those arguments for two of those entities—OptumInsight Life Sciences, Inc. and OptumHealth Holdings, LLC (together, the "12(b)(2) Defendants")—because the Commonwealth has not established personal jurisdiction over them. The Commonwealth does not plead that the 12(b)(2) Defendants are "at home" in Pennsylvania, that they registered to do business in Pennsylvania, or that they engaged in suit-related conduct creating a substantial connection with Pennsylvania. Accordingly, the Court should dismiss the complaint (ECF No. 1-3) (Compl.) as to those entities.

The Court should also dismiss the complaint under Rule 12(b)(6) as to UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., Optum Health Networks, Inc., OptumHealth Care Solutions, LLC, and OptumHealth Holdings, LLC (collectively, the "Moving Defendants"). Rather than allege what any specific Moving Defendant did, the Commonwealth simply lumps those entities together with other defendants or attributes third parties' conduct to them. That pleading failure is an independent basis for dismissal in addition to the grounds discussed in Defendants' joint Rule 12(b)(6) motion.

## BACKGROUND

**OptumInsight, Inc. and OptumInsight Life Sciences, Inc.** The Commonwealth groups OptumInsight, Inc. and OptumInsight Life Sciences, Inc. with non-parties as "OptumInsight," without alleging which entity engaged in what conduct. Compl. ¶ 65 ("OptumInsight, Inc., OptumInsight Life Sciences, Inc., as well as their predecessors, successors, and affiliates, including but not limited to Innovus, Innovus Research, i3, QualityMetric, HTAnalysts, ChinaGate, and CanReg, are referred to herein as 'OptumInsight' or 'the OptumInsight Defendants.'"). The

complaint then goes even further by collectively defining "OptumInsight" and five other entities as "Optum." *Id.* ¶ 86. That group pleading cannot establish personal jurisdiction over OptumInsight Life Sciences, Inc. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to *each* defendant over whom a state court exercises jurisdiction." (emphasis added)); *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

The complaint mentions OptumInsight Life Sciences, Inc. by name exactly once: in the paragraph naming it as defendant. Compl. ¶ 64. Every other allegation is about "OptumInsight" collectively, which allegedly provided data, research, and consulting that opioid manufacturers used to promote the use of opioids to treat pain. *E.g.*, *id*. ¶¶ 95–96, 235–37, 252–54.

Even taken as true, those improperly pleaded allegations about "OptumInsight" describe only nationwide dealings with pharmaceutical manufacturers. Tacking on "including in Pennsylvania" does not change that. *See, e.g.*, Compl. ¶¶ 236–37, 252. Due process requires that "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). None of the complaint's vague allegations plausibly ties any suit-related conduct by OptumInsight Life Sciences, Inc. to Pennsylvania, much less establishes the required "substantial connection." *Id.*

**UnitedHealth Group, Inc. ("UHG") and Optum, Inc.** The Commonwealth names UHG and Optum, Inc. solely because they are OptumRx, Inc.'s corporate parents. Compl. ¶¶ 52–61. The complaint does not allege that either entity engaged in any conduct giving rise to the claim. The only allegations related to Optum, Inc. describe the business of its subsidiaries. *Id.* ¶¶ 59, 61. The allegations about UHG mostly describe Optum, Inc. and UnitedHealthcare ("UHC") (which is *not* a defendant). *Id.* ¶¶ 54–55. The only substantive allegations about UHG concern a single email

allegedly sent by a UHG employee to a Purdue employee, *id.* ¶ 294, and a vague one-paragraph description of a "clinical initiative," *id.* ¶ 255.

**OptumHealth Holdings, LLC**. OptumHealth Holdings, LLC is only a parent and holding company. *Id.* ¶ 79. The complaint does not allege *any* suit-related conduct by it, never mind suit-related conduct creating a substantial connection to Pennsylvania. *Walden*, 571 U.S. at 284.

The complaint lumps three entities (OptumHealth Holdings, LLC, OptumHealth Care Solutions, LLC, and Optum Health Networks, Inc.) together as "OptumHealth" without pleading which entity did what. Compl. ¶ 83. It then folds "OptumHealth" and four other entities into "Optum." *Id.* ¶ 86. Those approaches are improper, and cannot establish personal jurisdiction over OptumHealth Holdings, LLC. *Rush*, 444 U.S. at 332; *Keeton*, 465 U.S. at 781 n.13.

And even if the Court were to credit the Commonwealth's group pleading, the complaint still fails to allege suit-related conduct by "OptumHealth" creating a substantial connection with Pennsylvania. The only allegation about "OptumHealth" is that it had a supposed partnership with Purdue Pharma to educate the medical community about the "undertreatment" of pain and expand the use of opioids. Compl. ¶¶ 85, 261–66. But apart from the boilerplate refrain "nationwide, including in Pennsylvania," nothing suggests this purported partnership had anything to do with Pennsylvania, let alone that it reached into or targeted the state. *Walden*, 571 U.S. at 284.

**OptumHealth Care Solutions, LLC and Optum Health Networks, Inc.** OptumHealth Care Solutions, LLC and Optum Health Networks, Inc. provide healthcare services. Compl. ¶¶ 84–85. The complaint lumps them together with OptumHealth Holdings, LLC as "OptumHealth," and does not allege any particular conduct by either entity. *See id.* ¶ 83.

## LEGAL STANDARD

***Rule 12(b)(2)*.** The Commonwealth bears the burden of establishing that the Court has personal jurisdiction over *each* defendant individually. *See Rush*, 444 U.S. at 332; *Keeton*, 465

U.S. at 781 n.13. "Once a defendant raises a jurisdictional defense, the burden shifts to the plaintiff to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998) (cleaned up).

In determining personal jurisdiction, the court assesses (1) whether the relevant state long-arm statute allows the exercise of personal jurisdiction and (2) whether the exercise of jurisdiction comports with the Due Process Clause of the Constitution. *Id.* at 259. In Pennsylvania, the analysis collapses into one question because under its long-arm statute a court may exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b).

There are two types of personal jurisdiction: general and specific. General jurisdiction exists only if a defendant's contacts are so pervasive that it can be "fairly regarded as at home" in the State. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Specific jurisdiction exists if the defendant's alleged "suit-related conduct" creates "a substantial connection with the forum State." *Walden*, 571 U.S. at 284. A defendant's alleged contacts with the forum state must be purposeful and not "random, fortuitous, or attenuated." *Id*. at 286. Those contacts must reflect the defendant's own choice to "reach[] out beyond" its home, such as by "exploit[ing] a market" in the forum State. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (cleaned up). And plaintiff's claims must "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017) (cleaned up).

***Rule 12(b)(6).*** The standard for dismissal is set forth in Defendants' joint brief at pages 5 and 6.

## ARGUMENT

### I. THE COURT LACKS PERSONAL JURISDICTION OVER THE 12(b)(2) DEFENDANTS—OPTUMINSIGHT LIFE SCIENCES, INC. AND OPTUMHEALTH HOLDINGS, LLC.

The Commonwealth alleges no basis for personal jurisdiction over the 12(b)(2) Defendants. Neither is "at home" in Pennsylvania, so there is no general jurisdiction. And the Court lacks specific jurisdiction because the Commonwealth does not plausibly allege facts showing suit-related contacts with Pennsylvania.

#### A. The Court lacks general jurisdiction over the 12(b)(2) Defendants.

General jurisdiction typically attaches only if a company has "affiliations with the State [that] are so 'continuous and systematic'" that it "is fairly regarded as at home" there. *Daimler*, 571 U.S. at 137–39. Generally, a corporation is "at home" only in its "place of incorporation and principal place of business." *Id.* at 137. The same is true for limited liability companies. *E.g.*, *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336–38 (5th Cir. 2020); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015). Under Pennsylvania law, a foreign company that is registered to do business in the State also consents to general personal jurisdiction in Pennsylvania. *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 134–36 (2023).

The Commonwealth does not allege that either 12(b)(2) Defendant is "at home" in Pennsylvania. *See* Compl. ¶ 64 (OptumInsight Life Sciences, Inc. is a Delaware corporation with its principal place of business in Minnesota); *id.* ¶ 79 (OptumHealth Holdings, LLC is a Delaware limited liability company with its principal place of business in Minnesota). Nor does it allege that either entity is registered to do business in Pennsylvania, or that this is an "exceptional case" in which either entity is at home in Pennsylvania despite being incorporated and headquartered elsewhere. *See Daimler*, 571 U.S. at 139 n.19. Accordingly, the Court lacks general jurisdiction over the 12(b)(2) Defendants.

### B. The Court lacks specific jurisdiction over the 12(b)(2) Defendants.

Specific jurisdiction exists under the Due Process Clause only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284. The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id*. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290; *see also TorcUP, Inc. v. Aztec Bolting Servs., Inc.*, 386 F. Supp. 3d 520, 525 (E.D. Pa. 2019) (Kenney, J.) ("[P]laintiff's claims must 'arise out of or relate to' defendant's purposefully targeted activities in the forum.").

The Commonwealth fails at the threshold because it does not allege facts establishing jurisdiction over each defendant individually. *Rush*, 444 U.S. at 331–32 (holding it "plainly unconstitutional" to aggregate multiple defendants' forum contacts because the requirements of *International Shoe* "must be met as to each defendant"); *Keeton*, 465 U.S. at 781 n.13; *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). It does not do so because the complaint's group pleading makes it impossible to determine which entity is alleged to have done what. *See In re Aegean Marine Petroleum Network, Inc. Secs. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted."); *Heartrepreneur, LLC v. Jones*, 2020 WL 2839102, at *3 (E.D. Pa. May 29, 2020) ("Plaintiffs refer to all Defendants collectively and do not separately allege how each Defendant purposefully directed activities towards Pennsylvania. Plaintiffs may not simply lump Defendants together to establish jurisdiction."); *Jovanovic v. U.S. Olympic & Paralympic Comm.*, 2023 WL 7179298, at *8 (D.N.J. Mar. 31, 2023) ("Insofar as the Complaint asserts group pleading to establish personal jurisdiction over each Defendant, the Court agrees . .

. that this is improper, because '[e]ach defendant's contacts with the forum state must be assessed individually.'"); *Gu v. Wang*, 2025 WL 660625, at *7 (D.N.J. Feb. 28, 2025) ("[T]he Court need not accept Plaintiff's 'group-pled' allegations about Defendants' contacts with New Jersey.").

But even if the Court credits the complaint's group allegations (it should not), there is still no basis for personal jurisdiction: the complaint alleges no suit-related conduct by either 12(b)(2) Defendant directed at Pennsylvania.

Indeed, the Southern District of Mississippi recently dismissed materially identical opioid-related claims against these same 12(b)(2) Defendants. *See* Order at 12–15, *Mississippi v. Optum, Inc.*, No. 3:24-cv-00718 (S.D. Miss. June 12, 2026), ECF No. 70 (attached as Exhibit A). The court explained that the State bore the burden to plead a *prima facie* case for personal jurisdiction, *id.* at 4, but had not "explained how each [defendant's] actions contributed to the injury in Mississippi," *id.* at 7. The court further explained that the State failed to establish that defendants purposefully availed themselves of the privilege of conducting activities in Mississippi. *Id.* at 12–14. Because Mississippi failed to provide sufficient allegations to establish personal jurisdiction over the defendants, the court dismissed them. *Id.*

The Mississippi decision is the most recent to dismiss opioid-related claims against these entities for lack of personal jurisdiction. But it is not the only one. Last year, the District of Maryland also dismissed similar opioid-related claims against one of the 12(b)(2) Defendants, OptumInsight Life Sciences, Inc. *Anne Arundel Cnty. v. Express Scripts, Inc.*, 2025 WL 254807, at *10 (D. Md. Jan. 21, 2025). That court explained that "[n]one of the County's allegations referencing the OptumInsight Entities indicate that they transacted business within Maryland," and that "[t]he conduct alleged in the Amended Complaint does not establish that the OptumInsight Entities purposefully availed themselves of the privilege of conducting activities within Maryland,

or that the County's claims arise out of those contacts." *Id.* at *3–4. The court concluded that "the County has not alleged any facts that suggest that this Court may have specific personal jurisdiction over the OptumInsight Entities." *Id.* at *4. The Court should reach the same result here.

**1. OptumInsight Life Sciences, Inc.**

The complaint contains no allegations aimed solely at OptumInsight Life Sciences, Inc. Instead, it lumps it together with OptumInsight, Inc. as "OptumInsight." Compl. ¶ 65. As explained, that is improper. *Rush*, 444 U.S. at 332; *Keeton*, 465 U.S. at 781 n.13; *Aegean Marine*, 529 F. Supp. 3d at 135.

In any event, the allegations against "OptumInsight" do not suggest any connection with Pennsylvania, let alone suit-related contacts creating a substantial connection with the state. *See Walden*, 571 U.S. at 284; *see, e.g.*, Compl. ¶ 67 ("OptumInsight" "partnered with various opioid manufacturers to create studies, marketing materials, educational programs, and even identify algorithms to simultaneously downplay opioids' addictive properties and expand their use and availability throughout the country, including in Pennsylvania."); *id.* ¶ 96 ("OptumInsight" worked "directly with opioid manufacturers to convince patients, prescribers, payors, and the public, including in Philadelphia, of their false claim that long term opioid use was appropriate for the treatment of chronic pain and that opioids were not addictive"); *id.* ¶ 97 (each opioid manufacturer assigned executives to "work with OptumInsight" and "used their relationships with OptumInsight to deepen their ties to the overall Optum corporate family"); *id.* ¶ 98 ("OptumInsight" "was paid tens of millions of dollars by the opioid manufacturers during the relevant time period for its work to expand the opioid market."); *id.* ¶ 236 ("OptumInsight" and Purdue worked together "to identify physicians from UHC and OptumInsight's database and then target[ed] these physicians, including those in Philadelphia, with comprehensive 'education' materials on the effectiveness of opioids in chronic pain treatment").

At most, the Commonwealth's allegations suggest a purported injury *felt* in Pennsylvania, but not conduct directed *toward* Pennsylvania or any meaningful contact *with* the state. The jurisdictional inquiry does not focus on the plaintiff or where the plaintiff was injured; it asks "whether the *defendant*'s actions connect him to the *forum*." *Walden*, 571 U.S. at 289. In other words, simply alleging that an injury occurred in the forum state is *never* enough; the defendant itself must create *suit-related contacts* with the forum. *Id.* at 288–89; *see also Bristol-Myers Squibb*, 582 U.S. at 262 ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (cleaned up)). For that same reason, the Commonwealth cannot impute any opioid manufacturer's Pennsylvania contacts to OptumInsight Life Sciences, Inc. *Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Nor can it rely on the boilerplate refrain of "including in Pennsylvania" or "including in Philadelphia." *See id.* at 284. Conclusory allegations about nationwide conduct fall far short of showing that OptumInsight Life Sciences, Inc. has a substantial suit-related connection with Pennsylvania. *Id.*

Because there are no allegations of suit-related conduct by "OptumInsight"—let alone by OptumInsight Life Sciences, Inc.—directed at Pennsylvania, the Commonwealth cannot carry its burden to establish personal jurisdiction over OptumInsight Life Sciences, Inc.

**2. OptumHealth Holdings, LLC**

The Commonwealth improperly groups OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. as "OptumHealth" (Compl. ¶ 83) without pleading which entity allegedly did what. *Rush*, 444 U.S. at 332; *Keeton*, 465 U.S. at 781 n.13; *Aegean Marine*, 529 F. Supp. 3d at 135.

The Commonwealth does not even try to allege facts showing that OptumHealth Holdings, LLC (let alone "OptumHealth," generally) has substantial suit-related contacts with Pennsylvania.

*See Walden*, 571 U.S. at 284. The Commonwealth's only substantive allegation is that "OptumHealth" had a supposed partnership with Purdue Pharma to "begin educating UHC's medical staff nationwide" about the "undertreatment" of pain. Compl. ¶¶ 85, 261–66. Again, those vague allegations suggest, at most, an alleged injury felt in Pennsylvania, not conduct directed or targeted at Pennsylvania. And again, that is not enough. *See Walden*, 571 U.S. at 284.

The Commonwealth's allegation that "OptumHealth" partnered with Purdue to educate providers nationwide fares no better. Allegations about nationwide conduct cannot establish state-specific conduct. *Bristol-Myers Squibb*, 582 U.S. at 264–65. For that reason, it does not help to say that the alleged program "focus[ed] on Optum case managers throughout the country, including in Pennsylvania." Compl. ¶ 266. At most, that allegation links "OptumHealth" to Purdue, not to Pennsylvania. *See id.* ¶ 85. It establishes no suit-related connection between OptumHealth Holdings, LLC and Pennsylvania.

## II. THE COMPLAINT FAILS TO STATE A CLAIM.

Even if the Court concludes that personal jurisdiction is proper over the 12(b)(2) Defendants (it is not), the Commonwealth's complaint still fails to state a claim against them, as well as against all other Moving Defendants, under Rule 12(b)(6). The Moving Defendants join the separate motion to dismiss filed jointly by all Defendants and incorporate or adopt by reference the arguments in that motion. In addition, the Court should dismiss the Moving Defendants because the Commonwealth alleges no actionable conduct by these specific defendants.

### A. UHG and Optum, Inc.

The Commonwealth seeks to hold UHG and Optum, Inc. liable for their subsidiaries' alleged conduct. *See* Compl. ¶¶ 52–61. For example, the Commonwealth alleges that UHG is Optum, Inc.'s parent, *id.* ¶ 54, and that Optum, Inc. "is a health services company comprising three sectors—OptumRx, which manages pharmacy benefits for both UHC and third-party clients;

OptumHealth, which provides medical services as well as education and support for individuals throughout the country; and OptumInsight, which is the data, research, and consulting sector," *id.* ¶ 59. Those allegations fail to state a plausible claim for relief.

Allegations of a parent-subsidiary relationship are insufficient to plausibly allege a parent company's liability. *Pottstown Sch. Dist. v. Montgomery Cnty. Bd. of Assessment Appeals*, 335 A.3d 1125, 1142 (Pa. 2025) ("One of the polestar presumptions regarding the nature of business corporation structure is that a duly incorporated parent corporation and its subsidiary are separate entities for all purposes."); *see also United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (citation and quotation marks omitted)). That "weighty" presumption against piercing the corporate veil may be overcome only under "extraordinary circumstances." *Pottstown Sch. Dist.*, 335 A.3d at 1142. Here, all the Commonwealth has alleged about UHG and Optum, Inc. are garden-variety corporate parent-subsidiary relationships. It has not come close to meeting its burden to overcome the heavy presumption against disregarding the corporate form. *See id.*; *Bestfoods*, 524 U.S. at 61.

Nor do the allegations about UHG's and Optum, Inc.'s own conduct state a claim. In Optum, Inc.'s case, that is because there are no substantive allegations at all. As for UHG, the complaint alleges only that a UHG executive emailed an unidentified person at Purdue about OxyContin, Compl. ¶ 294, and that UHG implemented a clinical initiative, *id.* ¶ 255. Neither allegation remotely supports a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*

### B. OptumInsight, Inc. and OptumInsight Life Sciences, Inc.

The Commonwealth does not allege any actionable conduct by OptumInsight, Inc. or OptumInsight Life Sciences, Inc. For starters, the complaint contains no individualized allegations about OptumInsight Life Sciences, Inc. And the complaint's allegations about "OptumInsight" do not help either. At most, the Commonwealth alleges that "OptumInsight" provided routine data and analytics services to non-party opioid manufacturers, which the Commonwealth alleges used that information and those services to promote the use of opioid medications. *See* Compl. ¶¶ 251–61. The Commonwealth's claim against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. should be dismissed because it never connects its allegations against those entities to the elements of its claim.

### C. Optum Health Networks, Inc., OptumHealth Care Solutions, LLC and OptumHealth Holdings, LLC

The Commonwealth also alleges no actionable conduct by Optum Health Networks, Inc., OptumHealth Care Solutions, LLC, or OptumHealth Holdings, LLC. It alleges that "OptumHealth" partnered with Purdue to educate UHC's medical staff "on how to effectively manage pain." *E.g.*, Compl. ¶¶ 85, 261–67. Even taking those allegations as true, the Commonwealth does not explain how educating medical professionals or case managers could be an "unfair method[] of competition" or an "unfair or deceptive act[] or practice[]" under the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

## CONCLUSION

For these reasons, the Court should dismiss the complaint as to the 12(b)(2) Defendants for lack of personal jurisdiction and should dismiss the complaint with prejudice as to all Moving Defendants for failure to state a claim.

Dated: October 30, 2026

*/s/ Joseph I. Fontak*

Joseph I. Fontak
**LEADER BERKON COLAO & SILVERSTEIN LLP**
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 755-0455
jfontak@leaderberkon.com

Brian D. Boone (*pro hac vice*)
Matthew P. Hooker (*pro hac vice*)
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000
brian.boone@alston.com
matthew.hooker@alston.com

Michael A. Kaeding (*pro hac vice*)
**ALSTON & BIRD LLP**
555 Fayetteville St., Suite 600
Raleigh, NC 27601
(919) 862 2200
mike.kaeding@alston.com

Rachel Finkel (*pro hac vice*)
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
(212) 210-9517
rachel.finkel@alston.com

Robert J. Giuffra, Jr. (*pro hac vice*)
Jeffrey T. Scott (*pro hac vice*)
Matthew J. Porpora (*pro hac vice*)
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendants UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc.,*

*OptumInsight Life Sciences, Inc., Optum Health Networks, Inc., OptumHealth Care Solutions, LLC and OptumHealth Holdings, LLC*