**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| The Commonwealth of Pennsylvania,<br>*ex rel.* Lawrence S. Krasner, Philadelphia District Attorney,<br><br>*Plaintiff*,<br>v.<br><br>Express Scripts, Inc. *et al.*,<br><br>*Defendants*. | Case No.: 2:26-cv-07251-CFK<br><br>ORAL ARGUMENT REQUESTED |

**BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARD ..... 5

ARGUMENT ..... 6

I. THE LEARNED INTERMEDIARY DOCTRINE BARS THE CLAIM. ..... 6

II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE UTPCPL. ..... 8

A. The Complaint's Omission Theory Fails Under *Halpern* ..... 9

B. The Complaint Relies On Non-Actionable Puffery. ..... 11

C. The Complaint Fails To Allege Deception. ..... 14

III. ERISA AND MEDICARE PART D PREEMPT THE COMMONWEALTH'S CLAIM. . 18

A. ERISA Preemption ..... 19

B. Medicare Preemption. ..... 22

CONCLUSION ..... 24

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ahn v. Cigna Health & Life Ins. Co.*,
179 F.4th 187 (3d Cir. 2026) .......................................................................19, 20

*Alaska v. Express Scripts, Inc.*,
2024 WL 2321210 (D. Alaska May 22, 2024) ......................................................24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................5, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................5

*Breindel v. On Inc.*,
2026 WL 2355526 (D. Or. Aug. 13, 2026)..........................................................11

*Cessna v. REA Energy Coop., Inc.*,
258 F. Supp. 3d 566 (W.D. Pa. 2017)..............................................................8, 14

*Chirikos v. Yellow Cab Co.*,
410 N.E.2d 61 (Ill. App. Ct. 1980) .....................................................................14

*City of Philadelphia v. Beretta U.S.A. Corp.*,
277 F.3d 415 (3d Cir. 2002)...........................................................................5, 18

*Cohen v. Johnson & Johnson*,
634 F. Supp. 3d 216 (W.D. Pa. 2022)...................................................................7

*Kentucky ex rel. Coleman v. Express Scripts, Inc.*,
--- F.4th ---, 2026 WL 2796078 (6th Cir. Sep. 18, 2026) ..................................22, 24

*Commonwealth v. Chesapeake Energy Corp.*,
247 A.3d 934 (Pa. 2021) ......................................................................................13

*Coyle ex rel. Coyle v. Richardson-Merrell, Inc.*,
584 A.2d 1383 (Pa. 1991) .......................................................................2, 4, 6, 7, 8

*DeSimone v. U.S. Claims Servs., Inc.*,
2020 WL 1164794 (E.D. Pa. Mar. 11, 2020)........................................................11

*Do Sung Uhm v. Humana Inc.*,
620 F.3d 1134 (9th Cir. 2010) ..............................................................................23

*Doe A.F. v. Lyft, Inc.*,
2024 WL 3497886 (E.D. Pa. July 19, 2024).........................................................12

*Doherty v. Allstate Indem. Co.*,
2016 WL 5390638 (E.D. Pa. Sep. 27, 2016) ....................14

*In re EpiPen ERISA Litig.*,
2020 WL 4501925 (D. Minn. Aug. 5, 2020) ....................18

*Flowers v. Caremark PCS Health, LLC*,
180 F.4th 1084 (8th Cir. 2026) ....................20, 21

*FMC Corp. v. Holliday*,
498 U.S. 52 (1990)....................19

*Fusco v. Uber Techs., Inc.*,
2018 WL 3618232 (E.D. Pa. July 27, 2018)....................11, 12, 13

*Garczynski v. Countrywide Home Loans, Inc.*,
656 F. Supp. 2d 505 (E.D. Pa. 2009) ....................16

*Gobeille v. Liberty Mut. Ins. Co.*,
577 U.S. 312 (2016)....................19

*Gregg v. Ameriprise Fin., Inc.*,
245 A.3d 637 (Pa. 2021) ....................14

*Halpern v. Ricoh U.S.A., Inc.*,
353 A.3d 1264 (Pa. 2026)....................2, 8, 9, 10, 11, 14, 16, 17, 18

*State ex rel. Hunter v. Johnson & Johnson*,
499 P.3d 719 (Okla. 2021)....................2

*Kee v. Zimmer, Inc.*,
871 F. Supp. 2d 405 (E.D. Pa. 2012) ....................7, 8

*Kopstein v. Indep. Blue Cross*,
339 F. App'x 261 (3d Cir. 2009) ....................23

*Kovalev v. Lidl US, LLC*,
647 F. Supp. 3d 319 (E.D. Pa. 2022) ....................11, 12, 13

*Laboy v. GEICO Secure Ins. Co.*,
2026 WL 1893837 (E.D. Pa. June 30, 2026) ....................16

*Lisowski v. Walmart Stores, Inc.*,
552 F. Supp. 3d 519 (W.D. Pa. 2021)....................14

*Mazur v. Merck & Co.*,
964 F.2d 1348 (3d Cir. 1992)....................6

*McKee Foods Corp. v. BFP Inc.*,
173 F.4th 242 (6th Cir. 2026) ....................21, 22

*McLaughlin v. Bayer Corp.*,
172 F. Supp. 3d 804 (E.D. Pa. 2016) ....................6, 7

*McLean v. Big Lots Inc.*,
542 F. Supp. 3d 343 (W.D. Pa. 2021) ....................13

*Milliken v. Jacono*,
103 A.3d 806 (Pa. 2014) ....................10

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-md-2804 (N.D. Ohio July 15, 2019) ....................3

*Nw. Inst. of Psychiatry, Inc. v. Travelers Ins. Co.*,
1992 WL 236257 (E.D. Pa. Sep. 3, 1992) ....................19

*Pharm. Care Mgmt. Ass'n v. Mulready*,
78 F.4th 1183 (10th Cir. 2023) ....................20, 22, 23

*PMC Prop. Grp., Inc. v. Viracon, LLC*,
2026 WL 2447053 (E.D. Pa. Aug. 20, 2026) ....................10

*Prest v. Nat'l Gen. Ins. Co.*,
2020 WL 13866716 (W.D. Pa. Mar. 25, 2020) ....................11, 14, 15

*Prukala v. Elle*,
11 F. Supp. 3d 443 (M.D. Pa. 2014) ....................14

*REM Coal Co. v. Clark Equip. Co.*,
563 A.2d 128 (Pa. Super. 1989) ....................17

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
592 U.S. 80 (2020) ....................3, 18

*Schmidt v. Skolas*,
770 F.3d 241 (3d Cir. 2014) ....................23

*Commonwealth ex rel. Shapiro v. Golden Gate Nat'l Senior Care LLC*,
194 A.3d 1010 (Pa. 2018) ....................11, 12, 13

*In re Wellbutrin SR/Zyban Antitrust Litig.*,
281 F. Supp. 2d 751 (E.D. Pa. 2003) ....................23

*Zafarana v. Pfizer, Inc.*,
724 F. Supp. 2d 545 (E.D. Pa. 2010) ....................7

## Statutes, Rules, and Regulations

35 P.S. § 780-101 ........ 17

35 P.S. § 780-111 ........ 18

40 P.S. § 4501 ........ 3

40 P.S. § 4502 ........ 17

40 P.S. § 4551 ........ 17

63 P.S. § 390-1 ........ 3, 17

63 P.S. § 390-8 ........ 17

73 P.S. § 201-1 ........ 2

73 P.S. § 201-2 ........ 9, 13, 14, 15, 16

73 P.S. § 201-3 ........ 13

21 U.S.C. § 801 ........ 3, 17

21 U.S.C. § 822 ........ 3

21 U.S.C. § 829 ........ 4, 18

29 U.S.C. § 1144 ........ 19

42 U.S.C. § 1395w-26 ........ 22

42 U.S.C. § 1395w-104 ........ 23

42 U.S.C. § 1395w-112 ........ 22

21 C.F.R. § 1306.04 ........ 18

21 C.F.R. § 1306.05 ........ 4

21 C.F.R. § 1306.06 ........ 18

42 C.F.R. § 423.120 ........ 23, 24

42 C.F.R. § 423.153 ........ 23

42 C.F.R. § 423.272 ........ 23

42 C.F.R. § 423.440 ........ 22

28 Pa. Code § 25.52(a) ........ 18

Fed. R. Civ. P. 12 ........ 2, 5

**Other Authorities**

USP Medicare Model Guidelines v6.0 (Categories and Classes) (2014), https://www.usp.org/sites/default/files/usp/document/our-work/healthcare-quality-safety/uspmmg_v6_0_cat-class.pdf ........ 24

USP Medicare Model Guidelines v7.0 (Categories and Classes) (2017), https://www.usp.org/sites/default/files/usp/document/our-work/healthcare-quality-safety/uspmmg_v7_0_cat-class.pdf ........ 23

## INTRODUCTION

The Philadelphia District Attorney, in the name of the Commonwealth, seeks to recover under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (**UTPCPL**) for harms allegedly caused by third parties' misuse of prescription opioids—medications prescribed by doctors and approved by the U.S. Food & Drug Administration (**FDA**) as safe and effective when taken as prescribed. Although no one disputes that Pennsylvania has suffered from the opioid crisis, Defendants are not to blame. The complaint primarily targets pharmacy benefit managers (**PBMs**), which process insurance claims for FDA-approved prescription medications on behalf of their clients, most of which are employer health plans governed by ERISA and Medicare plans governed by Medicare Part D. The UTPCPL is a consumer-protection statute that prohibits deception. It is not a vehicle for second-guessing the professional medical judgment of doctors about what medications to prescribe or health plans' decisions about how to structure plan benefits.

The complaint should be dismissed for three independent reasons. *First*, the learned intermediary doctrine forecloses the Commonwealth's theory that Defendants deceived consumers about the risks of prescription opioids. Pennsylvania law assigns the responsibility of assessing a medication's risks for an individual patient and conveying appropriate warnings to the prescribing physician—not manufacturers, pharmacists, or others further removed from the prescribing relationship. The Commonwealth cannot evade that allocation of responsibility by recasting an alleged failure to warn as consumer deception.

*Second*, the Commonwealth fails to plausibly allege a violation of the UTPCPL. The complaint mainly rests on Defendants' alleged failure to disclose the supposed risks associated with opioid medications, information related to rebates from opioid manufacturers, Defendants' purported business motivations, and alleged compliance failures. But, as the Supreme Court of Pennsylvania recently held, an omission-based claim under the UTPCPL's catch-all provision fails

unless the plaintiff alleges that the defendant had a duty to disclose. *Halpern v. Ricoh U.S.A., Inc.*, 353 A.3d 1264, 1274–79 (Pa. 2026). The complaint alleges no such duty. The complaint also relies on aspirational statements of Defendants' corporate values and generalized claims about the quality of Defendants' services. But these statements are non-actionable puffery and cannot state a UTPCPL claim. The remaining allegations seek to hold Defendants liable for actions they allegedly took or failed to take—such as failing to force health plans to limit insurance coverage of FDA-approved prescription opioids—without plausibly explaining how such conduct had the capacity to deceive a reasonable consumer.

*Third*, ERISA and Medicare Part D preempt the UTPCPL claim because the claim seeks to interfere with nationally uniform plan administration by challenging how plans structure the insurance benefits they provide for prescription opioids.

For each of these reasons, the Court should dismiss the complaint with prejudice.[1]

## BACKGROUND

The Philadelphia District Attorney filed this lawsuit in the name of the Commonwealth under the UTPCPL, 73 P.S. § 201-1, *et seq.*, purportedly "to hold accountable three of the nation's largest PBMs, CVS Caremark, Express Scripts, and Optum Rx, and their affiliates" for harms the complaint attributes to "dangerous prescription opioid drugs." Compl. ¶¶ 1, 3. "Unlike the marketing system for most other products, the distribution system for prescription drugs is highly restricted." *Coyle ex rel. Coyle v. Richardson-Merrell, Inc.*, 584 A.2d 1383, 1386 (Pa. 1991). Prescription opioids are lawful medications approved by the FDA as "safe, effective pain management" when taken as prescribed. *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719,

[1] OptumInsight Life Sciences, Inc., OptumHealth Holdings, LLC, CVS Health Corporation, and Caremark Rx, L.L.C. join this motion subject to, and without waiving, their separately filed motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

721 (Okla. 2021); *see also* Compl. ¶ 353 (acknowledging prescription opioids have "accepted medical use in treatment"). They are also controlled substances closely regulated by the U.S. Drug Enforcement Administration (**DEA**). Compl. ¶¶ 346, 351–53, 358–61, 376 (citing 21 U.S.C. §§ 822(a), 829).

PBMs do not manufacture, market, or prescribe opioid medications. *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio July 15, 2019), Dkt. 1848 at 2 (Ex. A). Rather, PBMs administer prescription-drug benefits for their health-plan clients, many of which are employer-sponsored plans governed by ERISA and Medicare plans governed by Medicare Part D. *See Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 89 n.1 (2020); Compl. ¶¶ 152, 319. Plans structure the insurance benefits they provide in part through formularies and utilization-management (**UM**) programs. A formulary is a list of medications that a plan covers with insurance benefits, while UM programs set coverage limits for particular medications. Compl. ¶¶ 153–54. Among other services, PBMs offer "standard, national formularies" and UM programs. *Id.* ¶¶ 152, 154. Each plan decides for itself whether to adopt its own bespoke formulary and UM programs or adopt ones that PBMs offer. *Id.* ¶¶ 152, 330; *see also id.* ¶¶ 4, 429(b), (i). PBMs are licensed and regulated by the Commonwealth. *See* 40 P.S. § 4501, *et seq*.

The complaint also targets the PBMs' affiliated mail-order pharmacies, which dispense to plan beneficiaries FDA-approved opioid medications prescribed by physicians. Compl. ¶ 156. Those pharmacies are licensed by the Pennsylvania Board of Pharmacy, registered with the DEA, and regulated by the federal Controlled Substances Act (**CSA**), 21 U.S.C. § 801, *et seq.*, and Pennsylvania law, 63 P.S. § 390-1, *et seq. See* Compl. ¶¶ 32, 70, 111, 119, 348–50, 370–76. A pharmacy does not decide what medication to prescribe for a patient, or the appropriate strength, dosage form, or quantity; those decisions belong to a licensed physician. *See* Compl. ¶ 364; 21

U.S.C. § 829(a); 21 C.F.R. § 1306.05(a). A "pharmacist presented with a prescription ordered by a duly licensed physician is not at liberty to substitute his judgment of the product's safety for the patient for that of the physician." *Coyle*, 584 A.2d at 1387. "Physicians exercising sound medical judgment act as intermediaries in the chain of distribution, preempting, as it were, the exercise of discretion by the supplier-pharmacist, and, within limits, by the patient-consumer." *Id.* at 1386.

The complaint's hundreds of paragraphs culminate in a single claim: that Defendants engaged in "unfair and deceptive acts or practices" in violation of the UTPCPL. Compl. ¶¶ 420–50. Paragraph 429 purports to summarize the challenged conduct, which falls into three categories: (1) alleged failures to disclose information; (2) alleged statements about Defendants' aspirations and superiority; and (3) alleged conduct that the complaint labels deceptive. *Id.* ¶ 429(a)–(k).

*First*, the bulk of the challenged conduct concerns alleged omissions. The Commonwealth alleges that Defendants purportedly failed "to disclose the risk of opioids," *id.* ¶ 3, to "disclos[e]" the "terms of the agreements between opioid manufacturers and the PBM Defendants," *id.* ¶ 176, to "disclose . . . that the construction of their formularies was influenced by monetary payments received from opioid manufacturers," *id.* ¶ 193, "to disclose . . . the opioid manufacturers' misrepresentations about the safety of prescription opioids," *id.* ¶ 301, to "disclos[e]" that they allegedly failed to "perform adequate due diligence when filling opioid prescriptions," *id.* ¶ 429(f), and to "disclos[e]" that their supposed resistance to "clients' efforts to implement UM tools to limit prescriptions and use of opioids . . . was motivated by their own financial interests," *id.* ¶ 429(i). *See also, e.g.*, *id.* ¶¶ 194, 296, 305, 309, 314, 321, 324, 341, 379, 384, 401, 429, 432.

*Second*, the complaint challenges general, affirmative statements by Defendants about their goals, aspirations, and quality of services. It alleges that "PBMs publicly represented that their services promote better health and make the use of prescription drugs safer," calling out specific

statements in Defendants' SEC filings and investor communications, such as CVS's representation that it plans to "leverage our unique combination to help payors control costs more effectively, improve patient access, and promote better health outcomes in a way that no other company can"; Express Scripts' representation that it "is a company dedicated to making the use of prescription drugs safer and more affordable"; and Optum Rx's statement that it "is dedicated to helping people achieve optimal health . . . improving quality and safety, increasing compliance and adherence, and reducing fraud and waste." *Id.* ¶ 218; *see also, e.g.*, *id.* ¶¶ 217, 219, 410, 429.

*Third*, the complaint alleges that Defendants deceived consumers through certain actions they allegedly took or failed to take. For example, it alleges that Defendants engaged in deception by "[p]ressuring clients to accept formularies that permitted unfettered access to opioids," *id.* ¶ 429(b); "[p]artnering in the opioid manufacturers' unfair and deceptive marketing efforts," *id.* ¶ 429(e); "[s]elling their extensive data to opioid manufacturers," *id.* ¶ 429(j); and "[r]efusing to take any measures to place limits on opioid prescriptions," *id.* ¶ 429(k). *See also, e.g.*, *id.* ¶¶ 175–216, 220–68, 284, 286–340, 383–400, 429.

The complaint alleges that Defendants' "conduct, misrepresentations, or omissions were deceptive because they had the capacity or tendency to mislead or deceive Philadelphia consumers." *Id.* ¶ 430.

## **LEGAL STANDARD**

To survive dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A federal court applying state substantive law cannot "expand state law" in novel ways. *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002).

## ARGUMENT

### I. THE LEARNED INTERMEDIARY DOCTRINE BARS THE CLAIM.

In "the restricted distribution system of prescription drugs," Pennsylvania law considers physicians to be a patient's "exclusive" source of "information about the risks of medication." *Coyle v. Richardson-Merrell, Inc.*, 584 A.2d 1383, 1386–87 (Pa. 1991). Because a patient may lawfully obtain a prescription medication only through a licensed physician, the physician has an independent professional "duty" to "be fully aware of (1) the characteristics of the drug he is prescribing, (2) the amount of the drug which can be safely administered, and (3) the different medications the patient is taking." *Mazur v. Merck & Co.*, 964 F.2d 1348, 1356 (3d Cir. 1992) (quoting *Coyle*, 584 A.2d at 1385). A physician must "use his independent medical judgment" to decide "whether to prescribe a given drug" to a patient, taking into account "the personal medical history of his patient" and "the context of his or her individual medical circumstances." *Coyle*, 584 A.2d at 1386 (citation omitted). "It is also the duty of the prescribing physician" to share the appropriate information with the patient and "to advise the patient of any dangers or side effects associated with the use of the drug as well as how and when to take the drug." *Id.* at 1385 (citation omitted). In this role, "[p]hysicians act as exclusive intermediaries." *Id.* at 1387.

Under the learned intermediary doctrine, patients are "required to rely on the advice and counsel of their doctors," not manufacturers, pharmacists, nurses, or anyone else who is not their doctor. *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 832 (E.D. Pa. 2016) (applying learned intermediary doctrine to bar claims against medical device manufacturers); *accord Coyle*, 584 A.2d at 1386–87 (same for pharmacists); *Mazur*, 964 F.2d at 1357–58 (discussing nurses). Because the consumer of a prescription medication is the patient, *see Coyle*, 584 A.2d at 1386, consumers cannot, as a matter of law, be deceived by non-physicians about the risks of prescription medications. For that reason, courts consistently "apply the learned intermediary doctrine to bar

recovery under the UTPCPL" for non-doctors' statements and omissions relating to prescription drugs. *Cohen v. Johnson & Johnson*, 634 F. Supp. 3d 216, 233 (W.D. Pa. 2022) (collecting cases); *accord, e.g.*, *McLaughlin*, 172 F. Supp. 3d at 831; *Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 411 (E.D. Pa. 2012); *Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 558 (E.D. Pa. 2010).

The Commonwealth's claim falls within the heartland of this well-established doctrine. The complaint repeatedly alleges that Defendants deceived consumers "about the risks of prescription opioids." Compl. ¶ 293; *see, e.g.*, *id.* ¶¶ 3–4, 220–21, 229, 235, 246, 295, 299, 431. And it seeks to hold them liable for misrepresenting or failing to disclose "information regarding the risks of opioids." *Id.* ¶ 303. But those are exactly the kind of allegations that the learned intermediary doctrine bars. *See Coyle*, 584 A.2d at 1386–87; *Cohen*, 634 F. Supp. 3d at 233. Indeed, if pharmacists who dispense the drugs to patients have no duty to disclose the risks of prescription medications, *see Coyle*, 584 A.2d at 1386, then it necessarily follows that PBMs, which process coverage claims on behalf of health plans and do not interact with the patients, have none either.

The rationales underpinning the learned intermediary doctrine also apply with full force here. As the Supreme Court of Pennsylvania has explained, if the rule were otherwise, then "the patient-consumer would be receiving information about the risks of medication, information he or she would likely be unable to properly assess and weigh, from someone unfamiliar with the patient's medical condition, *after* those risks had already been weighed by a physician having specific knowledge of the patient's medical needs." *Id.* Holding Defendants liable under the UTPCPL for not second-guessing doctors' prescriptions "would have the effect of undermining the physician-patient relationship by engendering fear, doubt, and second-guessing." *Id.* It would also "ill-serve the needs of the public to impose a duty on pharmacists under which, to avoid

potential liability, they might refuse to fill prescriptions, notwithstanding decisions by licensed physicians that a particular drug was necessary and appropriate for their patients' medical treatment." *Id.* at 1387.

The Commonwealth may argue that many decisions dismissing UTPCPL claims under the learned intermediary doctrine rested on the absence of "reliance." *See, e.g.*, *Kee*, 871 F. Supp. 2d at 411. But even assuming the Commonwealth need not prove reliance, that distinction does not save the claim: the Commonwealth still must show that the challenged conduct is "likely to deceive a consumer acting reasonably under similar circumstances." *Cessna v. REA Energy Coop., Inc.*, 258 F. Supp. 3d 566, 583 (W.D. Pa. 2017). And under the learned intermediary doctrine, it cannot. Pennsylvania law assigns the prescribing physician the "duty" to "be fully aware" of the "characteristics of the drug" and "the amount of the drug which can safely be administered," and a "duty" to "advise the patient of any dangers or side effects associated with the use of the drug." *Coyle*, 584 A.2d at 1385 (citation omitted). A reasonable consumer therefore looks to her prescriber—who is familiar with the patient's medical condition—for information about the risks of prescription opioids and cannot be deceived by the silence or statements of other entities on that subject. That is why Pennsylvania law places the duty to warn the patient on physicians, not on manufacturers, pharmacies, or others, like PBMs, who are even further removed from any prescribing relationship. *See id.* at 1385–86 (refusing to extend such a duty to pharmacists).

The Court should dismiss the complaint with prejudice.

## II. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE UTPCPL.

Even apart from the learned intermediary doctrine, the complaint fails to state a claim under the UTPCPL for other, independent reasons. The UTPCPL prohibits "twenty distinct unfair methods of competition and unfair or deceptive acts and practices that are unlawful." *Halpern v. Ricoh U.S.A., Inc.*, 353 A.3d 1264, 1267 (Pa. 2026) (quotations omitted). One such prohibited act

is "[r]epresenting that goods or services have . . . characteristics . . . that they do not have." 73 P.S. § 201-2(4)(v). The UTPCPL also contains a catch-all provision, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." *Halpern*, 353 A.3d at 1267–68 (quoting 73 P.S. § 201-2(4)(xxi)). The complaint invokes both provisions, Compl. ¶ 422, but it fails to state a claim for relief under either because it rests solely on (1) non-actionable omissions, (2) non-actionable puffery, and (3) non-deceptive conduct.

### A. The Complaint's Omission Theory Fails Under *Halpern*.

The Commonwealth principally relies on an omission theory of liability. It alleges that Defendants "concealed" or failed to "disclose" information about prescription opioids and their business practices, and that these "omissions" were deceptive. *See* Compl. ¶¶ 3, 4, 176, 193, 194, 217, 296, 301, 305, 309, 314, 321, 324, 340, 341, 379, 384, 401, 406, 409–14, 417, 429(f)–(g), (i). For example, the complaint alleges that Defendants "fail[ed] to disclose the risk of opioids," *id.* ¶ 3, that PBMs "concealed" alleged relationships with manufacturers and the alleged reasons for not imposing utilization-management controls, *id.* ¶¶ 176, 193–94, 309, 314, 324, 341, 409, 411, 429(i), 431, 433, and that mail-order pharmacies "did not disclose" that they allegedly failed to maintain effective controls against diversion, *id.* ¶¶ 4(6), 378–79, 429(f)–(h), 432. The complaint also alleges that Defendants concealed their knowledge of manufacturers' misrepresentations and of the opioid epidemic generally. *Id.* ¶¶ 296, 301, 305. Defendants deny these allegations, but even accepting them as true, they fail to state a UTPCPL claim because the complaint does not allege a duty to disclose the information.

The Supreme Court of Pennsylvania recently held that an omission-based theory like this one is not actionable under the UTPCPL unless the plaintiff "allege[s] that [the defendant] had an obligation to disclose" the information. *Halpern*, 353 A.3d at 1268. *Halpern* explained that,

although "deceptive conduct" can sometimes include omissions, silence can be misleading only where the defendant "had a duty to disclose information" and the "silence was, in essence, a representation that he had no information that needed to be disclosed." *Id.* at 1274–75. Silence, in the "absen[ce] [of] a duty to speak, is meaningless and incapable of deception." *Id.* at 1275; *accord Milliken v. Jacono*, 103 A.3d 806, 809 (Pa. 2014).

The court grounded that rule in the statute's text: none of the twenty prohibited practices enumerated in the UTPCPL involves silence unaccompanied by some affirmative statement. *See Halpern*, 353 A.3d at 1275–76. Requiring a plaintiff to "allege and eventually prove that a [defendant] had an obligation to disclose something about the product at issue" is thus "consistent with the language of the [UTPCPL's] catch-all provision and avoids unreasonably expanding the statute beyond its boundaries." *Id.* at 1278–79.

*Halpern* is fatal to the Commonwealth's omission theory because the Commonwealth does not and cannot identify a duty to disclose the information at issue. *See generally* Compl. The complaint asserts that Defendants had duties to comply with "legal and professional obligations" and "prevent[] diversion." *Id.* ¶¶ 343, 435. And it alleges specific duties for mail-order pharmacies to ensure prescriptions are "issued for a legitimate medical purpose by a licensed practitioner in the usual course of professional practice," *id.* ¶¶ 348–49, 350, 370–73, and for PBMs and mail-order pharmacies to maintain "effective controls and procedures to guard against theft and diversion," *id.* ¶¶ 341, 343, 373–77. But even assuming for the sake of argument that Defendants had these duties, *none* is a duty of disclosure; they are all duties to *act.* An alleged failure to perform a duty to act does not, without more, create a duty to announce that failure. *See Halpern*, 353 A.3d at 1274–79; *see also PMC Prop. Grp., Inc. v. Viracon, LLC*, 2026 WL 2447053, at *7 (E.D. Pa. Aug. 20, 2026) (relying on *Halpern* to dismiss UTPCPL claim premised on a "fail[ure] to disclose"

where the complaint did not allege that "the defendants had a duty to disclose the information at issue"); *Breindel v. On Inc.*, 2026 WL 2355526, at *6 (D. Or. Aug. 13, 2026) (applying Pennsylvania law and relying on *Halpern* to dismiss UTPCPL claim because "Defendant did not have a duty to speak in this context"); *DeSimone v. U.S. Claims Servs., Inc.*, 2020 WL 1164794, at *5 (E.D. Pa. Mar. 11, 2020) (dismissing UTPCPL claim premised on failure to disclose information where there was "no legal duty to disclose").

**B. The Complaint Relies On Non-Actionable Puffery.**

The complaint also seeks to hold Defendants liable for statements in annual reports and other public filings about their goals and services. Compl. ¶¶ 217–19, 410, 429(a), (c), (d). Those statements are puffery and not actionable under either subsection (v) or the catch-all subsection (xxi) of the UTPCPL.

Statements of corporate aspiration and superiority are non-actionable puffery under the UTPCPL because "consumers understand that the statements are not to be taken literally." *Commonwealth ex rel. Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023–24 (Pa. 2018); *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 352 (E.D. Pa. 2022) ("If the words used are mere puffery, they cannot be construed as deceptive."). That principle applies whether the statement is characterized as fraudulent or merely deceptive, and regardless of whether the claim arises under subsection (v) or the catch-all provision. *See Golden Gate*, 194 A.3d at 1023–25 (applying puffery analysis to claims under subsection (v) and catch-all provision (xxi)); *Kovalev*, 647 F. Supp. 3d at 352 (applying puffery analysis to claims of deception).

Examples of non-actionable puffery include statements that "convey[] only the [speaker's] judgment" or make a generic claim of "superiority." *Fusco v. Uber Techs., Inc.*, 2018 WL 3618232, at *6 (E.D. Pa. July 27, 2018); *Prest v. Nat'l Gen. Ins. Co.*, 2020 WL 13866716, at *3 (W.D. Pa. Mar. 25, 2020) ("[A] promise of superior claims handling is neither measurable nor

testable.”). In *Fusco*, for instance, the court held statements that a product was “dependable,” “reliable,” and “safe” were non-actionable “assertions of quality.” 2018 WL 3618232, at *6–8; *see also Kovalev*, 647 F. Supp. 3d at 352–53. Similarly, statements about a company’s “goals and aspirations” are “incapable of being measured or quantifiably tested and therefore constitute unactionable puffery.” *Doe A.F. v. Lyft, Inc.*, 2024 WL 3497886, at *9 (E.D. Pa. July 19, 2024) (dismissing claim for negligent misrepresentation). By contrast, concrete promises of specific services that will be rendered are “beyond the reach of a puffery defense.” *Golden Gate*, 194 A.3d at 1024.

The statements on which the complaint relies are exactly the kind of non-actionable puffery that cannot be construed as deceptive or fraudulent. *See* Compl. ¶¶ 217–19, 410, 429(a), (c), (d). None promises any specific service, process, or result. Instead, they describe what Defendants are “dedicated to” or “committed to,” their “goal[s]” and “mission[s],” and their being “uniquely positioned to deliver significant benefits” to their clients. Compl. ¶¶ 218–19. They contain no factual assertions about prescription opioids, formularies, utilization management, or mail-order dispensing, nor do they make any concrete promises about specific actions by Defendants. For example, the statement that CVS can “promote better health outcomes in a way that no other company can,” *id.* ¶ 218, is classic puffery. *See Golden Gate*, 194 A.3d at 1023–24 (similar examples of puffery). So too are the statements that Express Scripts’ “mission is to make prescription drugs safer,” that Optum Rx is “dedicated to helping people achieve optimal health,” and that other Defendants had “goal[s]” and “mission[s]” to “improve safety” and “promote the appropriate use of prescription medications.” Compl. ¶¶ 218–19.

Context confirms that the statements are puffery. They appear in annual reports, SEC filings, a media interview, and a letter to a legislative committee. *Id.* ¶¶ 218–19. A reasonable

reader of those documents understands a company's statements about its mission as a description of corporate purpose and aspiration. Nor does the complaint allege that any statement was untrue when made; it merely alleges (wrongly) that Defendants' later formulary conduct was inconsistent with their stated aspirations. Compl. ¶ 217. Even assuming the statements were untrue, which Defendants deny, an alleged gap between conduct and aspiration is not a "believable, inaccurate statement[] of fact." *Golden Gate*, 194 A.3d at 1024. A statement that a company is "dedicated to making . . . prescription drugs safer," Compl. ¶ 218, is not "specific enough to be falsifiable," *Kovalev,* 647 F. Supp. 3d at 350 (citation omitted).

A handful of the statements the complaint quotes contain some descriptive content: that CVS "introduced Proactive Pharmacy Care™," that Medco developed "action-oriented clinical programs and services based on clinical rationale," that Express Scripts has "over 10 petabytes of useful data from which [it] can gain insights and for which [it] can develop solutions . . . [to] improve the health of patients," and that UnitedHealth "built a $2 billion business" around Ingenix. Compl. ¶ 218. But the complaint does not allege that any of those statements was false or deceptive, and none concerns prescription opioids, formularies, or mail-order dispensing. A statement that is not alleged to be false or deceptive, and that says nothing about the conduct complained of, cannot support a UTPCPL claim. *See Fusco*, 2018 WL 3618232, at *8–9.

These alleged statements fail for an additional, independent reason. The UTPCPL reaches only unfair or deceptive acts "in the conduct of any trade or commerce," 73 P.S. § 201-3(a), which the statute defines as "the advertising, offering for sale, sale or distribution of any services and any property," *id.* § 201-2(3). Courts enforce that limit. *See Commonwealth v. Chesapeake Energy Corp.,* 247 A.3d 934, 948 (Pa. 2021) (UTPCPL claim not viable against buyer not engaged in advertising or sale of goods or services); *McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343, 351 (W.D.

Pa. 2021) (collecting sales tax does not "fit the definition of 'trade or commerce'"); *Lisowski v. Walmart Stores, Inc.*, 552 F. Supp. 3d 519, 522 (W.D. Pa. 2021) (same). Statements to investors in securities filings and annual reports, Compl. ¶ 218, and a letter to a committee of the Pennsylvania House of Representatives opposing pending legislation, *id.* ¶ 219, do not advertise, offer, sell, or distribute anything. The complaint's conclusory allegation that all of Defendants' conduct was "performed in connection with their PBM services," *id.* ¶ 428, does not change that: the question is whether the challenged statement itself was made in the conduct of trade or commerce, not whether the speaker also does business. *Cf. Chirikos v. Yellow Cab Co.*, 410 N.E.2d 61, 67 (Ill. App. Ct. 1980) (statements to a city council under substantially similar statute not made in the conduct of trade or commerce).

**C. The Complaint Fails To Allege Deception.**

Setting aside non-actionable omissions (Section II.A) and puffery (Section II.B), what little remains of the Commonwealth's complaint fails as a matter of law because it does not allege any conduct with the "capacity to deceive." *Halpern*, 353 A.3d at 1274 (quoting *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 648 (Pa. 2021)); 73 P.S. § 201-2(4)(xxi). Courts applying this standard ask whether the conduct is "likely to deceive a consumer acting reasonably under similar circumstances." *Cessna*, 258 F. Supp. 3d at 583; *Prukala v. Elle*, 11 F. Supp. 3d 443, 447 (M.D. Pa. 2014). A plaintiff must identify the specific deceptive act or statement that caused confusion and "demonstrate that [the alleged] confusion or misunderstanding was caused by [it]." *Prest*, 2020 WL 13866716, at *3 (quoting *Doherty v. Allstate Indem. Co.*, 2016 WL 5390638, at *6 (E.D. Pa. Sep. 27, 2016)); *see Halpern*, 353 A.3d at 1273.

The complaint does not allege specific statements or conduct by Defendants that had the capacity to deceive a reasonable consumer. As for statements, the complaint alleges that unidentified "representations" led consumers to believe that Defendants' formularies "were based

on safety and efficacy," Compl. ¶ 431; *see id.* ¶¶ 217, 429(a), and that Defendants would ensure that only "legitimate" prescriptions were filled, *id.* ¶ 429(c)–(d); *see id.* ¶¶ 409(3), 415. But a plaintiff must identify a *specific* act or statement. *See Prest*, 2020 WL 13866716, at *3. Those allegations neither identify a specific representation nor explain how it "create[d] a likelihood of confusion or of misunderstanding" by consumers. 73 P.S. § 201-2(4)(xxi). Nor does the complaint allege that any statement about what Defendants "would" do was false when made or was a promise to limit the use of prescription opioids.

The complaint also challenges Defendants' "routine communications to physicians and patients," *see, e.g.*, Compl. ¶ 245 (quotations omitted), but it does not explain how those statements were deceptive, other than to allege that Defendants failed to disclose in those communications alleged rebate agreements with manufacturers, *see id.*, which is a non-actionable omission for the reasons explained above. For example, the Commonwealth alleges Defendants "partnered" with opioid manufacturers to market opioid medications to doctors, pointing to alleged communications to prescribers from over two decades ago. *Id.* ¶¶ 224, 240–43. But the Commonwealth fails to allege that the communications were inconsistent with FDA-approved labels, let alone that they were false when made. *Id.* And although the Commonwealth alleges that Defendants spread "misinformation," *id.* ¶ 238, it fails to plead any "factual matter" that such communications were misleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is exactly the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation" that is forbidden. *Id.* A plaintiff must identify the specific misrepresentation that caused the alleged deception, *Prest*, 2020 WL 13866716, at *3, and this complaint does not.

As for conduct, the complaint alleges that Defendants engaged in deception by "[p]ressuring clients to accept formularies that permitted unfettered access to opioids," Compl.

¶ 429(b); "[s]elling their extensive data to opioid manufacturers," *id.* ¶ 429(j); and "[r]efusing to take any measures to place limits on opioid prescriptions," *id.* ¶ 429(k); *see also, e.g.*, *id.* ¶¶ 175–216, 220–68, 284, 286–340, 383–400, 429. The complaint also alleges that Defendants "[v]iolat[ed] Pennsylvania law and the federal CSA" by "fill[ing] . . . controlled substance prescription[s]" without resolving red flags, *id.* ¶¶ 400, 429(f); *see id.* ¶¶ 399, 429(h), 434–38, and implementing pharmacy staffing and performance metrics that were allegedly inconsistent with "legal requirements," *id.* ¶¶ 386–87. But the complaint fails to plausibly allege that any of this alleged conduct "create[d] a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). Violating another statute is not a "per se" violation of the UTPCPL, *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 514–15 (E.D. Pa. 2009), and the complaint fails to allege that there is anything *deceptive* about purported violations of other laws.

The complaint's remaining allegations of Defendants' deception do not rest on affirmative acts or statements at all. The allegations that consumers "may have been misled to believe that any prescriptions filled were legitimate" are premised on Defendants' alleged failure to disclose information, Compl. ¶¶ 429(f)–(g); *see id.* ¶¶ 379, 432, which rests on the same "failure to speak" theory that fails for want of duty under *Halpern*. *See* Section II.A (discussing *Halpern*, 353 A.3d at 1274–79). And the allegation that Defendants' failure to restrict formularies "had the tendency to mislead consumers," Compl. ¶ 433, rests solely on an alleged "failure to act," which "cannot support a UTPCPL claim," *Laboy v. GEICO Secure Ins. Co.*, 2026 WL 1893837, at *6 (E.D. Pa. June 30, 2026) (dismissing UTPCPL claim based on insurer's alleged failure to pay because the complaint "allege[s] only nonfeasance by GEICO, not malfeasance," and "[o]nly malfeasance is actionable under the UTPCPL").

*Halpern* also counsels against expanding the UTPCPL to reach the Commonwealth's inaction-as-deception theory. In *Halpern*, the Supreme Court of Pennsylvania expressly declined to expand the UTPCPL's reach to become an "end around" warranty law, which already "supplies a suitable framework for regulating and enforcing the expectations and obligations of the parties" regarding the requirements of any product warranties, because doing so would "unreasonably expand[] the [UTPCPL] beyond its boundaries." 353 A.3d at 1276–79 (quoting *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 133 (Pa. Super. Ct. 1989)).

Similarly here, the complaint's theory of deception would effectively allow the Commonwealth to supplant state and federal laws that already extensively regulate Defendants and prescription opioids. Prescription opioids are FDA-approved medications that are regulated by the DEA as controlled substances and may be dispensed only on a valid prescription from a licensed practitioner. Compl. ¶¶ 346, 351, 364–66. A pharmacy's obligations when it dispenses controlled substances are set by the CSA, 21 U.S.C. § 801, *et seq.*, and the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-101, *et seq.*, Compl. ¶¶ 348–50, 370–76. Pharmacies are also licensed and disciplined under the Pharmacy Act, 63 P.S. § 390-1, *et seq.*, and violations are enforced by the DEA and the Commonwealth's licensing authorities, Compl. ¶¶ 374–76, 397. The Pharmacy Act specifies the acts that are unlawful for pharmacies and pharmacists, makes violations misdemeanors, and authorizes the State Board of Pharmacy to impose civil penalties. 63 P.S. § 390-8(15), (15.1). The General Assembly likewise regulates PBMs' audits of pharmacy records and contracts between PBMs or pharmacies and health insurers and benefit plans. *See* 40 P.S. §§ 4502, 4551.

Notwithstanding this comprehensive web of state and federal regulations, the complaint seeks to regulate the same conduct through the UTPCPL. It alleges Defendants engaged in

deception by "fill[ing] . . . controlled substance prescription[s]" without resolving red flags, citing 35 P.S. § 780-111(b.3)(2), 28 Pa. Code § 25.52(a), 21 U.S.C. § 829, and 21 C.F.R. §§ 1306.04 and 1306.06. Compl. ¶ 400; *see id.* ¶¶ 399, 438. It attacks as deceptive pharmacy staffing and performance metrics that are allegedly inconsistent with "legal requirements to properly and adequately identify and resolve red flags." *Id.* ¶¶ 386–87. And it acknowledges that state and federal regulatory regimes governing Defendants' conduct already carry their own sanctions, including registration revocation, discipline, and civil and criminal enforcement, *id.* ¶¶ 373–76, 397. Only by recasting alleged regulatory non-compliance as consumer deception can the Commonwealth attempt to bring that conduct within the UTPCPL at all.

Because those comprehensive bodies of law already "suppl[y] a suitable framework for regulating and enforcing the expectations and obligations of the parties," this Court should not "expand" the UTPCPL to cover the same conduct. *Halpern*, 353 A.3d at 1276–79 (citation omitted); *see City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) (federal courts do not "expand state law in ways not foreshadowed by state precedent").

## III. ERISA AND MEDICARE PART D PREEMPT THE COMMONWEALTH'S CLAIM.

Federal law also preempts the UTPCPL claim here. As the complaint acknowledges, the PBM Defendants provide formularies and utilization-management programs to health plans, including "self-[insured] employers" and "federal, state, and local governments." Compl. ¶¶ 152–54. Those plans include ERISA and Medicare Part D health plans, which are governed by uniform federal benefits laws. *See Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 89 n.1 (2020); *In re EpiPen ERISA Litig.*, 2020 WL 4501925, at *4 (D. Minn. Aug. 5, 2020) (CVS Caremark, Express Scripts, Optum Rx, and other PBMs manage benefits for "thousands" of ERISA plans).

### A. ERISA Preemption.

ERISA's express preemption clause preempts "any and all State laws" that "relate to any employee benefit plan," 29 U.S.C. § 1144(a), including state statutory causes of action. *See Ahn v. Cigna Health & Life Ins. Co.*, 179 F.4th 187, 189–90 (3d Cir. 2026); *Nw. Inst. of Psychiatry, Inc. v. Travelers Ins. Co*., 1992 WL 236257, at *5 (E.D. Pa. Sep. 3, 1992). ERISA's "pre-emption clause is conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990). A state-law claim has "an impermissible 'connection with' an ERISA plan if it 'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Ahn*, 179 F.4th at 190 (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016)). The Commonwealth's UTPCPL claim has an impermissible connection with ERISA plans in two respects.

*First*, ERISA preempts the Commonwealth's claim because it seeks to hold Defendants liable for alleged statements to plan sponsors and beneficiaries. Compl. ¶¶ 217, 429(a), (c), (d). The Third Circuit made clear in *Ahn* that ERISA preempts state-law claims that challenge the content of an administrator's communications to plan beneficiaries. A provider sued over statements in explanation-of-benefit forms that his claims were denied because he was unlicensed. *Ahn*, 179 F.4th at 188–89. The Third Circuit held the claim was preempted for two reasons. To start, the court held that "[t]he communication of claim adjudications to plan participants and beneficiaries is a 'central matter of plan administration,'" and "any state-law claims challenging the content of such statements would impermissibly allow state law to regulate matters squarely within ERISA's 'heartland.'" *Id.* at 191 (citations omitted). The question was not whether the statement was central to a fiduciary's duties, but "whether communicating benefits determinations to subscribers and beneficiaries is a central matter of plan administration." *Id.* at 192. In addition, the Third Circuit held the plaintiff's claim would "interfere[] with nationally uniform plan

administration," because administrators "would have to consider not only ERISA's requirements, but also the common law of each state in which participants and beneficiaries are located or seek services." *Id.* (citation omitted).

The statements challenged here are of the same kind. They are communications by a PBM, in administering a plan's pharmacy benefit, to plan sponsors and members about what the plan covers and how its formulary and UM controls operate. The Commonwealth alleges the PBM Defendants were deceptive in alleged representations they made to "clients," including "in client contracts," that formularies promoted safe use and that Defendants "would conduct" drug utilization review and "would implement" utilization management. Compl. ¶¶ 217, 410, 429(a), (c), (d). It also seeks to impose liability on the PBM Defendants for "routine communications to physicians and patients about the availability" of prescription opioids on "standard formularies." *Id.* ¶ 245 (quotations omitted). Which medications a plan covers, and on what terms, is a core function of plan design. *See Pharm. Care Mgmt. Ass'n v. Mulready*, 78 F.4th 1183, 1198 (10th Cir. 2023) ("Plans design pharmacy benefits by determining . . . what drugs are covered." (citation omitted)). As in *Ahn*, allowing state deception law to regulate what is said about those matters would "regulate matters squarely within ERISA's 'heartland,'" 179 F.4th at 191 (citation omitted), and would require plans and their PBMs to craft each formulary communication to satisfy fifty States' standards of deception, *id.* at 192. The Commonwealth cannot impose liability on PBM Defendants for the content of their communications about a plan's coverage. *Id.* at 190.

*Second*, ERISA preempts the Commonwealth's UTPCPL claim because it seeks to hold Defendants liable for the formulary and utilization-management choices that ERISA plans make. "[B]ecause PBMs manage benefits on behalf of plans," including ERISA plans, "a regulation of PBMs functions as a regulation of an ERISA plan itself." *Flowers v. Caremark PCS Health, LLC*,

180 F.4th 1084, 1089 (8th Cir. 2026) (citation omitted). Accordingly, the Eighth Circuit recently held that ERISA preempted Arkansas laws that would require PBMs "to tailor substantive benefits to the particularities of multiple jurisdictions." *Id.* at 1090 (citation omitted). Likewise, the Sixth Circuit recently held that ERISA preempted Tennessee laws regulating PBM pharmacy networks, copays, and coinsurance rates. *McKee Foods Corp. v. BFP Inc.*, 173 F.4th 242, 262–69 (6th Cir. 2026). The court explained that PBMs "perform certain functions for ERISA health benefit plans," and when state laws "encroach" on a plan's "autonomy" to "structure and design [benefits] as they see fit[,] . . . ERISA prevents such state level interference." *Id.* at 266.

Like the PBM regulations in *Flowers* and *McKee Foods*, the Commonwealth's claim "bulldoze[s] through [ERISA's] objectives, requiring PBMs to tailor and retailor" the placement of prescription opioids on formularies and the processing of claims for insurance coverage of opioid prescriptions to comply with purported state-law requirements. *Flowers*, 180 F.4th at 1090. For example, the Commonwealth seeks to impose liability on the PBM Defendants because they allegedly "did not take any measures to restrict the availability of prescription opioids on their formularies," Compl. ¶ 433, and "designed their formularies to give unfettered access to prescription opioids," *id.* ¶ 293. But ERISA plans select those formularies. And the Commonwealth seeks to hold the PBM Defendants liable for "refusing to implement Utilization Management tools on prescription opioids" or "take any measures to place limits on opioid prescriptions," *id.* ¶ 429(d), (k); *see, e.g.*, *id.* ¶ 190 (alleging PBM Defendants failed to implement sufficient "quantity limits" on prescription opioids); *id.* ¶ 301 (alleging PBM Defendants failed to "limit the accessibility of prescription opioids in their formularies"). But the PBM Defendants were following the controls, limits, and restrictions selected by ERISA plan clients.

ERISA plans "design pharmacy benefits by determining . . . what drugs are covered," so whether a plan chooses to place prescription opioids on its formularies for insurance coverage, and what UM controls a plan chooses to place on those medications, are "central matter[s] of plan administration." *Mulready*, 78 F.4th at 1198 (citation omitted). Because the claim is premised on challenging the legality of formularies and UM controls that ERISA plans selected, *see, e.g.*, Compl. ¶¶ 4, 190–92, 196, 199, 202–03, 293, it "strik[es] at the heart of . . . benefit design" and is preempted. *Mulready*, 78 F.4th at 1209; *cf. Kentucky ex rel. Coleman v. Express Scripts, Inc.*, --- F.4th ---, 2026 WL 2796078, at *4 (6th Cir. Sep. 18, 2026) (ERISA preemption argument is "colorable" where opioid public-nuisance claims "take aim at how [Defendants] structure[] [their] 'standard formulary offerings' for ERISA plans" (citation omitted)).

The UTPCPL claim also interferes with uniform plan administration, "once more crossing the preemption line." *McKee Foods*, 173 F.4th at 264. By invoking the UTPCPL to second-guess the formulary and UM choices that ERISA plan sponsors made under federal law and substituting Pennsylvania's view of how they should have been designed, the Commonwealth's claim would effectively require Defendants to "maintain a familiarity with the laws of all 50 States so that they can update their plans as necessary" to satisfy each state's laws. *Id.* (citation omitted). That "sort of tailoring of plans . . . to the peculiarities of the law of each jurisdiction is exactly the burden ERISA seeks to eliminate." *Id.* (quotation omitted).

**B. Medicare Preemption.**

Like ERISA preemption, Medicare preemption is "unmistakably broad." *Mulready*, 78 F.4th at 1205–06. It applies to "all state laws concerning Part D plans." *Id*. at 1206. "The standards established under [Part D] shall supersede any State law or regulation[.]" 42 U.S.C. § 1395w-26(b)(3); *see* 42 U.S.C. § 1395w-112(g); 42 C.F.R. § 423.440(a); *Mulready*, 78 F.4th at 1205; *cf.*

*Kopstein v. Indep. Blue Cross*, 339 F. App'x 261, 264 (3d Cir. 2009) (citing, *inter alia*, *Do Sung Uhm v. Humana Inc.*, 620 F.3d 1134, 1148–49 (9th Cir. 2010)).

The Commonwealth attempts to impose liability on the PBM Defendants based on how prescription opioids were selected, priced, and covered—including by Medicare Part D plans. *See, e.g.*, Compl. ¶¶ 152–54, 318–19. But the PBM Defendants and their Medicare Part D clients administer pharmacy benefits according to regulations and standards established by the Centers for Medicare and Medicaid Services (**CMS**), including detailed standards governing formularies, drug coverage, and utilization management. *See* 42 U.S.C. § 1395w-104(b)(3); 42 C.F.R. §§ 423.120(b), 423.153, 423.272(b). Among other things, the Medicare Part D standards require formularies to include multiple prescription opioids. CMS requires "at least two" medications "within each therapeutic category and class," 42 C.F.R. § 423.120(b)(2)(i), and the therapeutic categories and classes generally must be consistent with those "established by the United States Pharmacopeia," 42 C.F.R. § 423.272(b)(2)(ii), which have long required inclusion of both "long-acting" and "short-acting" "opioid analgesics," *see, e.g.*, USP Medicare Model Guidelines v7.0 (Categories and Classes) (2017), https://www.usp.org/sites/default/files/usp/document/our-work/healthcare-quality-safety/uspmmg_v7_0_cat-class.pdf; USP Medicare Model Guidelines v6.0 (Categories and Classes) (2014), https://www.usp.org/sites/default/files/usp/document/our-work/healthcare-quality-safety/uspmmg_v6_0_cat-class.pdf.[2]

CMS approves every Medicare Part D formulary and UM program—including those for which the Commonwealth seeks to hold the PBM Defendants liable—and it will not approve

---

[2] The Court may take judicial notice of public records, including "the records of a government agency," on a motion to dismiss. *Schmidt v. Skolas*, 770 F.3d 241, 250–51 (3d Cir. 2014); *see In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 754 n.2 (E.D. Pa. 2003) (taking judicial notice of FDA reports posted on the FDA website in deciding motion to dismiss and collecting cases taking judicial notice of "official government documents" available online).

formularies and UM programs that do not include the required long-acting and short-acting opioids. *See* 42 C.F.R. §§ 423.120(b)(2)(iv), 423.120(e), 423.272(b)(2)(ii). By seeking to impose liability on the PBM Defendants for formularies and UM programs selected by Medicare Part D plans and approved by CMS, the Commonwealth's claim runs headlong into Part D's preemption clause. *See Alaska v. Express Scripts, Inc.*, 2024 WL 2321210, at *11 (D. Alaska May 22, 2024) (Medicare Act preempted Alaska's opioid claims pertaining to Part D plans); *cf. Coleman*, 2026 WL 2796078, at *4 (finding Defendants' Medicare preemption argument "colorable"). The UTPCPL cannot be used to override formulary and UM programs that CMS approves.

## CONCLUSION

For these reasons, the Court should dismiss the complaint with prejudice. Defendants respectfully request oral argument on this joint motion.

Dated: October 30, 2026

Respectfully submitted,

*s/ Joseph I. Fontak*
Joseph I. Fontak
LEADER BERKON COLAO
& SILVERSTEIN LLP
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 755-0455
jfontak@leaderberkon.com

Brian D. Boone (admitted *pro hac vice*)
Matthew P. Hooker (admitted *pro hac vice*)
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000
brian.boone@alston.com
matthew.hooker@alston.com

*s/ Elisabeth Miller*
Elisabeth Miller (PA 335455)
David Mader (admitted *pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
(212) 849-7000
elisabethmiller@quinnemanuel.com
davidmader@quinnemanuel.com

Jonathan G. Cooper (admitted *pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20004
(202) 538-8000
jonathancooper@quinnemanuel.com

Michael A. Kaeding (admitted *pro hac vice*)
ALSTON & BIRD LLP
555 Fayetteville St., Suite 600
Raleigh, NC 27601
(919) 862 2200
mike.kaeding@alston.com

Rachel Finkel (admitted *pro hac vice*)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9400
rachel.finkel@alston.com

Robert J. Giuffra, Jr. (admitted *pro hac vice*)
Jeffrey T. Scott (admitted *pro hac vice*)
Matthew J. Porpora (admitted *pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
giuffrar@sullcrom.com
scottj@sullcrom.com
porporam@sullcrom.com

*Attorneys for Defendants UnitedHealth Group, Inc.; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx, Inc.; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.*

Joseph P. Walsh (PA 64352)
WALSH PANCIO, LLC
2326 North Broad Street, Suite 200
Colmar, PA 18915
(215) 368-8660
joe@walshpancio.com

*Attorneys for Defendants Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Processing, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Evernorth Health, Inc., Express Scripts Specialty Distribution Services, Inc.*

*s/ Robert J. Norcia*
Robert J. Norcia (PA 321509)
STRADLEY RONON STEVENS
& YOUNG LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8663
rnorcia@stradley.com

Blair G. Brown (admitted *pro hac vice*)
Steven N. Herman (PA 205832)
Brian J. Beaton, Jr. (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
(202) 778-1800
bbrown@zuckerman.com
sherman@zuckerman.com
bbeaton@zuckerman.com

Conor B. O'Croinin (admitted *pro hac vice*)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202
(410) 332-0444
cocroinin@zuckerman.com

*Attorneys for Defendants CVS Pharmacy, Inc., CVS Health Corporation, Caremark Rx, L.L.C., Caremark, L.L.C., CaremarkPCS Health, L.L.C., and AdvanceRx.com, L.L.C.*